1    M. SEAN ROYALL (*pro hac vice*)
      sroyall@gibsondunn.com
2    GIBSON, DUNN & CRUTCHER LLP
      2100 McKinney Avenue
3    Dallas, TX 75201
      Telephone: 214.698.3100
4    Facsimile: 214.571.2900

5    BRIAN M. LUTZ, SBN # 255976
      AVERY E. MASTERS, SBN #306703
6    blutz@gibsondunn.com
      GIBSON, DUNN & CRUTCHER LLP
7    555 Mission Street, Suite 3000
      San Francisco, CA  94105
8    Telephone: 415.393.8379
      Facsimile: 415.374.8474

9

10   RICHARD H. CUNNINGHAM (*pro hac vice*)
      rhcunningham@gibsondunn.com
      GIBSON, DUNN & CRUTCHER LLP
11   1801 California Street
      Denver, CO 80202
12   Telephone: 303.298.5752
      Facsimile: 303.298.5907

13

14

15            UNITED STATES DISTRICT COURT

          NORTHERN DISTRICT OF CALIFORNIA

             SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | CASE NO. 3:18-cv-02454 |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND MEMORANDUM IN SUPPORT THEREOF** |
| v. | |
| LENDINGCLUB CORPORATION, | Action Filed:  April 25, 2018 |
| d/b/a Lending Club, | **Hearing**: |
| Defendant. | Date: September 13, 2018<br>Time: 9:00 a.m.<br>Courtroom:  F<br>Judge:  Jacqueline Scott Corley |

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 13, 2018, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley, in Courtroom F, 15th Floor, of the United States District Court for the Northern District of California in the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant LendingClub Corporation ("LendingClub" or "Defendant"), will and does move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff's Complaint in its entirety on the ground that Plaintiff has failed to state a claim against Defendant upon which relief may be granted.

Defendant's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the concurrently filed Declaration of Betty X. Yang, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated:  June 18, 2018                    GIBSON, DUNN & CRUTCHER LLP


By:  /s/ M. Sean Royall                

M. SEAN ROYALL (*pro hac vice*)
sroyall@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2900

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND .............................................................................. 4

     A.   LendingClub ............................................................................................ 4

     B.   LendingClub's Disclosures of the Origination Fee.................................. 5

          1.   The TILA Disclosure ..................................................................... 5

          2.   The APR Disclosure and Tooltip ................................................... 8

          3.   The Rates & Fees Page .................................................................. 9

     C.   LendingClub's Past Practices Challenged in Counts II and IV ............ 11

     D.   Alleged Payment Processing Errors in Automated Withdrawals ........... 12

III. LEGAL STANDARD ........................................................................................ 12

IV.  ARGUMENT ..................................................................................................... 12

     A.   Count I Does Not Plausibly Allege Hidden Fees and Is Legally Barred By
          TILA........................................................................................................ 12

          1.   Count I Should Be Dismissed Because the Facts as Alleged
               Demonstrate That LendingClub Has Not "Hidden" the Origination Fee ...... 13

          2.   Count I Should Also Be Dismissed Because the FTC's Complaint Is
               Precluded by LendingClub's Full Compliance with Federal Truth-in-
               Lending Law ................................................................................. 15

     B.   Counts II and IV Are Moot Because the Challenged Conduct Ceased Long
          Ago.......................................................................................................... 18

          1.   Section 5 of the FTC Act Does Not Empower the FTC to Challenge
               Past Conduct That Is Not Likely to Recur .................................... 18

          2.   Past Conduct That Is Unlikely to Recur Cannot Justify Injunctive
               Relief.............................................................................................. 19

     C.   Count III Fails to Plead a Cognizable Section 5 Unfairness Claim ........... 20

          1.   The Complaint Does Not Allege an Unfair Practice...................... 21

          2.   Count III Fails to Allege Substantial Injury to Consumers........... 23

          3.   Count III Does Not Allege Injurious Net Effects from Automated
               Withdrawals .................................................................................. 24

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1

V.     CONCLUSION ................................................................................................................ 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbit v. ING USA Annuity & Life Ins. Co.*,
  252 F. Supp. 3d 999 (S.D. Cal. 2017), *appeal docketed*, No. 17-55836 (9th Cir.
  June 14, 2017) ......................................................................................................................14

*Ala. Prof'l Hunters Ass'n v. FAA*,
  177 F.3d 1030 (D.C. Cir. 1999), *abrogated on other grounds by Perez v. Mortg.
  Bankers Ass'n*, 135 S.Ct. 1119 (2015) ...............................................................................18

*Am. Fin. Servs. Ass'n v. FTC*,
  767 F.2d 957 (D.C. Cir. 1985) ............................................................................................24

*Arrow-Hart & Hegeman Elec. Co. v. FTC*,
  291 U.S. 587 (1934) ............................................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................13, 21, 24

*Babbitt v. Farm Workers*,
  442 U.S. 289 (1979) ............................................................................................................20

*Balistreri v. Pacifica Police Dep't*,
  901 F. 2d 696 (9th Cir. 1988) .............................................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................13, 20, 24

*Caldwell v. Caldwell*,
  No. C 05-4166 PJH, 2006 WL 618511 (N.D. Cal. Mar. 13, 2006) ......................................3

*Castagnola v. Hewlett-Packard Co.*,
  No. C 11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012)..............................14, 15

*CFPB v. ITT Educ. Servs., Inc.*,
  219 F. Supp. 3d 878 (S.D. Ind. 2015) .................................................................................24

*Chae v. SLM Corp.*,
  593 F.3d 936 (9th Cir. 2010).............................................................................................17

*Christensen v. Harris County*,
  529 U.S. 576 (2000) ............................................................................................................17

*City of Chicago v. Morales*,
  527 U.S. 41 (1999) ..............................................................................................................18

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000) ............................................................................................................20

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ..............................................................................................................20

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1

## TABLE OF AUTHORITIES
(continued)

2

Page(s)

3

*Cummings v. Connell,*
   316 F.3d 886 (9th Cir. 2003)............................................................................20

4

*Ford Motor Credit Co. v. Milhollin,*
5
   444 U.S. 555 (1980)............................................................................3, 15, 16

6

*FTC v. Amazon.com, Inc.,*
   No. C14-1038-JCC, 2016 WL 10654030 (W.D. Wash. Jul. 22, 2016) ...................20, 21

7

*FTC v. Commerce Planet, Inc.,*
8
   878 F. Supp. 2d 1048 (C.D. Cal. 2012), *aff'd in part and vacated in part by* 815
   F.3d 593 (9th Cir. 2016)........................................................................24

9

*FTC v. Evans Prods. Co.,*
10
   775 F.2d 1084 (9th Cir. 1985)..................................................................19, 20

11

*FTC v. Inc21.com Corp,*
   745 F. Supp. 2d 975 (N.D. Cal. 2010) .........................................................22, 24

12

*FTC v. JK Publc'ns, Inc.,*
13
   99 F. Supp. 2d 1176 (C.D. Cal. 2000) .........................................................22, 24

14

*FTC v. Johnson,*
   96 F. Supp. 3d 1110 (D. Nev. 2015) ................................................................23

15

*FTC v. Neovi, Inc.,*
16
   604 F.3d 1150 (9th Cir. 2010)...........................................................21, 22, 23, 24

17

*FTC v. Shire Viropharma,*
   17-CV-00131 (RGA), (D. Del. Mar. 20, 2018) .................................................19, 21

18

*FTC v. Sterling Precious Metals, LLC,*
19
   894 F. Supp. 2d 1378 (S.D. Fla. 2012) ..............................................................15

20

*Funke v. Sorin Grp. USA, Inc.,*
   147 F. Supp. 3d 1017 (C.D. Cal. 2015) ..............................................................13

21

*Geier v. Am. Honda Motor Co.,*
22
   529 U.S. 861 (2000)..................................................................................17

23

*Hauk v. JP Morgan Chase Bank USA,*
   552 F.3d 1114 (9th Cir. 2009)....................................................................16, 17

24

*Household Credit Servs., Inc. v. Pfennig,*
25
   541 U.S. 232 (2004).............................................................................3, 13, 15, 16

26

*In the Matter of Int'l Harvester Co.,*
   104 FTC 949 (1984)..................................................................................22

