ALDEN F. ABBOTT
General Counsel
KATHARINE ROLLER
MATTHEW WILSHIRE (CA Bar No. 224328)
DAVID LINCICUM
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Phone: (202) 326-3582
Facsimile: (202) 326-3768
Email: kroller@ftc.gov; mwilshire@ftc.gov; dlincicum@ftc.gov
*Attorneys for Plaintiff Federal Trade Commission*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

LENDINGCLUB CORPORATION,

d/b/a Lending Club,

Defendant.

**Case No. 3:18-cv-02454-JSC**

**FIRST AMENDED COMPLAINT**

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the Privacy of Consumer Financial Information Rule ("Privacy Rule"), 16 C.F.R. Part 313, recodified at 12 C.F.R. § 1016 ("Reg. P"), and issued pursuant to Sections 501-504 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. §§ 6801-6803, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendant's acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Privacy Rule, 16 C.F.R. Part 313, recodified at 12 C.F.R. § 1016.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(2), (c)(3), and (d), and 15 U.S.C. § 53(b).

## INTRADISTRICT ASSIGNMENT

4. Assignment to the San Francisco Division is proper because at all relevant times Defendant has conducted business, marketed its services, and provided its services in the county of San Francisco.

## PLAINTIFF

5. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Privacy Rule, 16 C.F.R. Part 313, recodified at 12 C.F.R. § 1016, which requires financial institutions to protect the privacy of consumer information.

6. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, and the Privacy Rule, and to secure such equitable relief as

may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), and 16 C.F.R. Parts 313 & 314.

**DEFENDANT**

7. Defendant LendingClub Corporation, also doing business as Lending Club ("Lending Club"), is a Delaware corporation with its principal place of business at 71 Stevenson Street, Suite 300, San Francisco, California 94105. Lending Club transacts or has transacted business in this district and throughout the United States. At all times material to this complaint, Lending Club has advertised, marketed, and distributed unsecured personal loans to consumers throughout the United States.

**COMMERCE**

8. At all times material to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANT'S BUSINESS ACTIVITIES**

9. Defendant offers consumer loans through its website, www.lendingclub.com. Defendant advertises its loan offerings and handles consumer interactions during the life of the application and loan, including application processing, assessment of creditworthiness, and loan servicing, although the loans are formally issued by a bank.

10. Defendant lures prospective borrowers by promising "no hidden fees," but when the loan funds arrive in consumers' bank accounts, they are hundreds or even thousands of dollars short of expectations due to a hidden up-front fee that Defendant deducts from consumers' loan proceeds. Defendant is persisting in this conduct despite warnings from its own compliance department that Defendant's concealment of the up-front fee is "likely to mislead the consumer." Defendant also has misled consumers about whether their loan applications have been approved, stringing consumers along by, for example, telling consumers, "Hooray! Investors Have Backed

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

Your Loan" when Defendant knew many such consumers would never receive a loan. Based on these misrepresentations, consumers believed that Defendant's funds were forthcoming, and did not apply for credit with Defendant's competitors. And with numerous consumers who have received a loan, Defendant has withdrawn double payments from consumers' accounts and continued to charge consumers who cancelled automatic payments or even paid off their loans entirely, costing consumers overdraft fees and preventing them from making other payments.

11. In addition, Defendant failed to provide consumers with clear and conspicuous privacy notices.

**Consumers' Application Process**

12. Many consumers first learn of Defendant's products through its advertisements. In those advertisements, Defendant often represents that it charges "no hidden fees." For example, many of Defendant's mail advertisements include a line that states, "**FEES**: There are no hidden fees or prepayment penalties." An example of such an advertisement is attached as Exhibit A. Many other mail advertisements prominently represent in bold type, "**No hidden fees or prepayment penalties**," directly underneath a large, colorful exclamation point. An example of such a representation from Defendant's mail advertisements appears below. An example of an advertisement in which this representation appears is attached as Exhibit B.

13. Defendant's online advertisements also frequently represent that its loans contain "no hidden fees." An example of an online banner advertisement making this representation appears below.

14. In addition, Defendant created online advertising in the form of paid blog posts promoting its product on popular financial blogs; many of these posts included the "no hidden fees" representation. For example, a blog post that Defendant created that still appears on the credit website Quizzle states, "[O]nce you're approved, your money goes straight into your account, with no hidden fees."

