UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LENDING CLUB CORPORATION,<br><br>Defendant. | Case No. 18-cv-02454-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES**<br><br>Re: Dkt. No. 62 |

Plaintiff the Federal Trade Commission ("FTC") brings causes of action against LendingClub Corporation ("LendingClub") alleging deceptive and unfair business practices in violation of Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and violation of the Gramm-Leach-Bliley Act's ("GLB Act") Privacy of Consumer Financial Information Rule ("Privacy Rule and Regulation P"), 16 C.F.R. Part 313, recodified at 12 C.F.R. § 1016.1.[1] (Dkt. No. 57 at ¶ 1.)[2] Now pending before the Court is the FTC's motion to strike certain affirmative defenses in LendingClub's Answer to the first amended complaint ("FAC"). (Dkt. No. 62.) After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), vacates the May 1, 2019 hearing, and GRANTS the FTC's motion in part.

**BACKGROUND**

The background of this case is set forth in detail in the Court's order granting in part and denying in part LendingClub's motion to dismiss the initial complaint. (*See* Dkt. No. 53 at 2-5.)

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 12.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

As relevant here, the FTC filed the FAC on October 22, 2018, asserting the same four claims set forth in its initial complaint arising from LendingClub's representation of "no hidden fees" to prospective consumer loan applicants, LendingClub's practices related to its consumer loan application process and consumer privacy protections, and LendingClub's loan repayment collection methods.[3]  (*See generally* Dkt. No. 57.)  LendingClub filed its Answer to the FAC on November 13, 2018, asserting 19 affirmative defenses.  (Dkt. No. 58.)  The FTC's motion to strike followed shortly thereafter.  (Dkt. No. 62.)  The motion is fully briefed.  (*See* Dkt. Nos. 65 & 71.)

## LEGAL STANDARD

Under Rule 12(f), a court may strike an affirmative defense if it presents an "insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "A defense is insufficiently pled if it fails to give the plaintiff fair notice of the nature of the defense."  *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citing *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)).  "A matter is immaterial if it has no essential or important relationship to the claim for relief pleaded."  *Id.*

While the Ninth Circuit has not yet ruled on the issue, "courts in this district continue to require affirmative defenses to meet" the standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See Fishman v. Tiger Nat. Gas Inc.*, No. C 17-05351 WHA, 2018 WL 4468680, at *2-3 (N.D. Cal. Sept. 18, 2018) (internal quotation marks and citation omitted); *see also Hartford Underwriters Ins. Co. v. Kraus USA, Inc.*, 313 F.R.D. 572, 574 (N.D. Cal. 2016) (collecting cases).  Thus, "[w]hile a defense need not include extensive factual allegations in order to give fair notice, bare statements reciting mere legal conclusions may not be sufficient."  *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11–03323-LHK, 2012 WL 1029425, at *8 (N.D. Cal. Mar. 26, 2012).  "Just as a plaintiff's complaint must

---

[3] Counts I and II of the FAC allege deceptive practices in violation of Section 5(a) of the FTC Act based on a hidden loan origination fee, and LendingClub's practice in communicating loan approval, respectively.  (Dkt. No. 57 at ¶¶ 56-61.)  Count III alleges unfair practices under Section 5(a) based on unauthorized withdrawals from the accounts of LendingClub loan recipients.  (*Id.* at ¶¶ 62-64.)  Count IV alleges violations of the Privacy Rule and Regulation P based on LendingClub's failure to deliver an initial privacy notice to customers.  (*Id.* at ¶¶ 65-67.)

2

allege enough supporting facts to nudge a legal claim across the line separating plausibility from mere possibility, a defendant's pleading of affirmative defenses must put a plaintiff on notice of the underlying factual bases of the defense." *Id.* (internal quotation marks and citation omitted). The bar is not high, however, and "[a] defendant need only point to the existence of some identifiable fact that if applicable . . . would make the affirmative defense plausible on its face." *Ear v. Empire Collection Auths., Inc.*, No. 12-1695-SC, 2012 WL 3249514, at *1 (N.D. Cal. Aug. 7, 2012) (internal quotation marks and citation omitted).

