UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 18-cv-02454-JSC |
| Plaintiff, | |
| v. | **ORDER RE: PRIVILEGE DISCOVERY DISPUTE** |
| LENDING CLUB CORPORATION, | Re: Dkt. No. 109 |
| Defendant. | |

Now pending before the Court is the parties' joint discovery letter brief.  (Dkt. No. 109).  FTC seeks an order compelling Lending Club to produce draft loan application flows that Lending Club tested on live consumers after the commencement of this litigation, but ultimately did not adopt.  After considering the parties' letter brief, and having held oral argument on November 7, 2019, FTC's motion is denied.

FTC initiated this lawsuit against Lending Club in April 2018 alleging, in part, that Lending Club's representation of "no hidden fees" was deceptive because the origination fee was, in effect, hidden.  Prior to the filing, the FTC provided Lending Club with a draft proposed consent order.  Later in 2018, Lending Club's outside counsel initiated and led a project, known as "Project Ocelot," to determine how to best change the loan application flow to the FTC's satisfaction.  To do so, prospective real borrowers were directed to different test flows with different form of disclosure.  Lending Club and its counsel then used the test results to determine what changes, if any, Lending Club wanted to make to alleviate FTC's concerns.  Testing was completed in February 28, 2019 when Lending Club launched an updated version of its application that it believes addresses FTC's concerns. (Dkt. No. 109-5.)  FTC wants to see the various loan application flows that Lending Club tested but ultimately did not adopt.  Lending

Club asserts that the test flows are protected by attorney-client privilege and the work product doctrine.

The work product doctrine

> seeks to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent." In order for an attorney to properly prepare his client's case, he must be able to "assemble information, sift what he considers to be the relevant from irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." In short, the attorney-client privilege is about maintaining confidentiality; the work product doctrine protects the integrity of the adversary system.

*Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, No. C11-5200 JSC, 2012 WL 3062294, at *3 (N.D. Cal. July 26, 2012) (citations omitted). "To qualify for work product protection, documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party [to the litigation] or by or for that other party's representative." *Id.* at *5 (alteration in original) (internal quotation marks and citation omitted). Lending Club, as the party resisting discovery, has the burden of proving that work product protection applies to the draft application flows. *See Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA (JSC), 2017 WL 2485382, at *8 (N.D. Cal. June 8, 2017). Lending Club has met its burden.

First, the Court finds that the draft loan application flows were created in anticipation of this litigation. The Court is not persuaded that Lending Club's President's deposition testimony compels a different finding. While he testified that he intended to launch a similar project around the same time Project Ocelot was initiated, the record reflects that Project Ocelot was initiated because of this litigation. The result might be different if such testing had been planned and scheduled prior to FTC expressing its concerns to Lending Club, but there is no evidence to reflect such a fact.

Second, FTC's insistence that the draft application flows themselves are just facts and therefore not protected is not persuasive. If Lending Club had to disclose the various versions of the loan application flow tested on consumers but not adopted, FTC would learn what changes were considered by Lending Club as part of this litigation. Such information goes to the heart of

the work product privilege.

Third, Lending Club's "disclosure" of the draft loan application flow to the live consumers on whom various drafts were tested did not waive the work product privilege. The disclosure Lending Club resists—disclosure of the various iterations of the loan application flow it considered—was not disclosed to the consumer applicants. And, in any event, testing the draft application flow on live consumers did not substantially increase the likelihood that FTC would obtain that information since no single consumer would know the changes that were being tested. *See United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1298-99 (D.C. Cir. 1980) (requiring that disclosure "substantially increase" the likelihood of an adversary obtaining the protected information for a finding of waiver of work product protection).

Fourth, the Court finds that FTC has not shown a substantial need for the information at this time. As stated at oral argument, the Court is open to revisiting this issue as the case evolves.

Accordingly, FTC's motion to compel the information is DENIED.

This Order disposes of Docket No. 109.

**IT IS SO ORDERED.**

Dated: November 8, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

3