M. Sean Royall (admitted *pro hac vice*)
Rachael A. Rezabek (SBN 298711)
KIRKLAND & ELLIS LLP
1601 Elm Street
Dallas, TX 75201
Telephone: (214) 972-1770
Facsimile: (214) 972-1771
Email: sean.royall@kirkland.com
Email: rachael.rezabek@kirkland.com

Richard H. Cunningham (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-3119
Facsimile: (202) 389-5200
Email: rich.cunningham@kirkland.com

A. Katrine Jakola, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: kjakola@kirkland.com

Attorneys for Defendant
*LendingClub Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

LENDINGCLUB CORPORATION, d/b/a Lending Club,

Defendant.

CASE NO: 5:18-CV-02454-JSC

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF GEORGE LOEWENSTEIN**

Judge: Hon. Jacqueline Scott Corley
Dept.: San Francisco Courthouse, Ctrm. E
Date: April 27, 2020
Time: 9:00 a.m.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........ 1

STATEMENT OF ISSUES TO BE DECIDED ........ 2

BACKGROUND ........ 2

ARGUMENT ........ 4

I. ........ Professor Loewenstein Is Not Qualified to Provide Expert Testimony Regarding Quantification of Alleged Consumer Harm. ........ 4

II. ........ Portions of Professor Loewenstein's Proposed Rebuttal Testimony Are Directly at Odds with the Governing Law and for This Additional Reason Should Be Excluded. ........ 7

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple, Inc. v. Samsung Electronics Co.*,
No. 11-cv-01846LHK, 2013 WL 5955666 (N.D. Cal. Nov. 6, 2013) ....6

*Cave v. Saxon Mortgage Services, Inc.*,
Nos. 11-4586, 12-5366, 2015 WL 6153754 (E.D. Pa. Oct. 20, 2015) ....8

*Cochran v. Brinkmann Corp.*,
No. 1:08-cv-1790-WSD, 2009 WL 4823858 (N.D. Ga. Dec. 9, 2016) ....5

*FTC v. Commerce Planet, Inc.*,
815 F.3d 593 (9th Cir. 2016) ....9

*FTC v. Credit Bureau Center, LLC*,
937 F.3d 764 (7th Cir. 2019) ....10

*FTC v. Febre*,
No. 94-C-3625, 1994 WL 702711 (N.D. Ill. Dec. 15, 1994) ....9

*FTC v. Lanier Law, LLC*,
No. 3:14-cv-786, 2015 WL 9598794 (M.D. Fla. Dec. 8, 2015) ....9

*Hebert v. Lisle Corp.*,
99 F.3d 1109 (Fed. Cir. 1996) ....8

*Khoday v. Symantec Corp.*,
93 F. Supp. 3d 1067 (D. Minn. 2015) ....6

*Loeffel Steel Products, Inc. v. Delta Brands, Inc.*,
387 F. Supp. 2d 794 (N.D. Ill. 2005) ....8, 9

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
209 F. Supp. 3d 612 (S.D.N.Y. 2016) ....6

*Mullins v. Premier Nutrition Corp.*,
178 F. Supp. 3d 867 (N.D. Cal. 2016) ....5

*Trademark Research Corp. v. Maxwell Online, Inc.*,
995 F.2d 326 (2d Cir. 1993) ....6

*Tull v. United States*,
481 U.S. 412 (1987) ....9

*United States v. Chang*,
207 F.3d 1169 (9th Cir. 2000) ....6, 7

**Statutes**

15 U.S.C. § 53(b) ....................................................................................................8, 9, 10

**Rules**

Fed. R. Evid. 702 ..........................................................................................................6, 7

**Other Authorities**

William M. Landes, *Optimal Sanctions for Antitrust Violations*, 50 U. Chi. L. Rev. 652 (1983)..........................................................................................................8

# NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that at 9:00 a.m. on April 27, 2020, or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley, United States Magistrate Judge for the Northern District of California, Defendant LendingClub Corporation ("LendingClub") will and hereby does move to exclude portions of the proffered testimony of Professor George Loewenstein, a Federal Trade Commission ("FTC") rebuttal expert, under Federal Rule of Evidence 702. For the reasons explained below, LendingClub submits that the Court should exclude Professor Loewenstein's testimony to the extent it (i) concerns subject areas in which he has conceded that he lacks expertise; or (ii) encompasses opinions and conclusions that are contrary to applicable law.