27

*Keithly v. Intelius Inc.,*
28
   764 F. Supp. 2d 1257 (W.D. Wash. 2011) ...........................................................14

iv

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Knievel v. ESPN,*
393 F.3d 1068 (9th Cir. 2005)................................................................3

*LabMD, Inc. v. FTC,*
No. 16-16270, 2018 WL 2714747 (11th Cir. June 6, 2018) ......................22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
134 S. Ct. 1377 (2014) ..........................................................................22

*Lovell v. Keller,*
232 F.3d 895 (9th Cir. 2000) .................................................................20

*Lowden v. T-Mobile USA Inc.,*
378 F. App'x 693 (9th Cir. 2010) ..........................................................15

*Luxpro Corp. v. Apple Inc.,*
No. C 10-03058 (JSW), 2011 WL 3566616 (N.D. Cal. Aug. 12, 2011)........20

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ..............................................................................20

*POM Wonderful LLC v. Coca-Cola Co.,*
134 S. Ct. 2228 (2014) ........................................................................4, 18

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
566 U.S. 639 (2012) ..............................................................................16

*Raley v. State of Ohio,*
360 U.S. 423 (1959) ..............................................................................18

*Rubio v. Capital One Bank (USA), N.A.,*
572 F. Supp. 2d 1157 (C.D. Cal. 2008), *rev'd in part on other grounds by* 613 F.3d
1195 (9th Cir. 2010)..............................................................................17

*Smith v. Wells Fargo Bank, N.A.,*
158 F. Supp. 3d. 91 (D. Conn. 2016) ......................................................14

*Strong v. Option One Mortg. Corp. (In re Strong),*
356 B.R. 121 (Bankr. E.D. Pa. 2004)......................................................15

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) (per curiam).................................................3

*U.S. v. Zhi Yong Guo,*
634 F.3d 1119 (9th Cir. 2011)................................................................18

*United States v. W.T. Grant Co.,*
345 U.S. 629 (1953)..............................................................................20

*In re VistaPrint Corp. Marketing and Sales Practices Litig.,*
No. 4:09-md-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009)..............15

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Gibson, Dunn &
Crutcher LLP

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3    *Whitmore v. Arkansas*,
        495 U.S. 149 (1990)..............................................................................................20

4

5    **Statutes**

6    15 U.S.C. § 45(n) ....................................................................................................23

7    15 U.S.C. § 53(b) ....................................................................................................19

8    15 U.S.C. § 1601(a) ................................................................................................16

9    15 U.S.C. § 1604(b) .............................................................................................3, 16

10   15 U.S.C. § 1604(h) ................................................................................................16

11   15 U.S.C. § 1632(a) ...........................................................................................17, 18

12   **Other Authorities**

13   Federal Student Aid Homepage, U.S. Department of Education, *available at*
        https://studentaid.ed.gov/sa/types/loans/plus#fees............................................1

14   FTC, *.com Disclosures: How to Make Effective Disclosures in Digital Advertising*
        (March 2013)......................................................................................................17

15

16   Julapa Jagtiani & Catharine Lemieux, *Fintech Lending: Financial Inclusion, Risk*
        *Pricing, and Alternative Information* (Research Department, Federal Reserve Bank
        of Philadelphia, Working Paper No. 17-17, July 6, 2017)..................................5

17

18   LendingClub Q3 2016 Earnings Call presentation, Slide 7, (November 7, 2017),
        *available at*
        http://ir.lendingclub.com/Cache/1001216391.PDF?Y=&O=PDF&D=&fid=100121
        6391&T=&iid=4213397 .....................................................................................5

19

20   *Oxford Online Dictionary*, "Hidden," *available at:*
        https://en.oxforddictionaries.com/definition/hidden (last visited June 12, 2018)..........14

21   **Regulations**

22   12 C.F.R. § 1026, App'x H to Part 1026 ..................................................................5

23   12 C.F.R. § 1026.17(a)(1).........................................................................................7

24   12 C.F.R. § 1026.17(a)(2).........................................................................................6

25   12 C.F.R. § 1026.18(c)(1).........................................................................................7

26   12 C.F.R. § 1026.24(d)(2).........................................................................................9

27

28

Gibson, Dunn &
Crutcher LLP

vi

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I.      INTRODUCTION

LendingClub is a business that maintains exceptional customer satisfaction ratings and has been spotlighted in Federal Reserve Bank publications as a leading example of how innovative financial technology companies are serving to expand credit to underserved consumers and lower overall borrowing costs for people who might otherwise look to credit cards as their lending option of last resort.  Why has the FTC chosen to make this company a litigation target?  According to Count I of the Complaint, it is because LendingClub charges borrowers "hidden fees"—referring to an origination fee that is deducted when loan funds are initially disbursed.  The FTC maintains that LendingClub does not sufficiently disclose these fees, and appears to question the very practice of deducting such loan fees on an upfront basis, arguing that LendingClub's practices rise to the level of actionable deception.[1]  This claim, the linchpin of the FTC's case, should be dismissed on either of two grounds.

First, Count I should be dismissed because the Complaint itself shows that the origination fee is not "hidden."  The Complaint acknowledges that LendingClub discloses the origination fee in at least three logical locations where consumers can be expected to look:

- LendingClub's borrower flow contains a Truth in Lending Act ("TILA") disclosure that closely tracks a model form promulgated by the Consumer Financial Protection Bureau ("CFPB").  This government-prescribed disclosure is unavoidable, meaning that every prospective borrower is necessarily exposed to the disclosure *before* finalizing her application.  The TILA disclosure states the amount of all finance charges including the origination fee and the amount of funds that will be disbursed at the time the loan is funded (i.e., the loan amount less the origination fee).  *See* Compl. ¶ 29 (showing TILA disclosure).

- LendingClub prominently discloses the APR, or "annual percentage rate," at multiple stages during the application process.  *See* Compl. ¶¶ 20, 22, 29 (showing screenshots of application process).  APR is an FTC- and CFPB-endorsed, all-in metric of the cost of credit that includes

---

[1]  The FTC's broader rhetoric attacking the practice of charging upfront origination fees (*e.g.*, Compl. ¶ 24) is surplusage not essential to any claim in the Complaint.  It is also ill-founded.  Indeed, the United States Government itself commonly charges the very same sort of fees in consumer loans, including student loans, deducting such fees at the time of loan origination and charging interest on the full amount loaned.  *See, e.g.*, Federal Student Aid Homepage, U.S. Department of Education, *available at* https://studentaid.ed.gov/sa/types/loans/plus#fees.

Gibson, Dunn &
Crutcher LLP

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

the interest rate and all applicable fees, including origination fees, incident to the extension of credit.  The FTC does not dispute that LendingClub's APR disclosures accurately reflect full loan costs inclusive of the origination fee.

- In addition, LendingClub includes what is referred to as a "tooltip," a bolded green circle icon containing a question mark that appears immediately next to the APR disclosure and provides additional information about how the APR is derived, including a specific explanation of the origination fee.  Compl. ¶ 20.  The green circle icon and question mark invite borrowers to learn more about the APR and total loan costs, and when prospective borrowers click or hover over this tooltip they are shown a clear, concise statement of the loan's interest rate and origination fee, including the percentage and dollar amount of the fee and a reference to the fact that it is "collected out of your loan proceeds." *Id.*  The FTC has raised no concerns about the substance of the information conveyed to borrowers through the tooltip disclosure.

These disclosures, all directly acknowledged by the Complaint, show that the origination fee is not "hidden" in any reasonable sense of the word, much less in a manner corresponding with what courts previously have required to support a "hidden fees" claim, as discussed further below.  As such, the FTC's "hidden fees" claim is implausible as pled and properly subject to dismissal.