15. Consumers who view Defendant's online, mail, or television advertisements or hear Defendant's radio advertisements are directed to apply for Defendant's loans by visiting Defendant's website, www.lendingclub.com. When consumers visit the home page of Defendant's website to apply for a personal loan, they have seen a screen similar to the following:

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222



LendingClub
Sign in
Help
Personal Loans
Auto Refinancing
Business Loans
Patient Solutions
Investing
How It Works
About Us
Better Rates. Together.
Personal Loans up to $40,000
How much do you need?
What is it for?
How is your credit?
Respond to mail
Check Your Rate
Won't impact your credit score
Privacy & security PROTECTION
Financial Innovation
Lending Club is the world's largest online marketplace connecting borrowers and investors. We're transforming the banking system to make credit more affordable and investing more rewarding. We operate at a
INVESTORS
BORROWER
Featured Borrower
Rebecca

The page has asked consumers "How much do you need?"

16. Consumers who visit Defendant's home page on a mobile device see a screen similar to the following:

FIRST AMENDED COMPLAINT
Case No. 3:18-cv-02454-JSC

6

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

Again, Defendant asks consumers, "How much do you need?"

17. Consumers next see a page titled "Check Your Rate," similar to the example below:

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

18. Once consumers complete this page, Defendant conducts a credit pull on applicants' credit reports. Defendant then immediately rejects those consumers that it determines do not meet certain baseline criteria. Defendant refers to this step as "front-end" denial. Consumers who are rejected on the front end are not shown any loan offers from Defendant.

19. If Defendant determines that a consumer meets Defendant's baseline lending criteria, Defendant has presented consumers a page of loan offers similar to the following:

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

LendingClub

How it Works | Privacy | Sign Out | Help

Excellent! You Qualify for a Credit Card Refinance Loan

We have a great rate for you:

| $10,000 | $329.24 (36 payments) | 11.39% | 14.98% |
|---|---|---|---|
| Loan Amount | Monthly Payment | Interest Rate | APR |

Get Loan

Fixed interest rate

No prepayment penalties

No hidden fees

You also qualify for these loan amounts:

| Loan Amount | Monthly Payment | Months | Interest Rate | APR | |
|---|---|---|---|---|---|
| $16,000 | $526.78 | 36 | 11.39% | 14.98% | Get Loan |
| | $372.21 | 60 | 13.99% | 16.81% | Get Loan |

On this page, Defendant presents consumers with bold-faced offers of a specific "Loan Amount." The only mention of fees on this page is the representation, "No hidden fees," accompanied by an icon of a smiling masked bandit.

20. On a desktop, a small green dot with a white question mark inside appears beside the word "APR." Defendant describes this dot as the "tooltip." If a consumer clicks on the tooltip, a pop-up bubble appears containing a small-print disclosure such as the following:

LendingClub

How it Works | Privacy | Sign Out | Help

Excellent! You Qualify for a Credit Card Refinance Loan

We have a great rate for you:

$10,000 Loan Amount | $308.73 (36 payments) Monthly Payment | 6.99% Interest Rate | 9.41% APR

APR stands for Annual Percentage Rate, and is a measure of the total cost of credit as an annual rate. The APR is comprised of the annual interest you pay at a rate of 6.99% - which is ultimately paid each month to the investors who enable your loan - and a one-time origination fee of 3.5% ($350.00) that is collected out of your loan proceeds.

Get Loan

Fixed interest rate | No prepayment penalties | No hidden fees

21. At the bottom of the pop-up, after an explanation of the term "APR," the text mentions an up-front fee that is collected out of consumers' loan proceeds. If a consumer does not click on the tooltip, the pop-up bubble does not appear, and there is no other disclosure on this page from which a consumer could learn of the existence of the up-front fee. A consumer does not need to click on the tooltip in order to move forward with the loan application.

22. On a mobile device, the loan offers page also does not mention any fees, other than the representation, "No hidden fees." An example of the mobile loan offers page appears below:

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

If a consumer were to tap on the APR, he or she would be shown a pop-up bubble similar to that shown to a consumer viewing the loan offers page on a computer who clicks on the tooltip. Otherwise, the pop-up bubble would not appear, and there is no other disclosure on this page from which a consumer could learn of the existence of the up-front fee.

23. Although Defendant tells consumers that its loans contain "No hidden fees," Defendant nevertheless charges consumers an up-front fee that is not clearly and conspicuously disclosed. This fee is calculated as a percentage—on average, approximately 5 percent—of the consumer's requested loan amount, and often amounts to more than a thousand dollars.

24. Defendant deducts the hidden up-front fee from the promised "Loan Amount" before disbursing the loan funds to the consumer. As a result, the amount of money that Defendant disburses to a consumer's bank account is always substantially smaller than the promised "Loan Amount." And because consumers must pay interest on the entire "Loan Amount," including the fee, Defendant's hidden fee leaves consumers paying interest on principal that they never received.