"With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of N.Y. Mellon*, No. 12–846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)). If the court grants a motion to strike, leave to amend should be freely given so long as no prejudice to the moving party results. *Wyshak*, 607 F.2d at 826.

## DISCUSSION

Pursuant to Rule 12(f)(2), the FTC moves to strike defenses "1-10, 12-13, 15-17, and the first sentence of defense 11" from LendingClub's Answer "as immaterial, insufficient as a matter of law, redundant, or improperly pleaded." (Dkt. No. 62 at 2.) LendingClub has agreed to withdraw affirmative defenses 3, 7, 9, 12, 13, 15, and 17. (*See* Dkt. No. 65 at 8 n.1.) The Court addresses the remaining nine affirmative defenses in turn.

**I.     First Affirmative Defense**

LendingClub's first affirmative defense states, in its entirety: "The FAC fails to state a claim upon which relief can be granted." (Dkt. No 58 at 41.)

An affirmative defense is one "on which the defendant has the burden of proof." *Barnes*, 718 F. Supp. 2d at 1174. Thus, "failure to state a claim" does not constitute an affirmative defense. *See id.* ("Failure to state a claim is not a proper affirmative defense, but rather, asserts a defect in [the plaintiff's] prima facie case."); *see also Kraus USA, Inc.*, 313 F.R.D. at 575-76 (noting that "denials of a plaintiff's allegations or allegations that the plaintiff cannot prove the

3

elements of her claims are not affirmative defenses.") (collecting cases). Further, a defense asserting that a "plaintiff has not met its burden of proof" as to an element the plaintiff is "required to prove [is] not an affirmative defense," *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002), but is instead "merely rebuttal against the evidence presented by the plaintiff[,]" *Barnes*, 718 F. Supp. 2d at 1173. In contrast, an affirmative defense under Rule 8(c) "does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven." *Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d. 1095, 1106 (N.D. Cal. 2016) (internal quotation marks and citation omitted).

Setting aside that the Court previously denied LendingClub's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim as to Counts I, II, and IV, LendingClub's first affirmative defense merely challenges the legal sufficiency of the complaint, and as such, it does not constitute a proper affirmative defense. Accordingly, the Court grants the FTC's motion to strike the first affirmative defense with prejudice. LendingClub is of course not precluded from asserting in the proper context that the FTC has failed to state a claim. *See Kraus USA, Inc.*, 313 F.R.D. at 576 ("Although struck with prejudice as affirmative defenses, the court makes clear that Defendants are not precluded, in a motion or at trial, that [the plaintiff] has failed to state a claim.") (internal quotation marks and citation omitted).

## II.    Second Affirmative Defense

The second affirmative defense asserts, in its entirety, that "[t]he FTC has failed to provide constitutionally adequate fair notice of the asserted statutory requirements for the challenged practices at issue." (Dkt. No. 58 at 41.) The FTC moves to strike this defense on the grounds that it is vague and thus "fails to provide 'fair notice' of its grounds."[4] (Dkt. Nos. 62 at 13; 71 at 19.)

---

[4] The FTC's motion to strike initially argued that the second affirmative defense was also "legally invalid," to the extent LendingClub intended the defense "as a vagueness challenge to Section 5 generally or as a demand that the FTC promulgate new Section 5 regulations before bringing this particular suit," because such a defense "would be foreclosed by standing precedent." (Dkt. No. 62 at 14.) LendingClub's opposition clarified, however, that it was not asserting either theory under this defense, and instead, was bringing this defense only as applied to Count III. (*See* Dkt. No. 65 at 27-28.) The FTC's reply acknowledges LendingClub's clarification and does not maintain that this defense is "legally invalid," but focuses instead on the "vagueness" argument.