This Motion is based on this Notice of Motion and Motion, the points and authorities discussed below, the attached Declaration of Richard H. Cunningham (the "Cunningham Decl.") and associated exhibits thereto, the papers on file in this matter, the arguments of counsel, and any other matters the Court wishes to consider.

Dated February 27, 2020

Respectfully submitted,

/s/ *M. Sean Royall*
M. Sean Royall (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1601 Elm Street
Dallas, TX 75201
Telephone: (214) 972-1770
Facsimile: (214) 972-1771
Email: sean.royall@kirkland.com

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the testimony of an FTC rebuttal expert relating to the quantification of potential consumer harm associated with Count I of the First Amended Complaint should be excluded given that the expert has no experience or background assessing such harm and, indeed, testified under oath that he does not consider himself to be an expert in this area.

2. Whether portions of the testimony of the FTC's rebuttal expert relating to the calculation of potential consumer harm associated with Count I should be excluded for the additional reason that the testimony advocates an approach to monetary relief in this case that is directly contrary to applicable law.

## BACKGROUND

Pursuant to the Court's scheduling order, the deadline for submitting initial expert reports in this matter was November 15, 2019. On that date, LendingClub submitted four expert reports. These reports addressed a range of issues relevant to the case, including:

1. consumer understanding of LendingClub's origination fee disclosures, an issue addressed in a report by Professor Yoram (Jerry) Wind, a survey expert who performed consumer testing experiments involving actual LendingClub borrowers[1];

2. consumer financial literacy and related topics, issues addressed in a report by Professor Bruce Carlin, an expert in consumer financial markets and decision-making[2];

3. bank and financial institution regulatory compliance, issues addressed by Charles Grice, a leading consultant to banks on regulatory compliance topics[3]; and

4. quantification of potential consumer harm associated with the FTC's "hidden fees" claim (Count I), issues addressed in a report by Professor Joseph Farrell, an economist and former Director of the FTC's Bureau of Economics.[4]

*See* Cunningham Decl. ¶ 3.

---

1 Wind is a Professor of Marketing at the Wharton School of the University of Pennsylvania.

2 Carlin is a Professor of Finance at Rice University.

3 Grice is a consultant and former employee of the U.S. Federal Reserve Board.

4 Farrell is a Professor of Economics at the University of California, Berkeley.

The FTC submitted only one expert report in mid-November, a report by Professor Itamar Simonson,[5] a survey expert who tested consumer understanding using Internet panel surveys. Cunningham Decl. ¶ 4.

Under the Court's scheduling order, the deadline for submitting rebuttal expert reports was January 10, 2020. On that date, the FTC submitted two rebuttal expert reports, one by Professor Simonson and a second by Professor George Loewenstein, an economist.[6] Cunningham Decl. ¶ 5. In his rebuttal report, Professor Loewenstein states that he was "asked by counsel for the FTC to examine and evaluate the reports of Professors Joseph Farrell and Bruce Carlin with a specific focus on Count I of the FTC's charge against LendingClub." Cunningham Decl. Exh. 1 (Rebuttal Report of George F. Loewenstein ("Loewenstein Rep.")) at 2. However, as explained in the report, he also offers views in rebuttal to the expert report of Professor Wind, whose borrower testing results Professor Farrell cross-references and partially relies upon. *Id.*

As is evident from his report and deposition testimony, Professor Loewenstein viewed it as his role only to "critique" the work of the three LendingClub experts he was asked to rebut, as opposed to conducting any of his own independent analyses. *See, e.g.*, Cunningham Decl. Exh. 2 (George F. Loewenstein Dep. Tr. ("Loewenstein Tr.")) at 58:21-23 ("I did not attempt to quantify consumer harm myself. I critique Farrell's analysis of consumer harms."); 60:19-21 ("Except insofar as my critiques of Farrell and Carlin and to some degree Wind . . . , I did not conduct empirical analyses myself."); 71:6-7 ("I do not offer my own independent analysis of harms."); 65:25 - 66:2 (he "did not conduct any surveys in this case"). Consistent with this limited role, Professor Loewenstein said nothing in his rebuttal expert report about the FTC's quantification of consumer harm and in his deposition he testified that he was "not aware" of the FTC's position on this issue and did "not have an opinion about whether it's correct or not." *Id.* at 61:11, 17-18.