The Court can reach this conclusion from reviewing the Complaint's allegations on their face, but there is more—that is, more that the FTC has chosen *not* to reveal about the content of LendingClub's disclosures.  Most notably, LendingClub's website includes a page titled "Rates & Fees" that provides numerous descriptions of the origination fee including "Real-Life Examples" illustrating precisely how the fee works.  This page is accessible through prominent tabs and links placed throughout LendingClub's website, including from the borrower homepage.  The Complaint makes no mention of these critically important disclosures despite the fact that LendingClub repeatedly produced screenshots of this information to the FTC Staff before the Complaint was filed.  There is irony in the FTC accusing LendingClub of "*hiding*" the origination fee when, at the same time, the agency has chosen to selectively omit from its Complaint these critical features of LendingClub's website.  However, the Court is not required to rule on this motion based only on the incomplete facts and limited screenshots the FTC has elected to include in its Complaint.  Because these additional,

1    omitted disclosures of the origination fee are integral to the same website flow that the Complaint has

2    featured and incorporated by reference, the Court may take notice of the additional disclosures the FTC

3    chose to suppress.[2]  Whether or not the Court considers this information, it is clear that the FTC has

4    failed to allege any plausible claim of "hidden fees."

5        Second, Count I should be dismissed because it is undisputed that the disclosures included on

6    LendingClub's website comply fully with TILA, a federal law that governs what consumers must be

7    told about loan fees and the form in which this information must be provided.  Congress enacted TILA

8    to "promote[] 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to

9    consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559, 567-68 (1980).  TILA is "the

10   primary source for interpretation and application of truth-in-lending law." *Household Credit Servs.,*

11   *Inc. v. Pfennig*, 541 U.S. 232, 238 (2004).  In order to ensure that consumers receive simple, clear

12   information regarding loan costs and fees in a standardized format that facilitates apples-to-apples

13   comparisons of credit options, TILA's regulations balance "competing considerations of complete

14   disclosure and the need to avoid informational overload." *Milhollin*, 444 U.S. at 568 (alterations

15   omitted).  Moreover, Congress meant to "promote reliance" on TILA's "sure guidance" by establishing

16   safe harbors for "creditors who comply with the [CFPB's] rules and regulations." *Pfennig*, 541 U.S.

17   at 238; *Milhollin*, 444 U.S. at 566.  One such "safe harbor" arises when disclosures are made using a

18   CFPB model form.  15 U.S.C. § 1604(b).

19       The TILA disclosure on LendingClub's website is based on a CFPB model form, and the

20   Complaint does not allege that the disclosure is in any way non-compliant with the authoritative

21   guidance CFPB issued to guide the lending industry and assure "safe harbor" compliance.  Because the

22   Complaint specifically references the TILA disclosure that all consumer loan applicants are shown

23   (Compl. ¶ 29) and tacitly acknowledges the company's compliance with CFPB's prescribed "safe

---

[2]  *See*, *e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam) (the incorporation by reference doctrine "prevent[s] plaintiffs from surviving a Rule 12(b)(6) motion by *deliberately omitting* . . . documents upon which their claims are based") (quotation marks and citations omitted) (emphasis added); *Knievel v. ESPN*, 393 F.3d 1068, 1071, 1076 (9th Cir. 2005) (affirming a district court's consideration of 17 webpages "surrounding" an allegedly defamatory page because those pages showed the context in which the challenged material was viewed by the public); *Caldwell v. Caldwell*, No. C 05-4166 PJH, 2006 WL 618511, at *3-4 (N.D. Cal. Mar. 13, 2006) ("[A]s a general matter, websites and their contents may be proper subjects for judicial notice.").

harbor" approach, the claim under Section 5 of the FTC Act that LendingClub's disclosures are nonetheless deceptive is precluded as a matter of law.  Holding LendingClub liable for hiding fees when the company discloses those fees in direct compliance with applicable federal law would conflict with the regulatory framework Congress erected for the very purpose of ensuring proper and informative consumer disclosures, and would violate basic principles of fairness and due process.  In short, LendingClub, having complied with the government's authoritative "safe harbor" guidance regarding the nature and format of disclosures communicating loan-related costs to consumers, cannot properly be subject to liability imposed by a separate federal agency applying different standards.  *Cf. POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014) (addressing "preclusion of a cause of action under one federal statute by the provisions of another federal statute").

On either or both of these grounds, the FTC's "hidden fees" claim (Count I) should be dismissed, and the remaining claims are subject to dismissal as well.  Counts II and IV suffer from a common defect in that they seek only injunctive relief and yet fail to challenge conduct that is either ongoing or likely to recur.  The only remaining claim, Count III, should be dismissed because the Commission's allegations fail to meet the statutory causation, substantial injury, and net consumer harm requirements of a Section 5 "unfairness" claim.

## II.   FACTUAL BACKGROUND

### A.   LendingClub

LendingClub was founded in 2007 and operates an online platform that connects borrowers with investors.  Through the platform, consumers may apply for and obtain personal loans that are underwritten and issued by third-party banks.[3]  LendingClub's platform also facilitates investment in interests in the loans by retail and institutional investors.  LendingClub services the loans and acts as an intermediary between the borrower and investors.  Since 2015, LendingClub has facilitated more than $23 billion in loans to more than 1.7 million borrowers.

---

[3]  Although the Complaint suggests that LendingClub itself charges origination fees, in fact these fees are charged by the banks that originate the loans.

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

LendingClub's innovative peer-to-peer funding method provides a lower-cost, convenient alternative to traditional sources of personal loans.  For example, borrowers who refinanced credit card debt decreased their annual costs of credit, on average, from 21.0% to 14.6%, which equates to thousands of dollars in savings.[4]  And due to the short three- and five-year terms on the loans, consumers repay them far more quickly than they would repay a credit-card debt of similar size making minimum payments.  These low-cost, short-term loans have enabled thousands of consumers to clear crippling debt and regain control of their finances.  In 2017, the Federal Reserve Bank of Philadelphia, after extensive study of loan data with the Federal Reserve Bank of Chicago, reported that "LendingClub's consumer lending activities have penetrated into areas that could benefit from additional credit supply … [and have] provided credit access to consumers at a lower cost."[5]

**B.   LendingClub's Disclosures of the Origination Fee**

LendingClub discloses the origination fee in numerous logical locations both during the loan application process—including as required by TILA—and on a Rates & Fees page on its website. Without exception, LendingClub presents these disclosures in a legible font size, in clear, straightforward language, and in places consumers would expect to find information pertaining to fees.

**1.   The TILA Disclosure**

LendingClub's loan application process includes a TILA disclosure on a page titled "Loan Rate & Terms."  *See* Compl. ¶ 29 (showing a screenshot of the disclosure).  This disclosure is modeled on the CFPB's Model Form H-2.  *See* 12 C.F.R. § 1026, App'x H to Part 1026.  The form provides multiple disclosures of the origination fee and other loan terms.  A box at the top of the form (referred to as the "Federal Box") contains the most significant information about the loan—including the annual percentage rate, the total cost of the loan, and the amount received by the borrower at the outset of the loan—in the exact format and language that the CFPB form specifies.  Each disclosure in the Federal

---

[4]   *See* LendingClub Q3 2016 Earnings Call presentation, Slide 7 (November 7, 2017), *available at* http://ir.lendingclub.com/Cache/1001216391.PDF?Y=&O=PDF&D=&fid=1001216391&T=&iid=4213397.

[5]   Julapa Jagtiani & Catharine Lemieux, *Fintech Lending: Financial Inclusion, Risk Pricing, and Alternative Information* (Research Department, Federal Reserve Bank of Philadelphia, Working Paper No. 17-17, July 6, 2017) at 35.

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Box incorporates the origination fee.  For example, the Federal Box in the TILA disclosure from LendingClub's website appears as follows for a hypothetical borrower who applied for a $10,000 loan:[6]



| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid when you have made all scheduled payments |
| --- | --- | --- | --- |
| 14.98% | $2,353(e) | $9,500(e) | $11,853(e) |

The Federal Box is presented at the top of the TILA disclosure because TILA regulations require that the two key items—the APR and the Finance Charge—be "more conspicuous than any other disclosure, except the creditor's identity."  12 C.F.R. § 1026.17(a)(2).

Below the Federal Box, the TILA disclosure provides additional information about the number of payments, payment amounts, late charges, and prepayment policy.  *See* Compl. ¶ 29.  Then, the form explains that the APR on the loan will remain the same even if it is not 100% funded, and it states the "Total Amount Requested," the "Origination Fees," and the "Total Amount Received" by the borrower:



Other than payment dates, items marked (e) will decrease if you receive less than 100% funding. Regardless of the ultimate amount of the loan, <u>your APR will not change.</u> Subject to your right to cancel, an unsecured loan may issue for less than the full requested loan amount if it is not 100% funded by the end of the listing period.