25. Consumers frequently complain to Defendant that they were not aware of the up-front fee that would be deducted from the full "Loan Amount" that they requested. For example, one consumer reported that he applied for $15,000 to cover relocation expenses, and was surprised to receive only $14,000—an amount insufficient to cover his relocation—after Defendant deducted a $1,000 up-front fee. Another consumer applied for a $30,000 loan in order to consolidate his credit card debt at a lower interest rate; because Defendant deducted a $1,200 up-front fee, however, the consumer was unable to pay off his credit card debt in full, leaving him with more bills to pay than he had before.

26. Defendant is aware that many consumers do not know about the up-front fee and expect to receive the full loan amount. Defendant's training materials for customer service representatives list "I didn't receive the full loan amount" as one of the two main post-disbursement complaints that representatives should be prepared to address. And Defendant's quarterly complaint reviews have proposed "highlighting [the] origination fee" to address complaint volumes. In addition, internal compliance reviews repeatedly cite the concealment of the fee as a significant problem for consumers. For example, one compliance review noted: "The origination fee is disclosed on the offer page tooltip, but is not readily apparent unless an applicant clicks on the tooltip. This omission could be perceived as deceptive as it is likely to mislead the consumer." One of Defendant's largest investors also warned Defendant that the up-front fee "is not clear and conspicuous and could be subject to a UDAAP claim," referring to an unfair or deceptive acts and practices claim. The investor's legal counsel also told Defendant

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

that Defendant's ads "prominently state[] that there are 'No Hidden Fees' yet the documents we reviewed contain a large ($300 to $450) origination fee that only appears once," and warned this "relative obscurity" could make it a target in a law enforcement action.

27. Defendant has ignored these warnings. Rather than improving over time, Defendant's violations have become more egregious over the years: when redesigning the application flow in the winter of 2014, Defendant *increased* the prominence of the "No hidden fees" representation and *decreased* the prominence of the tooltip.

28. On the Loan Offer page, where a consumer is presented with the "No hidden fees" representation, the accompanying bandit icon, and the "Loan Amount," the consumer may accept the offered terms by clicking a button reading "Get Loan" or "Continue." If a consumer clicks on this button, he or she is then sent to a page titled "Loan Details," similar to the example below:

The screen states, in large type: “Just a few more details before you get your [purpose] loan.” The same representation appears on the mobile version of the “Loan Details” page.

29. Consumers who click the “Next” button are then shown a page titled “Loan Rate & Terms.” An example of the desktop version of the page appears below:

LendingClub

How it Works | Privacy | Sign Out | Help

Loan Rate & Terms

1 Check Your Rate → 2 Loan Details → 3 Loan Terms → 4 Bank Account

TRUTH IN LENDING DISCLOSURE STATEMENT

Lender

WebBank
215 South State Street
Suite 800
Salt Lake City, UT 84111

Borrower

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid when you have made all scheduled payments |
|---|---|---|---|
| 14.98% | $2,353(e) | $9,500(e) | $11,853(e) |

Your payment schedule will be as follows:

| Number of payments | Amount (e) | When payments are due(e) |
|---|---|---|
| 35 | $329.24 | Your first payment will be due one month after the issuance of your loan and then monthly thereafter. Payments are due on the same date each month. If your due date is the 29th, 30th or 31st, and the current month is shorter, your payment will be on the last day of the month. |
| 1 | $329.60 | Your last payment will be due 36 months from the issuance date of your loan. |

Late charges: If your payment arrives after your **15** day grace period, you will be charged a late fee equal to the greater of 5.00% of the late payment amount or **$15**. This fee is charged only once per late payment.

Prepayment policy: If you pay off your loan early, you will not be charged a penalty. In the event of a full prepayment, you may be entitled to a refund of part of the finance charge.

**See your borrower agreement for any additional information about nonpayment, default, or other matters related to your loan.**

**(e) means estimate**

**Other than payment dates, items marked (e) will decrease if you receive less than 100% funding. Regardless of the ultimate amount of the loan, your APR will not change. Subject to your right to cancel, an unsecured loan may issue for less than the full requested loan amount if it is not 100% funded by the end of the listing period.**

Total Amount Requested: $10,000.00
Origination Fees: $500.00
Total Amount Received: $9,500.00

Unsuccessful payment fee. When a payment fails and is rejected by your bank, you will be charged an Unsuccessful Payment Fee of $15 to cover the cost Lending Club incurs on the transaction.
Each attempt to collect a monthly payment is considered a separate transaction, so an Unsuccessful Payment Fee will be assessed for each failed attempt.