4

1   LendingClub's opposition counters that "the Answer, when read in its totality, provides ample
2   factual averments supporting this affirmative defense." (Dkt. No. 65 at 26 (citing "factual
3   averments" in Dkt. No. 58 at 31-34).) LendingClub's opposition further clarifies that this defense
4   concerns Count III of the FAC, which alleges a violation of Section 5 of the FTC Act based on
5   unauthorized withdrawals from the accounts of LendingClub loan recipients. The FTC's reply
6   counters that LendingClub's "belated explication . . . is insufficient to cure the Answer's
7   vagueness, because 'fair notice' must be provided by the pleading itself." (Dkt. No. 71 at 18-19
8   (citing *FTC v. Vemma Nutrition Co.*, No. CV-15-01578-PHX-JJT, 2016 WL 3548762, at *1 (D.
9   Ariz. June 30, 2016)).) The Court agrees.

10   The factual averments in the Answer cited in LendingClub's opposition, construed in the
11   light most favorable to LendingClub, do not assert a lack of constitutionally adequate fair notice.
12   The gravamen of the averments is that the "error rate" (reflecting unauthorized withdrawals) is
13   less than 1% of the "tens of millions of payments" LendingClub has processed during the relevant
14   period. (*See* Dkt. No. 58 at 31-34.) Indeed, the only reference to a lack of constitutional fair
15   notice is contained in the single, barebones sentence that comprises the second affirmative
16   defense. Absent LendingClub's clarification in its opposition that this defense applies specifically
17   to Count III, there is nothing from which a party could connect the dots and glean the underlying
18   factual basis for this defense. Thus, it is insufficiently pleaded. *See Barnes*, 718 F. Supp. 2d at
19   1172-73 (finding defendant's affirmative defenses insufficient where the pleading failed to
20   "allege[ ] sufficient facts to provide notice to [the plaintiff] as to the nature of . . . its affirmative
21   defenses.").

22   Accordingly, the Court strikes this defense with leave to amend.

23   **III.   Fourth Affirmative Defense**

24   The fourth affirmative defense asserts that "[t]he FTC's claims are barred because
25   LendingClub's conduct is not unlawful in that LendingClub complied with applicable statutes and
26   regulations." (Dkt. No. 58 at 41.) The FTC moves to strike this defense because it "presumably

---

28   (*See* Dkt. No. 71 at 19.) The Court analyzes this defense accordingly.

refers" to an issue already decided by the Court in its October 2018 order on LendingClub's motion to dismiss. (Dkt. No. 62 at 10-11.) Further, the FTC insists that the defense "should . . . be stricken for failure to provide fair notice of its basis" because it does not specify the "applicable statutes and regulations" to which it refers. (*Id.* at 11 n.1.)

As to the latter argument, LendingClub's opposition asserts that the fourth affirmative defense is "premised on compliance with the Truth in Lending Act and Regulation P." (*See* Dkt. No. 65 at 15-22.) When read in its entirety, LendingClub's answer to the FAC supports this contention only as to the Truth in Lending Act ("TILA"). (*See* Dkt. No. 58 at 5-7, 19.) Conversely, the Answer merely denies liability for the alleged violation of Regulation P. (*Id.* at 2, 35, 40.) Such a denial does not constitute an affirmative defense. *See Kraus USA, Inc.*, 313 F.R.D. at 575-76 ("[D]enials of a plaintiff's allegations or allegations that the plaintiff cannot prove the elements of her claims are not affirmative defenses.") (collecting cases). The Court thus addresses LendingClub's arguments regarding compliance with TILA as they relate to the sufficiency of the fourth affirmative defense.

LendingClub asserts that its "fourth affirmative defense, contends, in part, that [Count I] of the complaint is precluded by TILA and related regulations." (Dkt. No. 65 at 16.) The Court previously addressed and rejected this exact TILA-preclusion argument in its order on LendingClub's motion to dismiss. (*See* Dkt. No. 53 at 17-19.) LendingClub acknowledges the Court's previous ruling, and insists that "the Court may, and . . . should, reevaluate this decision at later stages in the case with the benefit of a more complete record and fulsome briefing[,]" because "the statutory preclusion issue is legally complex, and the scope of questions raised by this legal doctrine have not been fully developed or presented to the Court." (Dkt. No. 65 at 16-17.) According to LendingClub, "the Court's prior motion to dismiss ruling on this issue did not fully take into account the scope and implications of this defense, a defense that raises somewhat novel but nonetheless highly important issues"; instead, "the Court appeared to have in mind a broad conceptualization of the defense," that "reflect[ed] an extreme version of statutory preclusion that would not be supported by the relevant case law." (*Id.* at 16, 19.) LendingClub's arguments are unconvincing.