---

[5] Simonson is a Professor of Marketing at Stanford University.

[6] Loewenstein is a Professor of Economics and Psychology at Carnegie Mellon University.

## ARGUMENT

### I. PROFESSOR LOEWENSTEIN IS NOT QUALIFIED TO PROVIDE EXPERT TESTIMONY REGARDING QUANTIFICATION OF ALLEGED CONSUMER HARM.

In his deposition, Professor Loewenstein claimed expertise in a wide range of areas, including on subjects extending well beyond his academic field of economics and his principal specialization in "behavorial economics." Loewenstein Tr. at 11:7-9. He held himself out as a survey expert, said he was "qualified to conduct surveys," and said if asked he "could have" conducted a survey in this case. *Id.* at 211:24 - 212:1; 66:19-24; 67:1-5. Although he admitted he has no "academic degrees or professional certificates in psychology," he also nonetheless testified that he considers himself an expert "in some areas of psychology." *Id.* at 207:23-25; 208:3-5. Similarly, while he has never taught the subject or even "taken a class," Professor Loewenstein suggested he has expertise in marketing as well, given his various publications "in marketing journals." *Id.* at 210:7-17.

Yet Professor Loewenstein notably stopped well short of claiming expertise when it comes to calculating damages or quantifying consumer harm. When asked if he considered himself "qualified to estimate the amount of consumer harm associated with a challenged practice," he hedged: "I believe I'm qualified to critique other people's evaluations of harm. If I were asked to do that, it would depend on the circumstances." Loewenstein Tr. 67:6-11. Professor Loewenstein later admitted he has never before "performed an analysis to calculate damages or consumer harm" in either a consulting or academic context. *Id.* at 259:1-4. *See also id.* at 258:15-20 and 260:3-8 (testifying that he "never" has "attempted to calculate the consumer harm associated with a deceptive or allegedly deceptive practice"). Nor in this case did he even "attempt to quantify consumer harm," *id.* at 58:21-22, as opposed to merely critiquing Professor Farrell's analysis.

His clearest admission came with this exchange. When asked, "Do you consider yourself an expert in the calculation of damages or consumer harm," Professor Loewenstein gave a crisp, concise response: "*I don't.*" Loewenstein Tr. 211:21-23. Professor Loewenstein made this clear admission notwithstanding that nearly half of his expert report is devoted to a rebuttal of Professor Farrell's methodology for quantifying the range of potential consumer harm in this case.

Before the Court therefore is an expert who is admittedly lacking in expertise in one of the principal areas covered by his expert report. It is not merely that Professor Loewenstein has never before served as an expert on damages or the quantification of consumer harm (although this too is true). Professor Loewenstein has testified unequivocally that he is *not an expert*. This candid admission provides clear grounds to exclude the portion of his proffered expert testimony that relates to the area in which he admittedly lacks expertise.

Relatively few reported cases deal with situations in which a party to litigation proffers someone as an expert who, under oath, disclaims having any such expertise. When this has occurred, it has typically been in circumstances where a witness qualified in some areas to provide expert testimony ventures into other areas where they lack genuine expertise.

For instance, in *Cochran v. Brinkmann Corp.*, No. 1:08-cv-1790-WSD, 2009 WL 4823858 (N.D. Ga. Dec. 9, 2016), a product liability case involving turkey fryers, the plaintiff advanced testimony from an expert offering opinions on the extent of the claimed hazards associated with the product as well as the adequacy of associated warnings. In addition, the expert sought to opine on the availability of product-design alternatives. Yet he admitted that he had no product design experience, which led the court to exclude that portion of his testimony, while allowing the remainder. *Id.* at *11 ("Laugherty's testimony speaks for itself—he is not qualified to render an opinion regarding . . . design alternatives."). Similarly, in *Mullins v. Premier Nutrition Corp.*, the plaintiff's physician expert, an orthopedic practitioner with over thirty years of experience, conceded that he did "not have expertise in the area of clinical trials." 178 F. Supp. 3d 867, 901 (N.D. Cal. 2016). That admission contributed to the court's decision to exclude a portion of the expert's proffered testimony, while allowing other portions. As the court stated, "Even the most qualified expert may not offer *any* opinion on *any* subject; the expert's opinion must be grounded in his or her personal 'knowledge, skill, expertise, training or education.'" *Id.* at 900 (emphasis added). The problem in *Mullins* was that the expert had "not limited his opinions to those subjects," *id.*, and the same problem exists here.