Total Amount Requested: $10,000.00
Origination Fees: $500.00
Total Amount Received: $9,500.00

Unsuccessful payment fee. When a payment fails and is rejected by your bank, you will be charged an Unsuccessful Payment Fee of $15 to cover the cost Lending Club incurs on the transaction.
Each attempt to collect a monthly payment is considered a separate transaction, so an Unsuccessful Payment Fee will be assessed for each failed attempt.

Check Processing Fee. If you elect to make payments by check, there will be a $7 processing fee by payment.

**You are not required to complete this agreement merely because you have received these disclosures or signed a borrower agreement.**

Clicking the box below constitutes your electronic signature and acceptance of:

☐ the Borrower Agreement and the Credit Score Notice.

[ Next ▶ ]

---

[6]  This screenshot is included in Paragraph 29 of the Complaint.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Again, this information is presented in the format, font size, and type specified by the CFPB's Model Form H-2. The disclosure of the origination fee and the total amount to be disbursed is disclosed in the itemization of amount financed as required by TILA, 12 C.F.R. § 1026.18(c)(1), and TILA requires that this disclosure be shown separate from the Federal Box, 12 C.F.R. § 1026.17(a)(1).

The Complaint contends that this list "appears sandwiched between more prominent, bolded paragraphs." Compl. ¶ 30. But the screenshots show that the spacing between the paragraphs before and after the list of information relating to the origination fee is consistent with the spacing elsewhere on the TILA disclosure. And the fact that the information is presented as a list makes each disclosure easier to read and creates white space to the right of the list that sets the disclosures apart from other information on the TILA disclosure. Far from being "sandwiched," these disclosures are presented in a way that differentiates them from other information on the form and draws the reader's eye.

The FTC further alleges that "[i]n most standard screen configurations, the unbolded list appears 'below the fold,' such that consumers would need to scroll down to see it," suggesting it is possible that some consumers do not scroll down and do not see the origination fee disclosures. Compl. ¶ 30. But in order to proceed with the loan application, consumers *must scroll* through the entire TILA statement to push the "Next" button at the bottom of the page. *Id.* at ¶ 29 (showing screenshot).[7] Indeed, when the "Next" button is positioned at the bottom of the screen, the list itemizing the origination fee is directly in the center of the screen.

Thus, every prospective borrower accessing credit through LendingClub receives an unavoidable disclosure of the amount of the origination fee, the amount of money disbursed to the borrower, and a host of financial information that incorporates the fee, including the APR, total amount financed, etc. And all of this information is presented in the manner directed by TILA and the CFPB, the federal agency responsible for promulgating regulations relating to TILA compliance.

---

[7] As the Complaint points out at Paragraph 31, an early version of LendingClub's mobile website permitted consumers to agree to the terms of the loan without scrolling through the TILA disclosure. In early 2017, more than a year before the FTC's lawsuit, LendingClub voluntarily changed the mobile website to mirror the desktop site and require consumers to scroll through the entire TILA disclosure before proceeding with the application.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

2. **The APR Disclosure and Tooltip**

LendingClub also discloses the origination fee during another step in its loan application process through the tooltip.  The tooltip is a bolded green circle with a question mark inside that LendingClub presents immediately next to the APR on the page showing the various loan offers that may be available to the applicant.  The Complaint depicts the screenshot reproduced below of the tooltip disclosure with the information box expanded, Compl. ¶ 20:



The Complaint alleges that "[a] consumer does not need to click on the tooltip in order to move forward with the loan application."  Compl. ¶ 21.  That is true, but it in no way establishes that the information within the tooltip disclosure is "hidden."  The tooltip is designed to invite consumers to learn more about total loan costs, and LendingClub placed the tooltip immediately next to the loan offer's APR, which is an all-in disclosure of the costs and fees associated with the loan, including the origination fee.  The tooltip is a colorful, bolded icon containing a question mark.  Any reasonable consumer would understand it as a place to locate more information about the loan's APR, including what APR means and how it is calculated.  Moreover, the tooltip and APR are presented beside a disclosure of the loan's interest rate.  The fact that the APR is higher than the interest rate signals that the loan includes fees over and above the interest rate costs associated with the loan.  All of this serves to prompt a prospective borrower to click or hover over the tooltip to access additional information.  Selecting the tooltip opens an information bubble that explains the origination fee in very clear and straightforward language and informs prospective borrowers that the fee is "collected out of your loan proceeds."  Compl. ¶ 20.

### 3.      The Rates & Fees Page

LendingClub's website also includes a page, called the "Rates & Fees" page, dedicated to explaining the interest rate, origination fees, and other key financial terms associated with loans available through LendingClub in as clear and consumer-friendly a manner as possible.  Prospective borrowers can access the Rates & Fees page from various logical locations on LendingClub's website, including the borrower homepage.  In addition, other parts of the website contain tabs and links directing consumers to the Rates & Fees page.  The prominent placement of links and tabs that specifically refer to "Rates & Fees" is, of course, yet another indication to potential borrowers that there are fees associated with the loans.  A screenshot showing the link to the Rates & Fees page (highlighted with a red box) on LendingClub's Personal Loans homepage is shown below:[8]



The "Rates & Fees" title of the link unmistakably signals the content within it, and the link is included on a toolbar at the top of the screen, a location Internet users naturally associate with high-level menus and page-navigation options.  Screenshots of the Rates & Fees page itself are provided below:

[images on next page]

---

[8]  *See* Decl. of Betty X. Yang in Supp. of LendingClub's Request for Judicial Notice.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





Several aspects of the Rates & Fees page are particularly relevant to Count I.  First, the description of the origination fee, as shown in the first screenshot above, is remarkably clear.  It explains the potential amount of the fee ("1-6%"), that the fee is "deducted from your loan when the loan is issued," and that the borrower "will receive the amount you applied for minus the origination fee."  Second, this plain language disclosure is accompanied by "Real-life examples" that illustrate how the origination fee works in the context of a hypothetical loan. As shown in the second screenshot above, for a hypothetical $6,000 loan, a one-time origination fee of $300 applies and that fee is deducted from the amount that is deposited in the consumer's account.  The example even includes a parenthetical explaining that the $5,700 amount "[d]eposited in your account" is calculated as "$6,000

minus the $300 origination fee." This is exactly the information the FTC's Complaint alleges is "hidden." Compl. ¶ 55.

Importantly, the Rates & Fees page is (i) accessible from accurately labeled links that are logically placed on LendingClub's website; and (ii) obviously intended to educate consumers and answer any questions regarding how the origination fee works, as well as other terms of loans available through LendingClub.

As noted above, the FTC's Complaint does not mention, let alone discuss, LendingClub's Rates & Fees page in any way. Given that the crux of Count I is an allegation that LendingClub "hides" the origination fee, this omission from the FTC's Complaint is striking and particularly notable. The Court might reasonably expect the FTC's Complaint to identify each disclosure of the fee and explain the basis for the contention that the disclosure is "hidden," but the agency—in a case alleging inadequate disclosure—instead elected to cherry-pick which disclosures it would feature in the Complaint and which it would selectively omit. These strategic pleading decisions are surprising to say the least, but they are ultimately inconsequential because the Court in ruling on this motion has the discretion to take notice of, and to consider, LendingClub's Rates & Fees page, given that it is an integral part of the same LendingClub website referenced repeatedly in the Complaint. *See* Defendant's Request for Judicial Notice (filed simultaneously herewith).

## C.     LendingClub's Past Practices Challenged in Counts II and IV

Counts II and IV do not allege ongoing misconduct or seek damages; rather, the Complaint alleges only past conduct and seeks only injunctive relief. Count II relates to an email LendingClub "has sent" to some borrowers suggesting they were approved for a loan. Compl. ¶ 36. This claim is entirely backwards-looking, as there is no allegation that LendingClub continues to send the challenged emails. *See id*. ¶ 35 ("Defendant *has told*"); ¶ 37 ("consumers *have believed*"); ¶ 39 ("Defendant *has also issued*"); ¶ 57 ("Defendant *has represented*") (emphases added). Similarly, Count IV, which alleges that LendingClub did not appropriately deliver a privacy notice, concerns conduct that took place "*until at least the end of 2016*." *Id.* ¶ 49 (emphasis added). There are no allegations in the Complaint that either of these challenged practices may reasonably be expected to recur.