Check Processing Fee. If you elect to make payments by check, there will be a $7 processing fee by payment.

**You are not required to complete this agreement merely because you have received these disclosures or signed a borrower agreement.**

Clicking the box below constitutes your electronic signature and acceptance of:

the Borrower Agreement and the Credit Score Notice.

Next ▸

FIRST AMENDED COMPLAINT
Case No. 3:18-cv-02454-JSC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

14

30. The only place the up-front fee is disclosed on this page is the unbolded itemization that appears sandwiched between more prominent, bolded paragraphs. In most standard screen configurations, the unbolded list appears "below the fold," such that consumers would need to scroll down in order to see it.

31. On a mobile device, if a consumer clicks the green button on the Loan Offer page, the consumer is taken to a page featuring links to the Borrower Agreement and Credit Score Notice and a large "I Agree" button that allows consumers to move forward with the loan application process. If a consumer clicks on the button, the consumer's application is complete. A version of this page that Defendant has presented appears below as it would appear on many smartphones, including iPhones and other models:

At numerous times, on an iPhone 5 and similar models, the Truth in Lending tab would appear below the fold.

32. In the version appearing above, if, instead of clicking on the large green "I Agree" button, a consumer goes further on the screen, sees the Truth in Lending Disclosure Statement, and

scrolls down, a Truth in Lending box with the loan terms would appear. In versions in which the green "I Agree" button does not appear near the top of the screen, a consumer must also scroll down in order to see the Truth in Lending Disclosure Statement and a Truth in Lending box. Below that, a schedule of payments appears. If a consumer were to scroll further down, toward the bottom of the screen, between a paragraph of bolded language and another paragraph, an origination fee would be listed. The below screenshot is an example of this section of the mobile page.

your loan.

Late charges: If your payment arrives after your 15 day grace period, you will be charged a late fee equal to the greater of: 5.00% of the late payment amount or $15. This fee is charged only once per late payment.

Prepayment policy: If you pay off your loan early, you will not be charged a penalty. In the event of a full prepayment, you may be entitled to a refund of part of the finance charge.

**See your borrower agreement for any additional information about nonpayment, default, or other matters related to your loan.**

**(e) means estimate**

**Other than payment dates, items marked (e) will decrease if you receive less than 100% funding. Regardless of the ultimate amount of the loan, your APR will not change. Subject to your right to cancel, an unsecured loan may issue for less than the full requested loan amount if it is not 100% funded by the end of the listing period.**

Total Amount Requested: $10,000.00
Origination Fees: $500.00
Total Amount Received: $9,500.00

Unsuccessful payment fee. When a payment fails and is rejected by your bank, you will be charged an Unsuccessful Payment Fee of $15 to cover the cost Lending Club incurs on the transaction.
Each attempt to collect a monthly payment is considered a separate transaction, so an Unsuccessful Payment Fee will be assessed for each failed attempt.

On many devices, information about the up-front fee and total amount received is not displayed until the consumer has scrolled down approximately four times. A version of this page that Defendant has presented appears below in its entirety.

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

LendingClub

Loan Rate & Terms

Check Your Rate — Loan Details — Loan Terms — Bank Account

Borrower Agreement

Credit Score Notice

Clicking "I Agree" below constitutes your electronic signature and acceptance of the Borrower Agreement, and the Credit Score Notice, and the Truth in Lending Disclosure Statement.

I Agree

These agreements will also be available for your review by visiting www.lendingclub.com and navigating to "Agreements."

Truth In Lending Disclosure Statement

Lender: WebBank, 215 South State Street, Suite 800, Salt Lake City, UT 84111

Borrower:

| Annual Percentage Rate | Finance Charge | Amount Financed | Total Of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid when you have made all scheduled payments |
| [illegible] | [illegible] | [illegible] | [illegible] |

Your payment schedule will be as follows:

| Number of payments | Amount (e) | When payments are due(e) |
|---|---|---|
| 35 | $329.24 | Your first payment will be due one month after the issuance of your loan and then monthly thereafter. Payments are due on the same date each month. If your due date is the 29th, 30th or 31st, and the current month is shorter, your payment will be on the last day of the month. |
| 1 | $329.[illegible] | Your last payment will be due 36 months from the issuance date of your loan. |

Late charges: If your payment arrives after your 15 day grace period, you will be charged a late fee equal to the greater of: 5.00% of the late payment amount or $15. This fee is charged only once per late payment.

Prepayment policy: If you pay off your loan early, you will not be charged a penalty. In the event of a full prepayment, you may be entitled to a refund of part of the finance charge.