6

The Court's "broad conceptualization" of LendingClub's preclusion argument was commensurate with LendingClub's briefing on the issue in its motion to dismiss, (Dkt. No. 23), which LendingClub characterizes as being "briefed in only a truncated way at the motion to dismiss stage," (Dkt. No. 65 at 10). LendingClub's characterization of the adequacy of its briefing on the issue aside, the argument set forth in LendingClub's motion to dismiss presented a purely legal issue—whether compliance with TILA precludes liability under Section 5(a) of the FTC Act. LendingClub's motion asserted that "the undisputed fact that the disclosures provided to consumers on LendingClub's website comply with TILA means that Count I [under Section 5(a) of the FTC Act] is precluded as a matter of law," and provided three pages of argument on the issue. (*See* Dkt. No. 23 at 23-26.) The FTC addressed LendingClub's arguments and opposed dismissal on the asserted TILA preclusion grounds. (*See* Dkt. No. 30 at 17-22.) The Court assumed without argument that LendingClub's "full compliance" with TILA was an "undisputed fact"—despite the FTC's well-reasoned arguments to the contrary, (*see* Dkt. No. 30 at 17-19)—and concluded that LendingClub's arguments regarding statutory preclusion were unavailing, (*see* Dkt. No. 53 at 17-19). Thus, even assuming that LendingClub fully complied with TILA, the Court concluded that compliance with TILA did not preclude liability under Section 5(a) of the FTC Act as a matter of law.

That being said, LendingClub wishes to preserve the argument and, apparently, argue on a factual record at the summary judgment stage or at another stage in the litigation that the issue should be decided differently. The FTC insists that since the Court has decided the issue in denying LendingClub's motion to dismiss, that should be the end of the matter and that it should not be put to the burden of discovery and further litigation on the issue. Regardless of whether the Court strikes the fourth affirmative defense, LendingClub has the right to move for leave to file a motion for reconsideration. *See* N.D. Cal. Civ. L.R. 7-9(b). And, if LendingClub moves for summary judgment on the same TILA-preclusion issue, the FTC can respond that it is in reality a motion for reconsideration or that the new facts, if any, put forward (that were not before the Court on the motion to dismiss) do not change the outcome. In other words, the FTC will have no burden to address this defense unless and until it is raised by LendingClub. There is thus no

burden to the FTC in allowing the affirmative defense to remain, and the burden on the Court would be present regardless since a party always has a right to argue to a court that it earlier got an issue wrong.

The fourth affirmative defense, however, does not identify the particular "statutes and regulations" upon which the defense is based. Accordingly, it is stricken with leave to amend with the understanding that if, as expected, one of the statutes and regulations is TILA, the TILA defense will be treated as explained above. The Court also notes that regardless of the fourth affirmative defense, LendingClub may argue that it complied with TILA and that such compliance demonstrates that the loan origination fee was not hidden but was instead clear and conspicuous to consumers.

## IV. Fifth Affirmative Defense

The fifth affirmative defense states that "[t]he FTC is equitably estopped from bringing Count I because LendingClub relied on and complied with the FTC's and CFPB's Truth in Lending Act regulations and guidance." (Dkt. No. 58 at 41.) The FTC moves to strike this defense because: (1) "this Court has already decided that compliance with TILA—included purported use of TILA model forms contained in Regulation Z—is a separate matter from compliance with Section 5 of the FTC Act," and LendingClub "should not be permitted to relitigate [the] issue"; and (2) "equitable estoppel is not a valid defense against a government suit brought in the public interest." (Dkt. No. 62 at 11.)