Professor Loewenstein may be a published economist in areas of behavioral economics but that does not make him an expert on the quantification of consumer harm in a deception case such as

this one.[7] He admits as much, and this admission justifies excluding that portion of his testimony implicating his admitted lack of expertise. *See, e.g.*, *Apple, Inc. v. Samsung Electronics Co.*, No. 11-cv-01846LHK, 2013 WL 5955666, at *3 (N.D. Cal. Nov. 6, 2013) (holding that "Federal Rule of Evidence 702 clearly mandates exclusion" of opinions by experts who concede they lack expertise, and adding that, "when testifying outside his area of expertise," an expert witness is nothing more than a "layman" and should not be "anointed" to provide "what is essentially a lay opinion").

The fact that Professor Loewenstein is being offered only as a rebuttal expert to critique the opinions advanced by LendingClub's experts is of no consequence. Even when an expert's role is limited to rebutting other expert witnesses, the rebuttal expert must possess the qualifications needed to voice the proffered opinions and conclusions. *See, e.g.*, *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 338 (2d Cir. 1993) (affirming trial court's refusal to allow rebuttal expert testimony critiquing the opposing expert's calculations where "the critique required accounting expertise" that the expert, an economist, "conceded he did not possess"); *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1078-79 (D. Minn. 2015) (partially excluding rebuttal expert testimony offering "critiques" of the "analysis and valuation" performed by the opposing side's expert, to the extent it went "beyond" the "subjects" in which the rebuttal expert was "qualified to testify").

The Ninth Circuit squarely addressed this issue in *United States v. Chang*, 207 F.3d 1169 (9th Cir. 2000). In that case, which involved criminal counterfeiting and conspiracy claims, the defendant on appeal challenged the exclusion of his expert's testimony, arguing that the expert's testimony "was relevant to rebut the government's expert" regarding the counterfeit nature of the certificate in question. *Id.* at 1173. However, the Ninth Circuit had already ruled that the expert was unqualified "given that he had no experience in identifying counterfeit foreign securities." *Id.* As the Ninth Circuit explained, the defendant's argument "[i]n effect" was that, "even if [the expert] was not qualified to opine as to the authenticity of the Certificate, [he] should have been allowed to testify . . . in order to

---

[7] *See, e.g.*, *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638 (S.D.N.Y. 2016) ("It is well established that even if 'a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to [an]other field.'") (citation omitted).

rebut" the government's expert. *Id.* The court flatly rejected this argument, refusing to dilute the requirements of Rule 702 simply because the opinion testimony was being "*offered for rebuttal purposes*." *Id.* (emphasis added).

For all of these reasons, Professor Loewenstein should not be permitted to give testimony here critiquing the methodology and approach that Professor Farrell used to quantify the potential amount of consumer harm associated with the FTC's "hidden fees" claim. This includes the opinions expressed in Sections V.A. through V.H. of Professor Loewenstein's report.[8]

## II. PORTIONS OF PROFESSOR LOEWENSTEIN'S PROPOSED REBUTTAL TESTIMONY ARE DIRECTLY AT ODDS WITH THE GOVERNING LAW AND FOR THIS ADDITIONAL REASON SHOULD BE EXCLUDED.

In his expert report, Professor Loewenstein criticizes Professor Farrell because he purportedly "ignore[s]" what Loewenstein describes as a "*central feature* of the economic model of legal remedies." Loewenstein Rep. at 9 (emphasis added). The "central feature" Loewenstein faults Professor Farrell for not including in his economic model is something he refers to as "optimal deterrence." *Id.* at 8. As he explains, "optimal deterrence dictates that *fines* should be greater when the probability of being caught is less than 100%." *Id.* at 8-9 (emphasis added). In line with this concept, Loewenstein argues that, whatever amount of consumer harm may have occurred, the Court should impose "*penalties*" equal to that amount "*multiplied* by the reciprocal of the likelihood" of LendingClub "being caught." *Id.* at 9 (emphasis added). According to Loewenstein, there is a shortcoming in Professor Farrell's analysis inasmuch as he applies no such multiplier, which in Loewenstein's view means that Farrell's analysis "is not in accord with accepted economic principles." *Id.* at 10.[9]

---

[8] To the extent that in these sections of his report Professor Loewenstein offers separate critiques of work performed by LendingClub's consumer testing expert, Professor Wind, LendingClub is not hereby seeking to exclude such opinions.