**D.     Alleged Payment Processing Errors in Automated Withdrawals**

Count III alleges that LendingClub "has withdrawn money from consumers' bank accounts without consumers' authorization" via ACH transfer.  Compl. ¶¶ 41-42.  However, the Complaint makes no effort to quantify the number or rate of alleged "unauthorized" withdrawals, instead merely asserting that they happened in "numerous instances." *Id.* at 42.  Nor does the Complaint allege that any unauthorized withdrawals were intentional or resulted from unreasonable procedures.  Instead, the only stated basis of the FTC's unfairness claim is that LendingClub—a company that processes millions of ACH payments annually—makes some number of erroneous withdrawals, irrespective of whether the company maintained reasonable, good-faith practices (which it has and does).

## III.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of the claims stated in the complaint." *Funke v. Sorin Grp. USA, Inc.*, 147 F. Supp. 3d 1017, 1021 (C.D. Cal. 2015).  A complaint may be dismissed for two reasons: (i) lack of a cognizable legal theory; or (ii) insufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F. 2d 696, 699 (9th Cir. 1988).  "Determining whether a complaint states a plausible claim [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678.  It is the "plaintiff's obligation to provide … more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.     ARGUMENT

**A.     Count I Does Not Plausibly Allege Hidden Fees and Is Legally Barred By TILA**

Count I, the centerpiece of the FTC's Complaint, should be dismissed for two reasons.  First, it does not plausibly allege that the origination fee is "hidden," in light of the repeated, clear disclosures of the fee that are included on LendingClub's website as shown in the Complaint itself, as well as other pertinent website disclosures the FTC's Complaint selectively omits.  Second, the claim that LendingClub inadequately disclosed loan fees is legally precluded by the undisputed fact that the TILA disclosure in LendingClub's application flow (which is reproduced in the Complaint) complies with the governing regulatory scheme established by Congress through the Truth in Lending Act as a means

1   of both ensuring proper disclosures of loan terms to consumers and giving "sure guidance" to the

2   lending industry.  *Pfennig*, 541 U.S. at 238 (2004).

3          **1.     Count I Should Be Dismissed Because the Facts as Alleged Demonstrate That**

4          **LendingClub Has Not "Hidden" the Origination Fee**

5          The Complaint alleges that LendingClub's "no hidden fees" statements are false and deceptive.

6   Compl. ¶¶ 54-55.  To support this claim, the Commission must plead facts that plausibly support the

7   contention that the loan origination fees associated with loans accessed through LendingClub's

8   platform are truly "hidden" from consumers, meaning that the fees are "kept out of sight" or

9   "concealed."[9]   Yet the Complaint itself acknowledges and incorporates by reference multiple

10  disclosures through which LendingClub makes the origination fee known to consumers on its website,

11  and this Court may take notice of additional disclosures from the same website that the FTC's

12  Complaint elected to overlook.  In short, the fees are not "hidden," and so there is nothing whatsoever

13  false or deceptive about saying "no hidden fees."

14         This conclusion is self-evident from the facts recounted in Section II above, which accurately

15  and completely summarizes the content of LendingClub's pertinent website disclosures.  But it is also

16  a conclusion that is amply supported by prior case law addressing analogous claims attacking alleged

17  "hidden fees."  Indeed, courts have previously dismissed "hidden fee" allegations where the disclosures

18  in question revealed far less information to consumers.

19         In *Smith v. Wells Fargo Bank, N.A.*, the plaintiff alleged that Wells Fargo falsely represented

20  that there were no "hidden fees" when, in fact, there was a $53 recording fee.  158 F. Supp. 3d. 91,

21  102-03 (D. Conn. 2016).  But an FAQ sheet included with the loan papers disclosed that a "standard

22  fee associated with the recording of the satisfaction of your existing mortgage will be included in the

23  total payoff of your existing loan."  *Id.*  Although the FAQ sheet was a one-page document in a larger

24  "Mortgage Kit," the court rejected the hidden fees claim.  *Id.* at 102.  Likewise, in *Keithly v. Intelius

25  Inc.*, a single adequate disclosure "on the screen when [the plaintiff] provided his payment information"

26  was sufficient to defeat a hidden fees claim.  764 F. Supp. 2d 1257, 1269 (W.D. Wash. 2011); *see also*

27

28  [9]  *Oxford Online Dictionary*, "Hidden," *available at:*
    https://en.oxforddictionaries.com/definition/hidden (last visited June 12, 2018).

1   *Abbit v. ING USA Annuity & Life Ins. Co.*, 252 F. Supp. 3d 999, 1029 (S.D. Cal. 2017) (representation

2   of "no hidden charges" was not deceptive where insurance company disclosed fees in sales brochure

3   and application documents), *appeal docketed*, No. 17-55836 (9th Cir. June 14, 2017).

4          This Court has rejected claims under California's Unfair Competition Law ("UCL") on similar

5   grounds.  In *Castagnola v. Hewlett-Packard Co.*, No. C 11-05772 JSW, 2012 WL 2159385, at *3 (N.D.

6   Cal. June 13, 2012), the plaintiff alleged a hidden membership fee.  But the defendant's webpage

7   "contain[ed] four references to the fact that there are 'Offer Details,'" and the referenced "details"

8   described the membership fee.  *Id*. at *9.  "Although the text of the offer details [appeared] in a smaller

9   font than the font used to promote [the offer]," the disclosure was "not unreadably small."  *Id*. at *10.

10  Ultimately, the court held in dismissing the claims, "[a] consumer cannot decline to read clear and

11  easily understandable terms that are provided on the same webpage in close proximity to the location

12  where the consumer indicates his agreement to those terms and then claim that the webpage, which the

13  consumer has failed to read, is deceptive."  *Id*. (quoting *In re VistaPrint Corp. Marketing and Sales

14  Practices Litig*., No. 4:09-md-1994, 2009 WL 2884727, at *6 (S.D. Tex. Aug. 31, 2009)).

15         In other similar contexts, fee disclosures in logical places, including in loan documents and

16  marketing materials, have been found sufficient to inform reasonable consumers.  *See, e.g.*, *FTC v.

17  Sterling Precious Metals, LLC*, 894 F. Supp. 2d 1378, 1383 (S.D. Fla. 2012) (rejecting hidden fees

18  claim where consumers "acknowledged receiving literature and materials outlining … [the] risks");

19  *Lowden v. T-Mobile USA Inc.*, 378 F. App'x 693, 694-95 (9th Cir. 2010) (rejecting hidden fees claim

20  where the "the Terms & Conditions ('T&Cs') listed on the back of [the] Service Agreements" disclosed

21  the fee); *Strong v. Option One Mortg. Corp. (In re Strong)*, 356 B.R. 121, 146 (Bankr. E.D. Pa. 2004)

22  (rejecting hidden fees claim where defendant provided a "loan disclosure package that, if reviewed,

23  would have provided [plaintiffs] with information" about the fees).

24         Taken together, these cases illustrate the commonsense principle that when fee information is

25  disclosed in logical places, using understandable language, in legible font, the fee is not "hidden."  That

26  standard is more than satisfied here.  Given LendingClub's undisputed disclosures of the origination

27  fee, the FTC's "hidden fees" claim is simply not plausible and properly should be dismissed.