**See your borrower agreement for any additional information about nonpayment, default, or other matters related to your loan.**

(e) means estimate

Other than payment dates, items marked (e) will decrease if you receive less than 100% funding. **Regardless of the ultimate amount of the loan, your APR will not change. Subject to your right to cancel, an unsecured loan may issue for less than the full requested loan amount if it is not 100% funded by the end of the listing period.**

Total Amount Requested: $10,000.00
Origination Fee: $500.00
Total Amount Received: $9,500.00

Unsuccessful payment fee. When a payment fails and is rejected by your bank, you will be charged an Unsuccessful Payment Fee of $15 to cover the cost Lending Club incurs on the transaction. Each attempt to collect a monthly payment is considered a separate transaction, so an Unsuccessful Payment Fee will be assessed for each failed attempt.

Check Processing Fee. If you elect to make payments by check, there will be a $7 processing fee by payment.

**You are not required to complete this agreement merely because you have received these disclosures or signed a borrower agreement.**

I Agree

FIRST AMENDED COMPLAINT
Case No. 3:18-cv-02454-JSC

17

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

33. In fact, many consumers who apply for a loan from Defendant do not know that Defendant will deduct an up-front fee from their loan proceeds. Indeed, consumers frequently complain that they only discovered the fee after Defendant disbursed their loan proceeds, when they noticed that the amounts disbursed were smaller than they were expecting. At least tens of thousands of consumers contacted Defendant after their loan proceeds were disbursed to ask about the up-front fee or to ask why they did not receive the full loan amount. Many consumers who have complained that they were not aware of the up-front fee attempted to cancel their loans once they learned of the fee, preferring a loan from a competitor or no loan at all.

34. On desktops and mobile phones, after consumers agree to the loan terms and enter bank account information, they then click a "Done!" button and are taken to a screen that has stated, in large type: "Your [amount requested] loan is on the way. What's next?" The amount that Defendant promises is "on the way" is the same "Loan Amount" that Defendant promised the consumer on the Loan Offer page. For example, a consumer who was promised a $10,000 loan amount will see on this screen a representation that "Your $10,000 loan is on the way." Below these representations has appeared a "To-Do List" of tasks such as "Confirm your email address" and "Verify your bank account information." The contents of the "To-Do List" vary for each consumer.

**Communication of Approval**

35. Although Defendant has told each consumer who completed a personal loan application that his or her "loan is on the way," a consumer's application in fact must undergo two additional processes after completion in order to receive final approval. First, an application must attract sufficient investor backing, and second, an application must pass Defendant's stringent "back-end" credit review—so called to distinguish it from the lighter, "front-end" review that Defendant conducts while the consumer's application is still in progress.

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

36. If a consumer has garnered investor funding—but before Defendant has finished the "back-end" review of their applications—Defendant has frequently represented that the consumers will receive loans. For example, Defendant has sent at least approximately 196,000 consumers an email the subject line of which reads "Hooray! Investors Have Backed Your Loan." An example of this email appears below.

37. The body of the email begins, in large, bold print, "Your Loan is 100% Backed," and

continues: "Great news! Investors have backed your loan 100%. Your money is almost in your hands. You can always visit your Account Summary to view the details of your loan. Welcome to Lending Club! All the best, Lending Club." Upon receiving emails such as these and similar representations, many consumers have believed that their loans have been approved, and that they would soon receive their loan funds.

38. In reality, however, many consumers who received such representations were subsequently rejected based on Defendant's "back-end" credit review and never received a loan from Defendant. For example, of the at least approximately 196,000 consumers who received the above email, at least approximately 43,000 were subsequently rejected. The "back-end" credit review is searching and often involves, *inter alia*, an additional credit inquiry, a phone call

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

to the consumer, requests for additional documentation, and detailed review of the consumer's tax and bank records.

39. Defendant frequently issues back-end denials even to consumers who provide Defendant with all the documents that Defendant requests and whose applications were truthful, based upon its further evaluation of the consumer. Defendant has also issued back-end denials to consumers based on errors by Defendant. For example, Defendant acknowledged having incorrectly denied one consumer's application on the ground that her mailing address and residential address did not match when in fact, the consumer lived at a "rural route" address, meaning that she received mail at a post office box rather than her physical address.

40. Defendant's practice of deceptively representing to consumers that they will receive loans is ongoing. For example, when a consumer completes an application for an automobile refinance loan, another product offered by Defendant, in many instances Defendant's website tells the consumer to "Get ready to save [amount] every month!" and that if he or she completes the "To-Do List," he or she will "lock-in your savings." An example of this screen appears below.

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

In truth, many consumers who see these representations are later rejected during the back-end review even if they complete all the tasks on the "To-Do List."