As to the FTC's first argument, LendingClub counters that this defense is based on its "reasonable reliance on statements and representations by the FTC and the CFPB indicating that the fee-related disclosures on LendingClub's platform would qualify as clear and conspicuous." (Dkt. No. 65 at 23.) Thus, LendingClub argues that its equitable estoppel defense is "analytically distinct from [its] statutory preclusion affirmative defense," and is instead "premised on the equitable principle that it would be fundamentally unfair to penalize LendingClub for acting in a manner that is reasonably understood to be consistent with authoritative guidance promulgated by federal government agencies." (*Id.*) Further, LendingClub argues that the FTC is simply wrong that "equitable estoppel is not available as a defense to suits brought by government agencies in

8

the public interest." (*Id.* at 23-24 (noting that the FTC "concedes in a footnote that equitable estoppel is a valid defense to raise against FTC action brought in the public interest (citing Dtk. No. 62 at 12 n.2)))

The Court agrees that this defense does not cover the same purely legal ground as LendingClub's "TILA preclusion" fourth affirmative defense. Although the Court has concluded that compliance with TILA does not preclude liability under Section 5(a) of the FTC Act as a *matter of law*, LendingClub's argument that it reasonably relied "on the FTC's and CFPB's regulations and guidance about how to present fee disclosures in a clear and conspicuous manner" sets forth a different argument. LendingClub is also correct that there is no *per se* bar to equitable estoppel claims against government agencies. *See FTC v. DirecTV, Inc.*, No. 15-CV-01129-HSG, 2015 WL 9268119, at *3 (N.D. Cal. Dec. 21, 2015) (noting that "[t]he FTC concedes that estoppel is available against the government, with the caveat that additional requirements apply: (1) affirmative misconduct"; and (2) such conduct "threatened to work a serious injustice and that the public's interest will not suffer undue damage.") (citing *Watkins*, 875 F.2d at 706). The FTC's reply brief asserts that as pleaded, this defense fails to "meet the strict 'affirmative misconduct' standard required to assert equitable estoppel against the government." (Dkt. No. 71 at 14.) However, the FTC did not raise that argument in its motion to strike, and the Court "need not consider arguments raised for the first time in a reply brief." *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

Accordingly, the Court denies the FTC's motion to strike this defense.

**V.      Sixth Affirmative Defense**

The sixth affirmative defenses asserts that "[t]he FTC is judicially estopped from seeking monetary remedies because the APR provided in the Truth in Lending Act disclosure in the personal loan application flow on LendingClub's platform accurately represents the APR associated with loans available through LendingClub." (Dkt. No. 58 at 41.) Judicial estoppel typically has three elements: "First, a party's later position must be 'clearly inconsistent with its earlier position;" second, the party must have "succeeded in persuading a court to accept that party's earlier position"; and third, "the party seeking to assert an inconsistent position [must]

9

1 derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (noting that the three elements "do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.")  The FTC moves to strike this defense on the grounds that LendingClub's Answer "fails to allege a single element" of judicial estoppel, and thus "fails to provide fair notice of the basis of" the defense.  (Dkt. No. 62 at 15.)  The Court agrees.

LendingClub's opposition to the FTC's motion to strike clarifies that its judicial estoppel defense "is premised on the company's accurate, clear, and conspicuous disclosures of the APR and Finance Charge associated with the loans available through its platform" and the FTC's previous "position in litigation that statements of APR in the TILA Federal Box effectively communicate total loan cost to borrowers."  (Dkt. No. 65 at 29-30.)  However, the Answer fails to allege any similar underlying factual basis for this defense (i.e., the Answer references no prior inconsistent position taken by the FTC as it relates to the claims against LendingClub).

Accordingly, the Court strikes this defense with leave to amend.

## VI.     Eighth Affirmative Defense

The eighth affirmative defense asserts that:

> LendingClub's acts and statements were fair and reasonable and were performed in good faith based on all the relevant facts known to LendingClub. LendingClub acted with a good faith belief that it had good cause and/or legitimate business reasons to act as it did and did not directly or indirectly perform any acts that would constitute a violation of consumers' rights. As a consequence, the FTC is not entitled to any monetary relief whatsoever.