[9] According to Professor Loewenstein, "Farrell's assessment of the economically appropriate penalty"—in particular, his failure to expand his consumer harm estimate using the type of multiplier Loewenstein advocates—"requires the assumption that LendingClub perceived that it had a 100% chance of being caught," which he says "strains credulity." Loewenstein Rep. at 10.

Putting aside that what Professor Loewenstein describes as a "well-accepted principle[] of economics," Loewenstein Rep. at 9, would more appropriately be described as a theoretical notion appearing in a law review article published almost forty years ago,[10] the evidentiary problem with this aspect of Professor Loewenstein's proposed testimony is that it flies in the face of applicable law. Put simply, Section 13(b) of the FTC Act, 15 U.S.C. § 53(b)—the provision the FTC relies upon here—does not allow for the imposition of any form of "fine" or "penalty," much less the use of a "multiplier" to enhance the deterrent effect of a fine or penalty, as Professor Loewenstein advocates.

As many courts have held, "Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories," and trial courts thus should exercise their "gatekeeper authority" to bar such expert testimony. *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996). For example, in *Cave v. Saxon Mortgage Services, Inc.*, the court excluded portions of a rebuttal expert's report, on a paragraph-by-paragraph basis, holding that they were "per se unreliable and inadmissible under *Daubert*" because the opinions stated therein were "'based on an erroneous legal premise.'" Nos. 11-4586, 12-5366, 2015 WL 6153754, at *9 (E.D. Pa. Oct. 20, 2015) (citation omitted). Specifically, the rebuttal expert's proposed testimony "incorporate[d] a misinterpretation of the duties and obligations" arising from a key contract provision previously construed by the court. *Id.* at *3. In particular, multiple facets of the rebuttal expert's proposed testimony "relied on concepts" not contained in the contract, or "improperly opine[d]" in a manner contrary to the court's prior interpretation of the contract. *Id.*, at *6, *8.

Similarly, in *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794 (N.D. Ill. 2005), the court granted a pre-trial motion to bar the testimony of the defendant's rebuttal expert on damages. The problem was that the expert was advancing a definition of "economic loss" that the court concluded was "impermissible as a matter of law," inasmuch as it "excluded" losses associated with "diminished value," and in that sense was incompatible with well-established contract law and UCC principles. *Id.* at 803. In the court's words, "Expert opinions that are contrary to law . . . cannot

---

[10] The sole authority Professor Loewenstein cites for his "optimal deterrence" critique of Professor Farrell is William M. Landes, *Optimal Sanctions for Antitrust Violations*, 50 U. Chi. L. Rev. 652 (1983).

be said to be scientific, to be reliable, or to be helpful to the trier of fact," and are thus "inadmissible." *Id.* at 806. By advancing a definition of economic loss contrary to law, the court concluded that the rebuttal expert in *Loeffel* was not offering "an expert opinion" at all, but rather "a personal opinion about what damages [he] believes should apply in this case." *Id.* (citation and internal punctuation omitted). The same conclusion applies here.

It is beyond dispute that Section 13(b) the FTC Act, 15 U.S.C. § 53(b), allows only for "equitable" relief and does not allow for the imposition of punitive damages, civil penalties, or other monetary relief that exceeds the actual consumer harm or ill-gotten gains associated with the challenged conduct. *See, e.g.*, *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 602 (9th Cir. 2016) (distinguishing the type of "equitable relief" available under Section 13(b) from "traditional legal remedies, such as compensatory damages or civil penalties"); *FTC v. Lanier Law, LLC*, No. 3:14-cv-786, 2015 WL 9598794, at *4 (M.D. Fla. Dec. 8, 2015) (Section 13(b) "authorizes only equitable relief"); *FTC v. Febre*, No. 94-C-3625, 1994 WL 702711, at *2 (N.D. Ill. Dec. 15, 1994) ("Section 13(b) of the Act does not give the FTC the right to seek civil penalties.").[11] What Professor Loewenstein advocates, however, through this portion of his testimony is that the Court impose "penalties" or "fines," and that the amount of those fines or penalties should exceed (and be some multiple of) whatever actual monetary consumer harm (if any) is deemed to have been caused by LendingClub's challenged practices. Loewenstein Rep. at 8; *see also* Loewenstein Tr. at 263:10-12 ("I'm arguing that the estimate of harm is an understatement of the . . . appropriate penalties."). That is, Loewenstein faults Professor Farrell for merely quantifying the potential harm to consumers associated with the FTC's claims and stopping there, as opposed to going further to propose some form of escalation linked to ill-defined notions about "the likelihood . . . of being caught." Loewenstein Rep. at 9.[12] Yet Section 13(b), to the extent

---

[11] *See also, e.g.*, *Tull v. United States*, 481 U.S. 412, 424 (1987) ("a court in equity . . . may not enforce civil penalties").