28

1

2

### 2.     Count I Should Also Be Dismissed Because the FTC's Complaint Is Precluded by LendingClub's Full Compliance with Federal Truth-in-Lending Law

Through passage of the Truth in Lending Act, Congress established a comprehensive regulatory regime to ensure that consumers are provided "meaningful disclosure" of the total cost of credit, including both interest rates and fees. *Milhollin*, 444 U.S. at 568 (1980).  The Supreme Court has repeatedly emphasized that TILA and its implementing regulations are "*the* primary source for interpretation and application of truth-in-lending law." *Pfennig*, 541 U.S. at 238 (2004) (quoting *Milhollin*, 444 U.S. at 567-68) (emphasis added).  In this case, the Complaint includes no allegations that LendingClub's disclosures, including its TILA form, fail to comply in any way with the Truth in Lending Act.  As explained below, the undisputed fact that the disclosures provided to consumers on LendingClub's website comply with TILA means that Count I is precluded as a matter of law.[10]

When two statutes conflict, "the specific governs the general," particularly when "Congress has enacted a comprehensive scheme." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quotation omitted).  While the FTC Act is a general statute for protecting consumers, TILA is a specific, targeted, and "highly technical" law whose explicit purpose is to require "meaningful disclosure" of consumer credit costs through a comprehensive regulatory regime. *Milhollin*, 444 U.S. at 566 (quoting 15 U.S.C. § 1601(a)).  TILA's regulatory regime balances "competing considerations of complete disclosure and the need to avoid informational overload." *Id.* (alterations omitted).  As such, "when neither Congress nor the Federal Reserve Board [the CFPB's predecessor in interpreting and enforcing TILA] has elected to require a particular disclosure … a court *should not impose the disclosure requirement*." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1121 (9th Cir. 2009) (emphasis added).  Yet that is exactly what the FTC asks this Court to do—

---

[10] LendingClub's undisputed compliance with this CFPB-promulgated "safe harbor" form explains why the company, in the past, chose in utmost good faith to highlight that the loans marketed on its website involved "no hidden fees."  As a matter of federal law, compliance with CFPB's model forms is deemed to satisfy all applicable disclosure requirements.  *See* 15 U.S.C. § 1604(b) ("A creditor or lessor shall be deemed to be in compliance with the disclosure provisions of this subchapter with respect to other than numerical disclosures if the creditor or lessor … uses any appropriate model form or clause as published by the [CFPB].").  Congress intended to "promote reliance" on TILA's "sure guidance" by establishing such safe harbors. *Pfennig*, 541 U.S. at 238; *Milhollin*, 444 U.S. at 566.  The FTC's action against LendingClub thus directly undermines congressional intent by seeking to impose liability and uncertainty in an area where Congress, by delegating rulemaking authority to one agency, intended to create clarity and certainty regarding both the substance and form of legally compliant disclosures.

Gibson, Dunn &
Crutcher LLP

namely, impose a disclosure requirement different than the authoritative standard Congress directed the CFPB to adopt, with which LendingClub complies.

In substance, the FTC's "hidden fees" claim is an allegation that LendingClub's legally compliant disclosures of the origination fee are nonetheless inadequate. This amounts to a frontal attack on the sufficiency of the disclosures that have been deemed compliant by the CFPB, the agency endowed by Congress with exclusive agency authority to implement and interpret TILA. *See* 15 U.S.C. § 1604(h) (providing that courts defer to CFPB guidance "as if the [CFPB] were the only agency authorized to apply, enforce, interpret, or administer the provisions of" TILA). Although the FTC seeks through this lawsuit to impose its own "clear and conspicuous" standard of disclosure, as that standard has been interpreted in the context of the FTC's own administrative guidelines (*see* Compl. § 23),[11] Congress established through TILA that credit fees "shall be disclosed clearly and conspicuously, in accordance with regulations of the [CFPB]." 15 U.S.C. § 1632(a).

Hence, Count I of the FTC's Complaint creates a direct conflict between two separate bodies of federal law. In considering a similar conflict between state and federal laws, the Ninth Circuit held that broad deception claims that amounted to "improper-disclosure claims" were barred by federal regulations. *Chae v. SLM Corp.*, 593 F.3d 936, 943 (9th Cir. 2010). In *Chae*, as here, Congress had established a "comprehensive framework" with "precisely-detailed provisions" to govern certain loan disclosures. *Id.* at 944. The plaintiffs did not allege any violation of these regulatory requirements, but nevertheless claimed unfair and misleading practices against a lender based in part on alleged hidden fees. *Id.* at 942. The Ninth Circuit held that "[a]t bottom, the plaintiffs' misrepresentation

---

[11] According to FTC guidance, disclosures are "clear and conspicuous" if (i) placed "where consumers are likely to look"; (ii) displayed "prominently" so that they are "noticeable to consumers"; (iii) repeated; and (iv) written using "clear language and syntax" that "avoid[s] legalese or technical jargon." FTC, .com Disclosures: How to Make Effective Disclosures in Digital Advertising, at 7-21 (March 2013). Although such informal agency guidelines "lack the force of law" and "do not warrant *Chevron*-style deference," *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), LendingClub's disclosures easily satisfy these criteria due to their clarity, proximity, and repetition, as discussed in Part II above.

claims [were] improper-disclosure claims" and therefore preempted by federal regulations specifying the level of disclosure that is deemed to satisfy federal law.  *Id.* at 943.[12]

*Chae* is no outlier.  In analyzing TILA's effect on state law claims for unfair and deceptive practices, courts in the Ninth Circuit regularly hold that TILA compliance preempts claims of inadequate disclosure.  *See Hauk*, 552 F.3d at 1122 (9th Cir. 2009) ("[Defendant's] compliance with TILA's disclosure requirements provides a safe harbor with respect to Hauk's UCL claims based only on the sufficiency of [Defendant's] disclosures."); *Rubio v. Capital One Bank (USA), N.A.,* 572 F. Supp. 2d 1157, 1167 (C.D. Cal. 2008) ("[T]o permit this claim to proceed despite Defendant's compliance with TILA and Regulation Z would frustrate the purposes of the law."), *rev'd in part on other grounds by* 613 F.3d 1195 (9th Cir. 2010).  Although this case involves a conflict between two federal statutes, such preemption principles are "instructive insofar as they are designed to assess the interaction of laws that bear on the same subject."  *POM*, 134 S.Ct. at 2236.

For LendingClub to be subjected to potential liability under the FTC Act for failure to provide greater or differently configured disclosures of loan origination fees despite undisputed compliance with the governing regulatory scheme enacted by Congress for the precise purpose of ensuring proper consumer disclosures would run afoul of well-established statutory preemption and preclusion principles, and this is an additional ground for dismissing Count I.  Indeed, to subject LendingClub to potential exposure for claimed FTC Act violations in these circumstances would violate basic notions of fairness and due process, creating a problem of constitutional significance.  *See U.S. v. Zhi Yong Guo*, 634 F.3d 1119, 1122-23 (9th Cir. 2011) (explaining that due process requires giving "citizens fair notice with respect to what the statute and regulations forbid") (citing *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)); *Ala. Prof'l Hunters Ass'n v. FAA*, 177 F.3d 1030, 1035 (D.C. Cir. 1999) ("Those regulated by an administrative agency are entitled to know the rules by which the game will be played."), *abrogated on other grounds by Perez v. Mortg. Bankers Ass'n*, 135 S.Ct. 1119 (2015); *see*

---

[12]  Similarly, in *Geier v. Am. Honda Motor Co.*, the Supreme Court considered whether federal automobile safety regulations preempted a state law claim "that the defendant auto manufacturer, who was in compliance with the standard, should nonetheless have equipped" a car with different safety features.  529 U.S. 861, 865 (2000).  The claim was held to be preempted because "it would take from those who would enforce a federal law the very ability to achieve the law's congressionally mandated objectives."  *Id.* at 871-72.

*also Raley v. State of Ohio*, 360 U.S. 423, 437-39 (1959) (finding a due process violation where government officials "who clearly appeared to be the agent of the State in a position to give such assurances" had apprised the defendant that the accused conduct was lawful).

Only one federal agency—the CFPB, not the FTC—has issued authoritative guidance specifying to lending industry participants the nature and form of loan fee disclosures that will assure "safe harbor" compliance with federal law.  As noted above, Congress directed CFPB to set standards for ensuring that consumer credit terms are disclosed "clearly and conspicuously."  15 U.S.C. § 1632(a).  Because the disclosures on LendingClub's website comply with those laws and regulations, the company cannot now be subjected to federal claims from another governmental body applying a purportedly different standard of disclosure.

**B.    Counts II and IV Are Moot Because the Challenged Conduct Ceased Long Ago**

Counts II and IV are both entirely backward-looking and seek only injunctive relief.  These counts should be dismissed because (i) the FTC Act only empowers the agency to sue for ongoing or imminent violations; and (ii) injunctive relief requires a showing of imminent harm.