41. Defendant was aware that many consumers believed that they were already approved for loans when, in fact, they were not. Defendant's training materials list "What does that mean? I thought I was approved" as a commonly asked question that customer service representatives should expect to hear, as shown in the screenshot below.



Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

In addition, Defendant received numerous complaints from consumers who were rejected after Defendant had led them to believe that their loans were forthcoming and that they were already approved, including some who did not seek other credit or turned down offers from Defendant's competitors because they believed that they had already obtained a loan from Defendant.

## Defendant's Unauthorized Bank Account Withdrawals

42. Defendant's default method of receiving consumers' scheduled monthly payments is automatic electronic bank account withdrawal via ACH transfer.

43. In numerous instances, Defendant has withdrawn money from consumers' bank accounts without consumers' authorization, or in amounts in excess of the amount consumers authorized Defendant to withdraw.

a. In numerous instances, Defendant has charged consumers double payments without authorization, improperly withdrawing consumers' monthly payments twice in one month.

b. In numerous other instances, Defendant has automatically withdrawn consumers' monthly payment amount even after those consumers have already paid off their loans.

c. In numerous other instances, when consumers have asked Defendant to stop automatic ACH withdrawals because they wished to pay by check or use a different bank account, Defendant has disregarded those requests and continued to charge consumers via automatic withdrawal anyway.

44. Since July 2016, consumers have reported to their banks that Defendant has made at least 3,850 unauthorized withdrawals, more than 2,000 of which occurred in the last twelve months prior to September 2018 alone, averaging hundreds of dollars per consumer. In addition, from 2015 to 2017, hundreds of consumers contacted Defendant to complain about its unauthorized withdrawals. Most consumers only learn of Defendant's unauthorized charges when they check their bank statements, or when they learn that their accounts have been overdrawn. The total number of Defendant's unauthorized withdrawals is likely higher than the number of reports and complaints, because not all consumers who experience unauthorized withdrawals formally report or complain.

45. These unauthorized withdrawals have been a persistent issue over time: in at least twenty-one of the last twenty-four months, Defendant has made more than one hundred withdrawals that consumers have reported to their banks as unauthorized, and in six of those months, Defendant has made more than two hundred such withdrawals. These numbers are comparable to or worse than those of three of the nation's largest loan servicers, even though those companies service three to four times as many loans as Defendant does.

46. Consumers who have suffered an unauthorized withdrawal by Defendant are injured in the amount of the missing money. And as a result of Defendant's unauthorized charges, many consumers incur additional injury, such as paying overdraft fees or being unable to pay other bills because they do not have access to the money that Defendant improperly withdrew.

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

47. Defendant's internal documents highlight the issue of taking money from consumers' bank accounts without authorization. Defendant's monthly complaint reporting reflected a growing number of complaints about the payoff process and about payment processing more generally. In addition, Defendant's own payments department self-reported increasing numbers of such transactions..

**Defendant's Gramm-Leach-Bliley Act ("GLB Act") Violation**

48. Defendant is a financial institution subject to the GLB Act, as that term is defined by Section 509(3)(A) of the GLB Act, 15 U.S.C. § 6809(3)(A), because, among other things, Defendant services loans. 12 C.F.R. § 225.28(b)(1). Defendant collects nonpublic personal information, as defined by 16 C.F.R. § 313.3(n) and 12 C.F.R. § 1016.3(p)(1)-(3), such as Social Security numbers and bank routing information. Because Defendant is a financial institution that collects nonpublic personal information, it is subject to the requirements of the GLB Privacy Rule, 16 C.F.R. Part 313, and Reg. P., 12 C.F.R. Part 1016.

**Privacy Rule and Reg. P**

49. The Privacy Rule, which implements Sections 501-503 of the GLB Act, 15 U.S.C. §§ 6801-6803, was promulgated by the Federal Trade Commission on May 24, 2000, and became effective on July 1, 2001. 16 C.F.R. Part 313. Since the enactment of the Dodd-Frank Act on July 21, 2010, the Consumer Financial Protection Bureau ("CFPB") became responsible for implementing the Privacy Rule, and promulgated the Privacy of Consumer Financial Information, Regulation P, 12 C.F.R. Part 1016 ("Reg. P"), which became effective on October 28, 2014. Defendant's conduct is governed by the Privacy Rule prior to October 28, 2014, and by Reg. P after that date. The GLB Act authorizes both the CFPB and the Federal Trade Commission to enforce Reg. P. 15 U.S.C. § 6805.