(Dkt. No. 58 at 41.)  The FTC moves to strike this defense on the grounds that "good faith is immaterial to Section 5 liability."  (Dkt. No. 62 at 17 (citing *Feil v. FTC*, 285 F.2d 879, 896 (9th Cir. 1960)).)  The Court agrees.  LendingClub presents no authority that calls into question the Ninth Circuit's clear statement in *Feil* that good faith is immaterial to Section 5 liability:

> [T]he power of the Commission under Section 5 of the Federal Trade Commission Act, under which this proceeding was instituted, and which, after declaring unlawful unfair methods of competition and unfair or deceptive acts or practices in commerce, directs and empowers the Commission to prevent the use of such methods or acts. The power is extensive.  Actual deception is not necessary.  ***Whether good or bad faith exists is not material***, if the Commission finds that

10

there is a likelihood to deceive.

285 F.2d at 896; *see also FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1202 (9th Cir. 2006) (citing *Feil* for the proposition that "whether an individual acts in good or bad faith is immaterial to liability under FTCA § 5."). Further, LendingClub's argument that it included this defense "because 'deliberateness' is a factor courts consider when assessing the appropriateness of the FTC's request for monetary relief," (*see* Dkt. No. 65 at 32 (citing *FTC v. Medicor LLC*, No. CV-01189-CBMEx, 2001 WL 765628, at *2 (C.D. Cal. June 26, 2001))), is unavailing because as asserted the defense pertains only to "*monetary* relief," (*see* Dkt. No. 58 at 41 (emphasis added)).

Accordingly, the Court strikes this defense with prejudice because it is immaterial.

### VII. Tenth and Eleventh Affirmative Defenses

The tenth affirmative defense asserts that "[t]he FTC is not authorized to seek monetary remedies pursuant to Section 5 or Section 13(b) of the FTC Act." (Dkt. No. 58 at 42.) Similarly, the first sentence of the eleventh affirmative defense states: "The FTC is not authorized to seek disgorgement, restitution, or any monetary remedy that is penal, as opposed to compensatory in nature." (*Id.*) The FTC moves to strike the tenth affirmative defense and the first sentence of the eleventh affirmative defense because they "directly conflict with binding Ninth Circuit law," which "has repeatedly made clear that Section 13(b) authorizes the Commission to seek equitable monetary relief, including restitution and disgorgement." (Dkt. No. 62 at 18.) The Court agrees.

The Ninth Circuit recently reiterated in *FTC v. AMG Capital Mgmt., LLC* that the FTC may seek equitable monetary relief under section 13(b) of the FTC Act. *See* 910 F.3d 417, 426 (9th Cir. 2018). There the court noted that it has "repeatedly held that § 13 [of the FTC Act] 'empowers district courts to grant any ancillary relief necessary to accomplish complete justice, including restitution.'" *Id.* (quoting *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 598 (9th Cir. 2016). Thus, the court held that its "precedent squarely forecloses" the argument that "equitable monetary relief" is not available under the FTC Act. *Id.* (rejecting the defendant's argument that the FTC "improperly use[d] Section 13(b) to pursue penal monetary relief under the guise of equitable authority.") (internal quotation marks omitted); *see also id.* at 427 (rejecting the defendant's argument that *Kokesh v. SEC*, 137 S. Ct. 1635 (2017) required the court to "revisit

*Commerce Planet*" because *Kokesh* "compels the conclusion that restitution under § 13(b) is in effect a penalty—not a form of equitable relief,' and concluding that "[because] *Kokesh* and *Commercial Planet* are not clearly irreconcilable, we remain bound by our prior interpretation of § 13(b).").

LendingClub's opposition argues that the "FTC's statutory ability to seek monetary relief is an evolving legal issue." (Dkt. No. 65 at 24-25.) In support, LendingClub's cites the special concurrence in *AMG Capital Mgmt., LLC* issued by Judge O'Scannlain and joined by Judge Bea, which called "for an *en banc* reevaluation of whether, and in what circumstances, the FTC may obtain monetary relief pursuant to Section 13(b) of the FTC Act." (*Id.* at 25 (citing 910 F.3d 417, 429-37)) LendingClub asserts that Judge O'Scannlain's concurrence indicates an "ongoing dispute around this issue [that] provides ample basis for the Court to permit this affirmative defense to remain in the case." (*Id.*) The Court disagrees.