[12] Professor Farrell, in his initial expert report, makes one reference to "penalties." Cunningham Decl. Exh. 3 (Expert Report of Joseph Farrell, at 20 n.4). It is clear from the context, however, that Farrell was using the term generically to refer to the monetary remedy in this case. And throughout his expert report, Professor Farrell presumes, appropriately, that any such remedy will coincide with "the financial harm (if any) to LendingClub's customers." *Id.* at 1. By contrast, Professor Loewenstein uses the term "penalties" literally. He argues that a simple estimate of

it permits monetary relief at all, at most provides "the authority to require wrongdoers to return money that they illegally obtained." *FTC v. Credit Bureau Ctr., LLC*, FTC Pet. Cert. 3, Dec. 19, 2019, ECF No. 5., p. 3.[13] This is how the FTC itself describes its Section 13(b) authority in a recent Supreme Court filing. Similarly, the FTC's complaint in this case, in a section entitled "This Court's Power to Grant Relief," refers to "restitution," "disgorgement," and "the refund of monies paid" but says nothing of penalties, fines, or multipliers. First Amend. Compl. ¶ 69, ECF No. 57. These same words are repeated (again without reference to penalties, fines, or multipliers) in Paragraph 1 of the complaint and in the Prayer for Relief. Professor Loewenstein's proposed testimony referencing such concepts is thus both contrary to law and at odds with the FTC's own requested relief in this case. It therefore should be ruled inadmissible consistent with the authorities cited above.

## CONCLUSION

For the reasons stated above, LendingClub by this motion requests that the Court issue an order limiting the trial testimony of Professor George Loewenstein in two respects. First, LendingClub asks that Professor Loewenstein, given his admitted lack of expertise, be barred from testifying to any purported opinions or conclusions regarding the assessment or quantification of potential consumer harm associated with Count I, or in any respect from rebutting the consumer harm analysis presented by LendingClub's expert Professor Joseph Farrell. Specifically, LendingClub asks that Sections V.A. through V.H. of Professor Loewenstein's expert report be excluded, and that he not be permitted to testify concerning any opinions or conclusions contained therein, with the exception of opinions and conclusions on survey research issues offered specifically in rebuttal to the consumer testing conducted by LendingClub expert Professor Jerry Wind. Second, LendingClub asks that the Court further

---

harm to consumers is not enough without imposing some form of multiplier to enhance the deterrent effect of the remedy.

[13] In *Credit Bureau*, the Seventh Circuit, in conflict with positions taken by other circuit courts, held that "Section 13(b) doesn't authorize [any form of] monetary relief." *FTC v. Credit Bureau Center, LLC*, 937 F.3d 764, 786 n. 4 (7th Cir. 2019). The FTC has a pending certiorari petition seeking Supreme Court review of this appellate ruling.

enter an order barring Professor Loewenstein from testifying concerning the "optimal deterrence" concepts discussed at pages 8-10 of his expert report, and that those portions of his report be excluded for the additional reasons explained above.

DATED: February 27, 2020

Respectfully submitted,
KIRKLAND & ELLIS LLP

*/s/ M. Sean Royall*

M. Sean Royall (admitted *pro hac vice*)
Rachael A. Rezabek (SBN 298711)
KIRKLAND & ELLIS LLP
1601 Elm Street
Dallas, TX 75201
Telephone: (214) 972-1770
Facsimile: (214) 972-1771
Email: sean.royall@kirkland.com
Email: rachael.rezabek@kirkland.com

Richard H. Cunningham (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202 389-5200
Email: rich.cunningham@kirkland.com

A. Katrine Jakola, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: kjakola@kirkland.com

Attorneys for Defendant
*LendingClub Corporation*

**CERTIFICATE OF SERVICE**

On February 27, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ M. Sean Royall*