> **1.    Section 5 of the FTC Act Does Not Empower the FTC to Challenge Past Conduct That Is Not Likely to Recur**

The FTC is "an administrative body possessing only such powers which are granted by statute." *Arrow-Hart & Hegeman Elec. Co. v. FTC*, 291 U.S. 587, 598 (1934).  The plain language of the statute grants the FTC authority to "bring suit" in federal court only where a defendant "is violating, or is about to violate" the law.  15 U.S.C. § 53(b).  Where the "alleged misconduct ceased" significantly before the complaint was filed, and the complaint contains "nothing by way of facts that plausibly suggest [defendant] 'is about to violate' any law," dismissal is appropriate.  *FTC v. Shire Viropharma*, 17-CV-00131 (RGA), at 11-12 (D. Del. Mar. 20, 2018).

As the Ninth Circuit has explained, the "view that § 13(b) cannot be used to remedy past violations is supported by the statutory language" because "the statute does not mention past violations."  *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985).  Or as another federal district court in California put it, "Section 13(b) (i.e. 15 U.S.C. § 53(b)) cannot be used to remedy past violations of Section 5 of the FTC Act."  *FTC v. Infinity Grp. Servs., Inc.*, WL 2009 10672411, at *3

(C.D. Cal. Sept. 2, 2009).  Here, the Complaint recites no factual allegations pertaining to Counts II or IV that "plausibly suggest [LendingClub] 'is about to violate' any law."  *Shire*, *supra*, at 11-12.  Because all of the conduct at issue in Counts II and IV ceased long before the filing of the Complaint, the FTC has no authority under Section 13(b) to "bring suit in the first place."  *Id.* at 7.

### 2.   Past Conduct That Is Unlikely to Recur Cannot Justify Injunctive Relief

Even if the FTC had statutory authority to pursue its claims, it would not be entitled to the injunctive relief sought in Counts II and IV.[13]  To establish entitlement to injunctive relief, a plaintiff must plausibly plead that the alleged conduct is either "ongoing or likely to recur."  *Evans Prods.*, 775 F.2d at 1087.  Indeed, a civil action seeking only injunctive relief is "moot when the challenged conduct ceases such that 'there is no reasonable expectation that the wrong will be repeated.'"  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).  For this reason, Article III of the U.S. Constitution requires allegations of a "threatened injury" that is certainly impending.  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citing *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

"[T]he mere possibility" of a "recurrent violation" is insufficient for injunctive relief.  *W.T. Grant Co.*, 345 U.S. at 633; *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003).  And the mere allegation of past misconduct—even if the allegation were true—"does not in itself show a present case or controversy regarding injunctive relief."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)); *see also Lovell v. Keller*, 232 F.3d 895 (9th Cir. 2000) ("[A] past injury does not in itself satisfy the injury-in-fact requirement for injunctive relief").  Instead, a plaintiff must allege facts *beyond* mere past violations in order to show a likelihood of recurrence.  *See Luxpro Corp. v. Apple Inc.*, No. C 10-03058 (JSW), 2011 WL 3566616, at *8 (N.D.

---

[13]   Although the Complaint contains a boilerplate request that the Court award other forms of equitable relief, *see* Compl. at 27 (Prayer for Relief requesting the Court to "[a]ward such relief as [it] finds necessary to redress injury to consumers resulting from Defendant's violations … including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies"), the Complaint includes no factual allegations to support such relief.  Indeed, there is no allegation of the required elements of rescission and reformation, nor of any monies subject to restitution, refund, or disgorgement.  As such, the Complaint does not adequately plead these remedies.  *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555  (2007) (holding that plaintiffs must allege "more than labels and conclusions").

Gibson, Dunn &
Crutcher LLP

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Cal. Aug. 12, 2011) (dismissing claim for injunctive relief where plaintiff "ha[d] not alleged any facts showing that [defendant's] conduct is likely to recur").

In *Evans Products*, the Ninth Circuit rejected the FTC's attempt "to obtain injunctive relief for violations which have completely ceased," and—as here—that had "ceased … long before the FTC's complaint was filed." 775 F.2d at 1088. Similarly, in *FTC v. Amazon.com, Inc.*, the FTC challenged certain business practices that the defendant had discontinued. No. C14-1038-JCC, 2016 WL 10654030, at *4-6 (W.D. Wash. Jul. 22, 2016). Although the court agreed with the FTC that "'[m]ere voluntary cessation of allegedly illegal conduct does not moot a case,'" it held that the inquiry of whether injunctive relief is appropriate "hinges upon whether the FTC has established, *with evidence*, a cognizable danger of a recurring violation: not whether [defendant] has met a mootness burden." *Id.* at *6 (emphasis added). Given that the challenged conduct had long since ceased and the number of consumers continuing to be affected were "all told, very low," the court found no cognizable danger of a recurring violation and granted summary judgment in Amazon's favor with respect to injunctive relief. *Id*.

Here, as in *Evans* and *Amazon*, the FTC did not plead a likelihood of recurrence. The *only* allegation relating to a likelihood of recurrence is the bare assertion that, "[a]bsent injunctive relief by this Court, Defendant is likely to continue to injure consumers." Compl. ¶ 66. Such rote allegations are insufficient because they are entirely conclusory. *See Iqbal*, 556 U.S. at 678-79 (explaining that federal courts are "not bound to accept as true a legal conclusion couched as a factual allegation"). Indeed, in *Shire*, the court rejected a strikingly similar "conclusory" allegation that "there is a cognizable danger that [defendant] will engage in similar conduct" as insufficient to adequately plead an injunction claim. *Shire, supra*, at 11-12. Because the FTC does not plausibly allege any likelihood of recurrence, it cannot obtain injunctive relief.

## C.   Count III Fails to Plead a Cognizable Section 5 Unfairness Claim

The FTC's threadbare allegations in Count III fail to state a claim under Section 5 of the FTC Act. Under Ninth Circuit law, an unfairness claim under Section 5 has four elements: (i) proximate causation; (ii) substantial injury; (iii) reasonable avoidability by consumers; and (iv) no substantial

1    consumer benefit that outweighs consumer injury.  *See FTC v. Neovi*, *Inc.*, 604 F.3d 1150, 1155 (9th

2    Cir. 2010).  Count III is facially deficient on the first, second, and fourth elements.

3         **1.    The Complaint Does Not Allege an Unfair Practice**

4         Count III does not allege that LendingClub engaged in any unfair conduct; instead, it merely

5    alleges that harm occurred in numerous instances, without contending what *caused* the harm.  Indeed,

6    the Complaint tacitly acknowledges that some rate of error in automated withdrawals is unavoidable

7    by referencing the erroneous withdrawal rates of other companies.  *See* Compl. ¶ 22.  Given that

8    perfection across millions of transactions is practically unattainable, the mere fact of some unspecified

9    number of errors does not support an FTC Act claim absent a well-supported allegation that these errors

10   were the result of an unfair practice.  Yet the Complaint says nothing to suggest that LendingClub acted

11   unfairly or even that LendingClub should have done differently.

12        Statutory claims have an implicit proximate cause requirement.   As the Supreme Court

13   explained in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, "Proximate-cause analysis is

14   controlled by the nature of the statutory cause of action.  The question it presents is whether the harm

15   alleged has a sufficiently close connection to the conduct the statute prohibits."  134 S. Ct. 1377, 1390

16   (2014).  For purposes of the FTC Act, causation requires that consumer injury resulted from "the

17   machinations of those with ill intentions" or "through the actions of those whose practices facilitate, or

18   contribute to, ill-intentioned schemes [where] the injury was a predictable consequence of those

19   actions."  *Neovi*, 604 F.3d at 1156.  Thus, the FTC Act prohibits negligent, reckless, or intentional (in

20   a word, "unfair") conduct that causes consumer injury; it does not reach mere instances of consumer

21   harm, numerous or otherwise, that resulted from reasonable mistakes or other innocent causes.

22        The FTC's jurisprudence has consistently recognized that to be "unfair," conduct must be

23   negligent, reckless, or intentional.  For example, in a seminal case regarding the FTC's unfairness

24   jurisdiction, the defendant was found liable because it "knew or should have known," that its fuel tanks

25   were dangerous and yet it did not disclose this risk.  *In the Matter of Int'l Harvester Co.*, 104 FTC 949,

26   at *104 (1984).  Similarly, in *Neovi* the defendant was liable because it "was on notice as to the high

27   fraud rate," yet "turned a blind eye to fraudulent business made possible only through [its] site."  604

28   F.3d at 1155.  *See also FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 996 (N.D. Cal. 2010) (defendants

were "well aware (or were recklessly indifferent to mountains of evidence) that most of their customers were being billed without their knowledge"); *FTC v. JK Publc'ns, Inc.*, 99 F. Supp. 2d 1176, 1202-03 (C.D. Cal. 2000) (defendants "received thousands of consumer complaint calls a day" and "[m]ore than 50% of the calls … were from people who said they did not order anything from the defendants").

Earlier this month, the U.S. Court of Appeals for the Eleventh Circuit assessed an unfairness claim brought by the FTC alleging that the defendant had not employed adequate data security measures. *LabMD, Inc. v. FTC*, No. 16-16270, 2018 WL 2714747 (11th Cir. June 6, 2018). The court explained that, for purposes of the FTC Act, "an act or practice's 'unfairness' must be grounded in statute, judicial decisions—i.e., the common law—or the Constitution. An act or practice that causes substantial injury but lacks such grounding is not unfair within Section 5(a)'s meaning." *Id.* at *5. Likewise, here, the FTC's unfairness claims against LendingClub require more than a mechanical application of the statutory elements. Rather, the claims must be grounded in principles of common-law fault, which require (at minimum) a showing of negligence that is not alleged in the Complaint.

The Complaint comes closest in one short paragraph where it claims LendingClub knew of "a growing number of complaints" about payment processing and that its "rate of unauthorized bank withdrawals [] has often exceeded the rates of unauthorized withdrawals made by other companies." Compl. ¶ 45. Yet these nebulous allegations reveal nothing about the overall magnitude of complaints nor how or why the complaints might be growing. Indeed, the number of personal loans originated through LendingClub's platform has increased over time; thus, the number of complaints relating to erroneous withdrawals may have increased while the *rate* of such complaints (the relevant metric) decreased. The Complaint does not elaborate. Moreover, the allegations offer no details about these mysterious unnamed "other companies" or their error rates. *Id.* Even if these allegations were true, they do not suffice to plead unreasonable (let alone reckless or ill-intentioned) conduct.

Because the Complaint does not provide any basis for finding that Lending Club engaged in actionable unfair conduct (whether negligent, reckless, or intentional), the FTC's allegations effectively impose a strict liability standard. Such a sweeping claim reflects a dangerous and unprecedented expansion of the FTC's unfairness jurisprudence, and it contradicts the Supreme Court's mandate that courts take measures to ensure that statutory causes of action relate to injuries proximately caused by

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

the conduct the statute was intended to prohibit.  Simply put, the FTC Act requires that the alleged harm was caused by conduct that was unfair.  Because the FTC's Complaint does not allege that any unfair practice caused the claimed consumer harm, it fails as a matter of law.

### 2.     Count III Fails to Allege Substantial Injury to Consumers

The Complaint does not adequately plead a substantial injury because it offers no allegations regarding the magnitude or frequency of the alleged harm.  Congress did not intend for companies to face unfairness liability for *any* consumer injury, but rather explicitly required in the statute that the injury be "*substantial*."  15 U.S.C. § 45(n) (emphasis added).  A substantial injury is an act or practice that does "a small harm to a large number of people" or that "raises a significant risk of concrete harm."  *Neovi*, 604 F.3d at 1157.  A complaint must allege "concrete and quantifiable evidence" as to the extent of the injury.  *FTC v. Johnson*, 96 F. Supp. 3d 1110, 1151-52 (D. Nev. 2015).

Instead, the only allegations regarding consumer harm are that unauthorized withdrawals occurred in "numerous instances."  Compl. ¶ 42.  But "numerous" simply means "a number"—it provides no context from which the Court can infer, let alone evaluate, whether the alleged errors resulted in harm to a "large number of people."  *Neovi*, 604 F.3d at 1157.  Moreover, the Complaint makes no effort to explain how the drafted payments applied against the borrower's debt balance (*see* Compl. ¶ 42(a) & (b)) could constitute *any* injury, much less a substantial injury.  And the Complaint conspicuously does not allege any failures to apply refunds to remedy erroneous withdrawals (in fact, the record shows that LendingClub consistently applied refunds when it made mistakes).

The FTC's vacuous allegation of "numerous instances" of injury amounts to a rote recitation of the element of the claim, which is insufficient.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  The Complaint's silence on these facts stands in notable contrast to the FTC's past unfairness actions.  *Cf. Neovi*, 604 F.3d at 1154 (over 150,000 checks drawn from defrauded accounts); *JK Publc'ns*, 99 F. Supp. 2d at 1203 (over 120,000 card chargebacks); *Inc21.com*, 745 F. Supp. 2d at 1004 (97% of defendants' so-called customers had not agreed to purchase defendants' products); *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1078 (C.D. Cal. 2012) ("thousands of consumers were misled"), *aff'd in part and vacated in part by* 815 F.3d 593 (9th Cir. 2016).  Because Count III does not include

any such allegations quantifying or contextualizing the alleged harm, it does not adequately plead the "substantial injury" element of an unfairness claim.

> **3.      Count III Does Not Allege Injurious Net Effects from Automated Withdrawals**

Finally, Count III is facially deficient because it makes no allegation that LendingClub's automated withdrawals have had a net-negative effect on consumers.  An act or practice does not "unfairly injure[] consumers unless it is injurious in its net effects." *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 975 (D.C. Cir. 1985).  The FTC's Complaint says *nothing* whatsoever about this required element of its claim, much less contain sufficient allegations to defeat a motion to dismiss. *Cf. CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 917 (S.D. Ind. 2015) (finding that assertion that injury was not outweighed by countervailing benefits is "inadequate and conclusory" standing on its own).

The specific conduct at issue in Count III—automated ACH withdrawals—produces significant consumer benefits.  ACH simplifies payment and mitigates against potential late fees and defaults by borrowers.  As the FTC recognizes, the benefits of automatic billing often outweigh the costs of inevitable billing errors.  *Cf.* Remarks of Former Director, Bureau of Consumer Protection J. Howard Beales, Remarks at the Marketing and Public Policy Conference (May 30, 2003) (noting that "there are prominent examples of misbilling that should not be considered violations of the FTC Act").  Because automated withdrawals indisputably provide consumer benefits, the FTC's failure to plead facts sufficient to show that the alleged harms outweigh these benefits is fatal to its claim.

## V.      CONCLUSION

For the reasons set forth above, LendingClub respectfully requests that the Court dismiss the FTC's Complaint in its entirety.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1    DATED: June 18, 2018                    Respectfully submitted,

2

3                                            By:    /s/ M. Sean Royall

4                                            M. SEAN ROYALL (*pro hac vice*)
                                             BETTY X. YANG (*pro hac vice*)
5                                            BRETT S. ROSENTHAL (*pro hac vice*)
                                             sroyall@gibsondunn.com
6                                            GIBSON, DUNN & CRUTCHER LLP
                                             2100 McKinney Avenue
7                                            Dallas, TX 75201
                                             Telephone: 214.698.3100
8                                            Facsimile: 214.571.2900

9                                            BRIAN M. LUTZ, SBN # 255976
                                             AVERY E. MASTERS, SBN #306703
10                                           blutz@gibsondunn.com
                                             GIBSON, DUNN & CRUTCHER LLP
11                                           555 Mission Street, Suite 3000
                                             San Francisco, CA  94105
12                                           Telephone: 415.393.8379
                                             Facsimile: 415.374.8474
13
                                             RICHARD H. CUNNINGHAM (*pro hac vice*)
14                                           rhcunningham@gibsondunn.com
                                             GIBSON, DUNN & CRUTCHER LLP
15                                           1801 California Street
                                             Denver, CO 80202
16                                           Telephone: 303.298.5752
                                             Facsimile: 303.298.5907
17
                                             *Attorneys for Defendant*
18

19

20

21

22

23

24

25

26

27

28