50. Both the Privacy Rule and Reg. P require financial institutions to provide consumers with an initial and annual privacy notice. Both the initial and annual privacy notices must be "clear and conspicuous," 16 C.F.R. § 313.3(b) and 12 C.F.R. § 1016.3(b), and must "accurately

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

reflect[] [the financial institution's] privacy policies and practices." 16 C.F.R. §§ 313.4 and 313.5 and 12 C.F.R. §§ 1016.4 and 1016.5. The privacy notice must include specified elements, including the categories of nonpublic personal information the financial institution collects and discloses, the categories of third parties to whom the financial institution discloses the information, and the security and confidentiality policies of the financial institution. 16 C.F.R. § 313.6; 12 C.F.R. § 1016.6. A financial institution must provide its privacy notice so that each consumer can reasonably be expected to receive actual notice. 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9. For consumers who conduct transactions electronically, a consumer can "reasonably be expected to receive actual notice" if he or she acknowledges receipt of the notice as a necessary step to obtaining the financial product or service. 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9; Privacy of Consumer Financial Information, 65 Fed. Reg. 33646-01, at 33665-66 (May 24, 2000).

51. Defendant failed to comply with the requirements of the Privacy Rule and Reg. P. Specifically, Defendant failed to deliver the initial privacy notice so that each customer can reasonably be expected to receive actual notice. 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9. For example, until at least the end of 2016, Defendant did not require customers to acknowledge receipt of the notice as a necessary step to obtaining a particular financial product or service. 16 C.F.R. § 313.9, and Reg. P, 12 C.F.R. § 1016.9. Instead, Defendant required customers to agree only to Defendant's Terms of Use, which itself included only a link to Defendant's privacy policy. In order to reach the privacy notice that Defendant was required to provide to customers, a customer would need to click on a link that did not indicate it was related to privacy, and then further find a link to Defendant's privacy policy within the lengthy document to which the link led. Customers were not provided a clear and conspicuous privacy notice before they submitted nonpublic personal information to Defendant.



52. Customers were only provided a link leading directly to the notice after they had applied for a personal loan. Defendant's own compliance group had recommended repeatedly that the company require customer acknowledgment in the years prior to the 2016 change.

**VIOLATIONS OF THE FTC ACT**

53. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

54. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

55. Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

**Count I**

**Deception: Up-Front Fee**

56. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of unsecured loans, Defendant has represented, directly or indirectly, expressly or by implication that consumers will not be charged any hidden fees in connection with receiving a specific "loan amount."

57. In truth and in fact, in numerous instances in which Defendant has made these representations, consumers have been charged a hidden up-front fee that is deducted from the "loan amount."

58. Therefore, Defendant's representations set forth in Paragraph 54 of this Complaint are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count II**

**Deception: Certainty of Loan Approval**

59. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of loans, after consumers completed loan applications and Defendant conducted its front-end review of their applications, but before it had made a final decision whether to approve their loans, Defendant has represented, directly or indirectly, expressly or by implication, that those consumers would receive loans.

60. In fact, in numerous instances in which Defendant has made these representations, Defendant later made a final decision during the back-end review process not to approve the loans and consumers therefore did not receive loans.

61. Therefore, the making of the representations as set forth in Paragraph 57 of this Complaint constitutes a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count III**

**Unfairness: Unauthorized Charges**

62. In numerous instances, Defendant has withdrawn money from borrowers' bank accounts without borrowers' authorization, or in amounts in excess of borrowers' authorization.

63. Defendant's actions have caused substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

64. Therefore, Defendant's practices as described in Paragraph 60 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

**Count IV**

**VIOLATIONS OF THE GRAMM-LEACH-BLILEY ACT ("GLB Act") PRIVACY RULE AND REG. P**

65. As described in Paragraph 48, the Privacy Rule and Reg. P require financial institutions to provide customers with a clear and conspicuous privacy notice that accurately reflects the financial institution's privacy policies and practices. Further, financial institutions must deliver the privacy notice so that each customer could reasonably be expected to receive actual notice.

66. Defendant is a financial institution, as defined in Section 509(3)(A) of the GLB Act, 15 U.S.C. § 6809(3)(A).

67. As set forth in Paragraph 49, Defendant failed to deliver the initial privacy notice so that each customer could reasonably be expected to receive actual notice. Therefore Defendant violated the Privacy Rule, 16 C.F.R. § 313.9, and Regulation P, 12 C.F.R. § 1016.9.

**CONSUMER INJURY**

68. Consumers have suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act and the Privacy Rule. In addition, Defendant has been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

**THIS COURT'S POWER TO GRANT RELIEF**

69. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Privacy Rule, Regulation P, and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, a preliminary injunction;

B. Enter a permanent injunction to prevent future violations of the FTC Act, the Privacy Rule, and Regulation P by Defendant;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendant's violations of the FTC Act, the Privacy Rule, and Regulation P including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

Respectfully submitted,

Dated: October 22, 2018

ALDEN F. ABBOTT

General Counsel

/s/ *Katharine Roller*
KATHARINE ROLLER
MATTHEW WILSHIRE
DAVID LINCICUM
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Phone: (202) 326-3582, (202) 326-2976, (202) 326-2773
Facsimile: (202) 326-3768
Email: kroller@ftc.gov; mwilshire@ftc.gov; dlincicum@ftc.gov

Attorneys for Plaintiff

FEDERAL TRADE COMMISSION

FIRST AMENDED COMPLAINT
Case No. 3:18-cv-02454-JSC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-2222

30

**EXHIBIT A**

LendingClub

# PRE-APPROVAL LETTER

| To: Sample A. Sample | Valid Until 3/13/17 | Pre-Approval Code: 9999-9999-9999 |
|---|---|---|
| Address: 123 Any Street Anytown, US 12345 | Rate: Fixed | Pre-Approval Amount: Up To $40,000.00[1] |

PRE-APPROVED

We are pleased to inform you that you have been pre-approved for your loan as specified below:

**AMOUNT:** You are pre-approved for up to $40,000[1].

**DELIVERY:** You could have your cash in as little as 7 days.

**RATE:** Rates are lower than many traditional bank loans. This is particularly important, because using this cash to pay off credit cards and loans with interest rates of 12.9%, 15.9%, 18.9% or more could save you hundreds of dollars every month and allow you to get out of debt sooner.

**PURPOSE:** While paying off high interest debts is the recommended usage, you can put it toward home improvements, major purchases, a vacation, or more!

**FEES:** There are no hidden fees or prepayment penalties.

**TYPE OF LOAN:** This is a no-collateral personal loan, with low fixed monthly payments and flexible terms.

**CONSOLIDATION ADVANTAGE:** If you use your loan to pay off all your current credit cards and loans, you'll have only one bill to pay each month instead of several, and the total may be a lot less than you pay now.* You'll find yourself with more breathing room and less stress, and your family will enjoy the extra money you could have every month.

**NEXT STEPS:** Simply visit www.MyInstantOffer.com and enter your Pre-Approval Code to get your instant loan quote. There is no cost and no obligation.

**DEADLINE:** Your Pre-Approved status is valid only until 3/13/17, and any quote request must be received before 3pm Eastern Time on that date.

**ABOUT LENDING CLUB:** Lending Club is the world's largest online credit marketplace, and we look forward to serving you as we have over 1.8 million other borrowers. We pride ourselves on providing an experience that is easier and less complicated, and our goal is to deliver the perfect combination of convenience, low rates, and friendly service.

**THANK YOU FOR YOUR INTEREST:** Take the next step now by requesting your free loan quote. Remember—there's no cost or obligation to find out how much you could save every month by consolidating your high-interest debt with one easy loan through Lending Club.

Sincerely,

*Scott Sanborn*

CEO, Lending Club

*Sample – Please be sure to respond by the deadline. Your pre-approval expires on that date. Thanks, Scott*

**Respond Online:**
Visit www.MyInstantOffer.com

**Enter This Pre-Approval Code:**
9999-9999-9999

**Respond By Phone:**
**855-363-4151**
Speak with a Dedicated US-based Loan Specialist

**EXHIBIT B**

# While others make it easy to get into debt.

## We make it easier to get out.

PRE-APPROVED FOR UP TO $20,000

Respond by [Respond_by] at MyInstantOffer.com

Your pre-approval code: [1234-5678-9ABC]

<Sample A. Sample>
<Address>
<Address2>
<Anytown, US 12345-1234>

## <Fname>, let us help you pay off your debt faster and you too could save hundreds, even thousands.

**You're already pre-approved**

You've been selected for this offer because of your good credit history.

**Pay off high-interest debt**

Simplify your life — use your loan for debt consolidation, paying off credit cards or even a major purchase.

**No hidden fees or prepayment penalties**

We offer flexible loan amounts and terms, there are NO hidden fees and no penalties for paying off your loan early.

**Save hundreds, even thousands**

When you pay off your debt faster you could save hundreds, even thousands in interest.

## Apply online today — it's fast, easy and only takes minutes.

Don't wait too long, this offer expires [Respond_by].

**Go Online**

Get your loan quote online: **MyInstantOffer.com**

**Pre-Approval Code:** [1234-5678-9ABC]

**By Phone**

**855-363-4151**

Dedicated US-based client advisor

**By Mail**

Complete and return the attached **Reply Card**