As Ninth Circuit caselaw currently stands, these specific defenses are foreclosed by binding precedent, and are thus legally insufficient. *See Barnes*, 718 F. Supp. 2d at 1170 (noting that "a motion to strike which alleges the legal insufficiency of an affirmative defense will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense.") (internal quotation marks and citation omitted). The Court thus strikes this defense without prejudice to raising it if and when the Ninth Circuit revisits the issue and rules differently.

## IX.   Sixteenth Affirmative Defense

The sixteenth affirmative defense asserts that "[t]he FTC lacks statutory authority to pursue the claims in the FAC because LendingClub is not violating or about to violate the law." (Dkt. No. 58 at 42.) LendingClub's opposition clarifies that this defense "pertains to Count II in the FAC." (Dkt. No. 65 at 24.) As previously discussed, Count II alleges deceptive acts in violation of Section 5 of the FTC Act based on LendingClub's practice of communicating to consumers that their loans were approved prior to completing final review of those consumers' applications.

The FTC moves to strike this defense on the grounds that it is legally insufficient because

it "contradicts binding Ninth Circuit law," and instead relies on out-of-circuit authority for the proposition that the FTC "must show that a violation is ongoing or 'imminent' rather than likely to recur." (Dkt. No. 62 at 12.) The FTC further argues that the Court rejected this exact argument in its order on LendingClub's motion to dismiss, (Dkt. No. 53 at 20). LendingClub counters that the FTC "grossly overextends the Court's motion to dismiss ruling," and the Court's "decision leaves open the possibility that the record facts will show that the conduct is not likely to recur." (Dkt. No. 65 at 24 (citing Dkt. No. 53 at 20 ("[T]he Court cannot conclude as a matter of law that the [challenged] conduct is not ongoing or likely to recur.")).) Thus, LendingClub asserts that striking this defense would be improper because it raises "substantial questions of fact" going to the likelihood of recurrence.

LendingClub's reliance on *FTC v. Shire Viropharma, Inc.*, 917 F.3d 147 (3d Cir. 2019), demonstrates that this defense is not an *affirmative* defense. As the *Shire* court noted, "[w]hether a person 'is violating, or is about to violate' the law relates to the ***merits*** of a Section 13(b) claim." 917 F.3d at 154 (emphasis added). As previously discussed, an argument going to the merits of a claim is not an affirmative defense. *See Zivkovic*, 302 F.3d at 1088 ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense"). In contrast, an affirmative defense "does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven." *Taylor*, 207 F. Supp. 3d. at 1106 (internal quotation marks and citation omitted). Thus, the argument underlying this defense is more appropriately presented in a dispositive motion arguing that the FTC has not met its burden to invoke its authority under Section 13(b)—as it was set forth by the defendant in *Shire* and as it was previously set forth by LendingClub.

Accordingly, the Court strikes this defense with prejudice because it is not an *affirmative* defense. LendingClub is of course free to argue in the appropriate context that it has not engaged in conduct that warrants an injunction under Section 13(b).

## CONCLUSION

For the reasons set forth above, the Court GRANTS the FTC's motion to strike in part. The Court strikes with prejudice defenses No. 1, 8, and 16. The Court strikes defenses No. 10 and

13

11 (first sentence only) without prejudice to re-raising those arguments should the Ninth Circuit revisit its holding that the FTC may seek equitable monetary relief under section 13(b) of the FTC Act.  The Court strikes with leave to amend defenses No. 2, 4, and 6.  The Court DENIES the FTC's motion to strike affirmative defense No. 5.  LendingClub shall file its amended Answer within 30 days of this Order.

This Order disposes of Docket Nos. 62 and 79.

**IT IS SO ORDERED.**

Dated: April 29, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge