1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Diane Doolittle (Bar No. 142046)
2  dianedoolittle@quinnemanuel.com
   Suong T. Nguyen (Bar No. 237557)
3  suongnguyen@quinnemanuel.com
   Margaret Shyr (Bar No. 300253)
4  margaretshyr@quinnemanuel.com
5  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065
6  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
7
   David M. Grable (Bar No. 237765)
8  davegrable@quinnemanuel.com
   Michael T. Lifrak (Bar No. 210846)
9  michaellifrak@quinnemanuel.com
   Joseph C. Sarles (Bar No. 254750)
10 josephsarles@quinnemanuel.com
   865 S. Figueroa Street, 10th Floor
11 Los Angeles, California 90017
   Telephone: (213) 443-3200
12 Facsimile: (213) 443-3100

13 *Attorneys for Defendant LendingClub Corporation*

14 *[additional counsel on signature page]*

15                 **UNITED STATES DISTRICT COURT**

16      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

17

18 FEDERAL TRADE COMMISSION,              CASE NO. 3:18-CV-02454-JSC

19              Plaintiff,                **LENDINGCLUB'S NOTICE OF MOTION
                                          AND MOTION TO STAY PENDING THE**
20        vs.                            **SUPREME COURT'S DECISIONS IN
                                          *CREDIT BUREAU & AMG CAPITAL***
21 LENDINGCLUB CORPORATION d/b/a         ***MANAGEMENT***
   Lending Club,
22                                       Date: September 3, 2020
              Defendant.                 Time: 9:00 A.M.
23                                       Courtroom: F (Telephonic Hearing)
                                         Judge: Hon. Jacqueline Scott Corley
24

25

26

27

28

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, on September 3, 2020 at 9:00 A.M., or as soon thereafter as it may be heard, Defendant LendingClub Corporation ("LendingClub") will respectfully move the Court for an order staying this action.  The relief LendingClub seeks is an order staying this action pending the United States Supreme Court's decisions in *F.T.C. v. Credit Bureau Center*, No. 19-825, and *AMG Capital Management, LLC v. F.T.C.*, No. 19-508.

LendingClub's Motion is based on this notice of motion and supporting memorandum and declaration, the evidence cited therein, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.


DATED:  July 30, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ Diane M. Doolittle*
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Suong T. Nguyen (Bar No. 237557)
suongnguyen@quinnemanuel.com
Margaret Shyr (Bar No. 300253)
margaretshyr@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

David M. Grable (Bar No. 237765)
davegrable@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3200
Facsimile: (213) 443-3100

M. Sean Royall (admitted *pro hac vice*)
Rachael A. Rezabek (SBN 298711)
KIRKLAND & ELLIS LLP
1601 Elm Street
Dallas, TX 75201
Telephone: (214) 972-1770
Facsimile: (214) 972-1771
Email: sean.royall@kirkland.com
Email: rachael.rezabek@kirkland.com

Richard H. Cunningham (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-3119
Facsimile: (202) 389-5200
Email: rich.cunningham@kirkland.com

A. Karine Jakola (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: kjakola@kirkland.com

*Attorneys for LendingClub Corporation*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    RELEVANT BACKGROUND .........................................................................3

    A.     Procedural History .............................................................................3

    B.     Section 13(b) of the FTC Act ...........................................................4

    C.     *F.T.C. v. Credit Bureau Center* .......................................................5

    D.     *F.T.C. v. AMG Capital Management* ...............................................7

    E.     *S.E.C. v. Liu* .....................................................................................7

III.   LEGAL STANDARDS .....................................................................................8

IV.    ARGUMENT ...................................................................................................9

    A.     The Supreme Court Is Poised To Decide Whether The FTC Can Get Monetary Relief At All In This Case. ................................................9

    B.     No Possible Damage Will Result From Granting A Stay. ..................9

    C.     LendingClub Would Suffer Hardship And Inequity Absent A Stay. ......................11

    D.     A Stay Will Promote The Orderly Course Of Justice. .....................13

V.     CONCLUSION ...............................................................................................15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AMG Capital Mgmt., LLC v. F.T.C.*,
  2020 WL 3865250 (U.S. July 9, 2020) ............................................................................... 1, 7

*AMG Capital Mgmt., LLC v. F.T.C.*,
  No. 19-508 (U.S. Oct. 18, 2019) ........................................................................................ 9

*Armstrong v. Exceptional Child Ctr., Inc.*,
  135 S. Ct. 1378 (2015) ....................................................................................................... 6

*de Maison v. S.E.C.*,
  2020 WL 3578674 (U.S. July 2, 2020) .............................................................................. 8

*F.T.C. v. AMG Capital Mgmt., LLC*,
  910 F.3d 417 (9th Cir. 2018) ......................................................................................... 1, 7, 8

*F.T.C. v. Amy Travel Serv., Inc.*,
  875 F.2d 564 (7th Cir. 1989) ....................................................................................... 5, 6, 7

*F.T.C. v. Credit Bureau Ctr.*,
  2020 WL 3865251 (U.S. July 9, 2020) ............................................... [*passim*] 1, 7

*F.T.C. v. Credit Bureau Ctr.,  LLC*,
  937 F.3d 764 (7th Cir. 2019) ..................................................................................... 1, 5, 6, 7

*F.T.C. v. Pantron I Corp.*,
  33 F.3d 1088 (9th Cir. 1994) .......................................................................................... 5, 6

*FTC v. Actavis*,
  570 U.S. 136 (2013) .......................................................................................................... 13

*FTC v. Watson Pharmaceuticals, Inc.*,
  677 F.3d 1298 (11th Cir. 2012) ....................................................................................... 13

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) .......................................................................................................... 6

*In re Lipitor Antitrust Litig.*,
  855 F.3d 126 (3d Cir. 2017) ............................................................................................. 12

*In re Wellbutrin XL Antitrust Litig.*,
  2014 WL 10435333 (E.D. Pa. Jan. 17, 2014) ................................................................. 13

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .......................................................................................................... 8

*Larroque v. First Advantage Lns Screening Sols., Inc.*,
  2016 WL 39787 (N.D. Cal. Jan. 4, 2016) ..................................................................... 3, 12

*Larson v. Trans Union, LLC*,
  2015 WL 3945052 (N.D. Cal. June 26, 2015) .................................................................. 12

*Liu v. S.E.C.*,
  140 S. Ct. 1936 (2020) ................................................................................................. 2, 7, 11

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ................................................................................. 8, 9, 10, 11, 13

*Matera v. Google Inc.*,
  2016 WL 454130 (N.D. Cal. Feb. 5, 2016) ...................................................................... 14

*McElrath v. Uber Techs., Inc.*,
  2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) ........................................................................ 3

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
  708 F.2d 1458 (9th Cir. 1983) ................................................................................................ 8, 9

*Meghrig v. KFC Western, Inc.*,
  516 U.S. 479 (1996) ................................................................................................................ 6, 7

*Meijer, Inc. v. Abbott Labs.*,
  2009 WL 723882 (N.D. Cal. Mar. 18, 2009) ........................................................................ 15

*Miller v. French*,
  530 U.S. 327 (2000) ................................................................................................................ 6

*Mitchell v. Robert DeMario Jewelry, Inc.*,
  361 U.S. 288 (1960) ................................................................................................................ 6

*Porter v. Warner Holding Co.*,
  328 U.S. 395 (1946) ................................................................................................................ 6

*Providence Rubber Co. v. Goodyear*,
  76 U.S. 788 (1869) .................................................................................................................. 8

*Ramirez v. Trans Union, LLC*,
  2015 WL 6159942 (N.D. Cal. June 22, 2015) ........................................................... 3, 10, 12

*RLI Ins. Co. v. ACE Am. Ins. Co.*,
  2020 WL 1322955 (N.D. Cal. Mar. 20, 2020) ...................................................................... 13

*Robledo v. Randstad US, L.P.*,
  2017 WL 4934205 (N.D. Cal. Nov. 1, 2017) ............................................................ 10, 12, 14

*Rubber Co. v. Goodyear*,
  9 Wall. 788 (1870) .................................................................................................................. 2

*Team Resources Inc. v. S.E.C.*,
  2020 WL 3578673 (U.S. July 2, 2020) .................................................................................. 8

**Statutory Authorities**

15 U.S.C. § 45(b) ........................................................................................................................ 4

15 U.S.C. § 45(b)(2) ................................................................................................................... 4

15 U.S.C. § 45(m)(1)(B) ............................................................................................................ 4

15 U.S.C. § 53(b) ........................................................................................................................ 5

15 U.S.C. § 57a(a)(1)(B) ............................................................................................................ 4

15 U.S.C. § 57b(a)(1) ................................................................................................................. 4

15 U.S.C. § 57b(b) ...................................................................................................................... 4

15 U.S.C. § 78u(d)(5) ............................................................................................................. 2, 8

**Other Authorities**

Anabel Munoz & Alix Martichoux, "Gov. Newsom orders major reopening rollback in attempt to
  control rampant COVID-19 spread" (July 13, 2020), *available at* https://abc7.com/governor-
  newsom-update-today-gavin-press-conference-california-covid-19-coronavirus/6315327/ ...... 13

*Prepared Statement of the Federal Trade Commission* ........................................................... 2, 9

1    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

2    **I.      INTRODUCTION**

3              This case cries out for a stay.  The centerpiece of the FTC's case is its demand for

4    monetary relief on Count I, the only claim in the case for which it seeks monetary relief.

5    However, the Supreme Court this month granted certiorari to resolve a circuit split on whether the

6    FTC has the power to obtain monetary relief *at all* in cases such as this one.  This issue will be

7    resolved next term.  Given the profound potential impact of the Supreme Court's anticipated

8    decision on this case, the potential for saving enormous judicial and party resources if the

9    Supreme Court decides that the FTC is not entitled to obtain monetary relief, and the fact that the

10   FTC does not challenge LendingClub's current conduct on Count I or II, the case should be stayed

11   until the Supreme Court issues its ruling.

12             Next term, the Supreme Court will directly address the FTC's power to seek ***any*** monetary

13   relief—and the precise limits on that power, if it exists at all—in two cases (one from the Ninth

14   Circuit) for which it has now granted certiorari.  *See F.T.C. v. Credit Bureau Ctr.*, 2020 WL

15   3865251, at *1 (U.S. July 9, 2020); *AMG Capital Mgmt., LLC v. F.T.C.*, 2020 WL 3865250, at *1

16   (U.S. July 9, 2020) (hereinafter, "*Credit Bureau*" and "*AMG*").  These cases will address the

17   FTC's ability to seek monetary relief under Section 13(b) of the FTC Act (15 U.S.C. § 53(b)),

18   which is the statute at issue in this case.  Section 13(b) by its terms authorizes the FTC to seek

19   only "a temporary restraining order" or an "injunction."  Although the statute has in the past been

20   interpreted to support recovery of equitable restitution, last year the Seventh Circuit reversed its

21   own precedent, persuasively concluding that "section 13(b)'s permanent-injunction provision does

22   not authorize monetary relief."  *F.T.C. v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 786 (7th Cir.

23   2019).  The Ninth Circuit found this argument to "ha[ve] some force," but as a three-judge panel

24   lacked the power to overrule circuit precedent.  *F.T.C. v. AMG Capital Mgmt., LLC*, 910 F.3d 417,

25   426 (9th Cir. 2018).  On July 9, 2020, the Supreme Court granted certiorari in both cases.

26             Regardless of whether the FTC is found to have some ability to seek monetary equitable

27   relief under Section 13(b), the Supreme Court recently imposed new limitations on equitable

28   monetary awards, which will limit any recovery the FTC can obtain in this case.  Specifically, on

1   June 22, 2020, the Supreme Court issued its decision in *Liu v. S.E.C.*, 140 S. Ct. 1936 (2020),

2   sharply limiting the SEC's power to collect restitution under its enforcement statute—which, in

3   contrast with Section 13(b) of the FTC Act, does not limit the relief available to the SEC to an

4   "injunction," but expressly allows the SEC to seek "equitable relief." *Id.* at 1940 (citing 15 U.S.C.

5   § 78u(d)(5)).  Although arising in the context of the SEC's statutory authority—which is broader

6   than the FTC's—the Court addressed the "relief . . . *typically* available in equity" (*id.* at 1942), and

7   held that, whether it is called "disgorgement" or "restitution" or any other name, a monetary

8   recovery in equity ***must*** be limited "to the net profits from wrongdoing, that is, 'the gain made

9   upon any business or investment, when both the receipts and payments are taken into the

10  account.'" *Id.* at 1945 (quoting *Rubber Co. v. Goodyear*, 9 Wall. 788, 804 (1870)).  Here, neither

11  side has developed the evidentiary record to establish LendingClub's net profits, as this change in

12  the law occurred after the close of discovery.  Ordinarily, such a change would require the parties

13  to litigate *Liu*'s application to this case and account for LendingClub's expenses in calculating any

14  equitable monetary relief.  But that potentially wasted effort need not be undertaken here—at least

15  not now—because the Supreme Court will have the opportunity next term to confirm *Liu*'s

16  application in the FTC context in deciding the *Credit Bureau* and *AMG* cases and may well hold

17  that the FTC is not entitled to obtain *any* monetary relief under Section 13(b), obviating any need

18  to litigate issues relevant to the *Liu* decision.

19          The FTC may argue here that these Supreme Court developments are irrelevant, but the

20  FTC has already conceded the opposite in its recent testimony before Congress.  In July 21, 2020

21  testimony before a Senate sub-committee, the FTC conceded that "our ability to [obtain monetary

22  relief] has been threatened or curtailed by recent judicial decisions," and that the Supreme Court's

23  decision in *Liu* already "may place limitations on the amount of money we can obtain."  *See*

24  *Prepared Statement of the Federal Trade Commission* at 6, 7 (Sarles Decl., Ex., 1).  The FTC

25  acknowledged that its power to "secure equitable monetary remedies, including restitution to

26  consumers and disgorgement of ill-gotten gains" is "in peril" and that the upcoming Supreme

27  Court decision will "resolve this issue by next summer."  *Id.*at 6-7.  The relevance to this case of

28  the Supreme Court's decision in *Liu* and its upcoming decision in *Credit Bureau and AMG* is

1  *undisputed*.  In short, the central issue in this case—whether the FTC can obtain any monetary

2  relief from LendingClub and, if so, what limits apply—is set to be resolved in the next Supreme

3  Court term.  It just makes sense to allow the Supreme Court to speak before requiring the parties

4  to spend considerable time and expense litigating issues that may become moot.

5        This Court has repeatedly granted stays under the familiar applicable standard where, like

6  here, a pending Supreme Court case in which certiorari has been granted will likely significantly

7  impact the applicable law.  *See, e.g.*, *Ramirez v. Trans Union, LLC*, 2015 WL 6159942 (N.D. Cal.

8  June 22, 2015) (granting stay pending Supreme Court's decision in *Spokeo*); *Larroque v. First*

9  *Advantage Lns Screening Sols., Inc.*, 2016 WL 39787 (N.D. Cal. Jan. 4, 2016) (same); *McElrath v.*

10  *Uber Techs., Inc.*, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) (granting stay pending Supreme

11  Court's decision in *Morris*).  A stay is particularly appropriate here given the profound harm to

12  LendingClub from proceeding to trial based upon the FTC's current theory of consumer harm and

13  the lack of prejudice to the FTC where nearly all of the objectionable conduct alleged in the case

14  ended months or years ago.

15        The reasoning in these prior stay cases applies with even greater force here, where a

16  potentially needless trial looms, the ongoing health crisis of the COVID-19 pandemic puts the trial

17  date in question in any event, and the primary driver of continued litigation—the FTC's monetary

18  demand—may be profoundly impacted, perhaps even nullified, by the Supreme Court next term.

19  Rather than force costly litigation concerning the changes in the scope of remedy the FTC may

20  seek, and proceeding to trial under a possibly erroneous standard, the Court should enter a stay

21  pending the Supreme Court's guidance in *Credit Bureau* and *AMG*.  Doing so will ensure that the

22  correct standard is applied at trial, potentially avoid an unnecessary trial altogether or significantly

23  reduce the issues to be tried, and provide finality to the parties.

24  **II.**    **RELEVANT BACKGROUND**

25      **A.**    **Procedural History**

26        The FTC brought "this action under Section 13(b) of the Federal Trade Commission Act."

27  Dkt. 57 ¶ 1.  Its Complaint alleges that "[s]ection 13(b) of the FTC Act . . . empowers this Court to

28  grant injunctive and such other relief as the Court may deem appropriate . . ., including . . .

1    restitution, the refund of monies paid, and the disgorgement of ill-gotten monies." *Id.* ¶ 69.  With

2    respect to Count I, the only claim for which the FTC seeks monetary relief, it seeks restitution.

3    Dkt. 273, at 19 (FTC's Trial Brief).

4          On June 1, 2020, the Court entered an order resolving the parties' cross-motions for

5    summary judgment.  Dkt. 291.  The Court granted summary judgment as to liability on Count II

6    (regarding statements allegedly pertaining to the certainty of loan approval), dismissed Count IV

7    (regarding violation of the GLB Act), dismissed three of LendingClub's affirmative defenses, and

8    denied all other motions.  *See generally id.*

9          Trial of this matter was initially scheduled to begin on June 22, 2020.  Dkt. 288, at 1.  On

10   May 22, the Court continued the trial to October 19, 2020, due to the still-ongoing COVID-19

11   pandemic.  *Id.*  It also referred the parties to a magistrate judge for settlement discussions, which

12   took place on July 16, 2020.  *Id.*; Dkt. 309.

13        **B.      Section 13(b) of the FTC Act**

14         The FTC Act grants the FTC several tools to enforce the Act's prohibition on unfair or

15   deceptive trade practices.  For instance, under its "cease and desist" power the FTC may bring an

16   administrative action and seek an order prohibiting the respondent from engaging in the illegal

17   conduct at issue.  15 U.S.C. § 45(b).  After such an order is issued, the FTC can sue the respondent

18   in state or federal court for "the refund of money" or "the payment of damages," among other

19   relief, but ***only*** if it proves that "the act or practice to which the cease and desist order relates is

20   one which a reasonable man would have known under the circumstances was dishonest or

21   fraudulent."  *Id.* §§ 57b(a)(2), (b). And after the order becomes final, the FTC can sue anyone else

22   in federal court for violating the order, but only if it proves that the violator acted with "actual

23   knowledge" that his conduct was unlawful.  *Id.* § 45(m)(1)(B).  Separately, the FTC can

24   promulgate rules that "define with specificity acts or practices which are unfair or deceptive."  *Id.*

25   § 57a(a)(1)(B).  Once the FTC establishes a rule, it can seek legal and equitable remedies,

26   including restitution, from violators.  *Id.* § 57b(a)(1), (b).  None of the above tools were used in

27   this case.

28

The FTC's remaining enforcement mechanism, the one it invoked here, is Section 13(b), which permits the FTC to forego any administrative action or rulemaking and directly pursue a temporary restraining order or injunction in federal court. *Id.* § 53(b). Section 13(b) states, in relevant part:

> Whenever the Commission has reason to believe--**(1)** that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and **(2)** that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public-- the Commission . . . may bring suit in a district court of the United States ***to enjoin any such act or practice***. Upon a proper showing . . ., ***a temporary restraining order or a preliminary injunction*** may be granted without bond . . . : *Provided further*, That in proper cases the Commission may seek, and after proper proof, the court may issue, ***a permanent injunction***. . . .

*Id.* (emphasis added).

Although § 13(b) makes no mention of other equitable relief—including restitution, disgorgement, or any monetary relief—until recently, the prevailing view was that it "implicitly" authorized restitution. *See, e.g.*, *F.T.C. v. Amy Travel Servs., Inc.*, 875 F.2d 564, 571 (7th Cir. 1989); *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994).

## C.   *F.T.C. v. Credit Bureau Center*

In *F.T.C. v. Credit Bureau Center*, the FTC proceeded as it has in this case, invoking § 13(b) to bypass all administrative procedures and sue the defendant directly in federal court. The FTC sued Credit Bureau for advertising a "free credit report and score" while allegedly enrolling customers in a paid monthly subscription. *Credit Bureau*, 937 F.3d at 766-67. The district court found the defendant liable and entered a $5 million restitution judgment. *Id.* at 768. On appeal, the defendant argued that § 13(b), by its plain terms, does not authorize the FTC to seek restitution. *Id.* at 771. After thorough consideration of § 13(b), cases applying it, and the evolution of Supreme Court jurisprudence, the Seventh Circuit agreed with the defendant and reversed its decades-old precedent, concluding that "section 13(b)'s permanent-injunction provision does not authorize monetary relief." *Id.* at 786. It therefore vacated the restitution award. *Id.*

As it explained in *Credit Bureau*, the Seventh Circuit was the first court to hold that § 13(b) implicitly authorized restitution as "ancillary equitable relief necessary to effectuate the exercise of the granted powers." *F.T.C. v. Amy Travel Serv., Inc.*, 875 F.2d 564, 572 (7th Cir. 1989). Subsequent courts to confront the question then relied on *Amy Travel* to conclude the same. *See Credit Bureau*, 937 F.3d at 779 ("Our approach in *Amy Travel* became the standard.") (collecting cases). This includes the Ninth Circuit, which held that § 13(b) "includes the power to order restitution" in reliance on *Amy Travel*. *Pantron I Corp.*, 33 F.3d at 1102. But in *Credit Bureau*, the Seventh Circuit carefully examined the origin of its decision in *Amy Travel*, finding that it traced back to World-War-era Supreme Court precedent at a time when the Court implied remedies in statutes much more liberally than it does today. *See Credit Bureau*, 937 F.3d at 776 ("The prevailing interpretation of section 13(b) developed in the shadow of two [Supreme Court] decisions that took a capricious view of implied remedies.") (citing *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) and *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960)). However, the Court's "understanding of implied remedies evolved" after those cases. *Id.* at 779. Today, rather than "assume[] that the judiciary [can] freely craft remedies," *id.* at 777, the Court "now recognizes the importance of Congress's choice to specify forms of relief," *id.* at 780.

Modern Supreme Court precedent, *Credit Bureau* explains, **forecloses** the implication of other remedies where Congress has provided for a particular remedy. *Id.* at 779-782; *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) ("We have therefore been especially reluctant to tamper with the enforcement scheme embodied in [ERISA] by extending remedies not specifically authorized by its text.") (internal citations and quotation marks omitted); *Miller v. French*, 530 U.S. 327, 340-41 (2000) (concluding that the plain meaning of a provision expressed the congressional intent to displace equitable authority); *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015) (holding that the Medicaid Act's provision of a specific remedy "preclude[d] the availability of equitable relief"). For example, in *Meghrig v. KFC Western, Inc.*, 516 U.S. 479 (1996), the Court considered whether an enforcement statute very similar to Section 13(b), which by its terms authorized only injunctive relief, implied a restitution remedy. The Court held it did not, reversing the Ninth Circuit and holding that

-6-

"[u]nder a plain reading of this remedial scheme," the plaintiff "could seek a mandatory injunction . . . or a prohibitory injunction," but "neither contemplates the award of past cleanup costs, whether these are denominated 'damages' or 'equitable restitution.'" *Id.* at 484; *see also Credit Bureau*, 937 F.3d at 780-81 (discussing *Meghrig*).  In light of this evolved understanding, the Seventh Circuit reconsidered its holding in *Amy Travel*, finding this doctrinal shift to be a compelling basis to depart from precedent.  *Id.* at 782-83.

For these reasons, among several others, the Seventh Circuit held "that section 13(b)'s permanent-injunction provision does not authorize monetary relief."  *Id.* at 786.  On July 9, 2020, the Supreme Court granted certiorari in *Credit Bureau*.  *Credit Bureau*, 2020 WL 3865251, at *1.

### D.    *F.T.C. v. AMG Capital Management*

In *F.T.C. v. AMG Capital Management*, the FTC sued a payday lender under § 13(b) for alleged deceptive practices, seeking a permanent injunction and disgorgement.  *AMG Capital Mgmt.*, 910 F.3d at 421-22.  The district court entered summary judgment as to liability, issued a permanent injunction, and entered a $1.27 billion restitution judgment.  *Id.* at 422.  On appeal, the defendant argued, among other challenges, that "the district court did not have the power to order equitable monetary relief under § 13(b) of the FTC Act."  *Id.* at 426.  The Ninth Circuit, sitting as a three-judge panel, agreed that this "argument ha[d] some force, but it [was] foreclosed by our precedent."  *Id.*  Judge O'Scannlain, joined by Judge Bea, specially concurred "to call attention to our circuit's unfortunate interpretation of the Federal Trade Commission Act," arguing that interpreting § 13(b) to imply a restitutionary remedy "is no longer tenable."  *Id.* at 429 (O'Scannlain, J., specially concurring).  The Supreme Court granted certiorari in *AMG Capital Management* on the same day as in *Credit Bureau* and consolidated the cases for consideration.  *AMG Capital Mgmt.*, 2020 WL 3865250, at *1.

### E.    *S.E.C. v. Liu*

In *S.E.C. v. Liu*, the SEC brought suit under 15 U.S.C. § 78u(d)(5), its enforcement analog to § 13(b), allowing the SEC to bypass the administrative process and pursue an alleged wrongdoer directly in court.  *Liu*, 140 S. Ct. at 1940.  Unlike the FTC Act's § 13(b)—which only talks about injunctive relief—the Securities Exchange Act's § 78u(d)(5) expressly and generally

1    authorizes "any equitable relief that may be appropriate or necessary." *Id.* (quoting 15 U.S.C.

2    § 78u(d)(5)).  The Supreme Court held that, to be a valid form of equitable relief, a restitution

3    award must not "exceed the gains 'made upon any business or investment, when both the receipts

4    and payments are taken into the account.'" *Id.* at 1949-50 (quoting *Providence Rubber Co. v.*

5    *Goodyear*, 76 U.S. 788, 804 (1869)).  "Accordingly, courts must deduct legitimate expenses

6    before ordering disgorgement." *Id.* at 1950.  This includes both variable and overhead costs—the

7    Court specifically identified "lease payments" that should have been deducted from the award, but

8    were not.  *Id.*  As such, the Court vacated the restitution award and remanded for additional

9    proceedings under the correct standard.  *Id.*

10           In the wake of *Liu*, the Supreme Court vacated several other lower-court judgments and

11   remanded for "further consideration in light of *Liu*."  *See, e.g.*, *Team Resources Inc. v. S.E.C.*,

12   2020 WL 3578673, at *1 (U.S. July 2, 2020); *de Maison v. S.E.C.*, 2020 WL 3578674, at *1 (U.S.

13   July 2, 2020).

14   **III.    LEGAL STANDARDS**

15           "[T]he power to stay proceedings is incidental to the power inherent in every court to

16   control the disposition of the causes on its docket with economy of time and effort for itself, for

17   counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "[A] trial court may,

18   with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a

19   stay of an action before it, pending resolution of independent proceedings which bear upon the

20   case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983)

21   (citation omitted).  Three factors are relevant to whether a stay pending the outcome of another

22   case is warranted:

23           (1) the possible damage which may result from the granting of a stay, (2) the hardship
             or inequity which a party may suffer in being required to go forward, and (3) the
24           orderly course of justice measured in terms of the simplifying or complicating of
             issues, proof, and questions of law which could be expected to result from a stay.
25

26   *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).  The decision to

27   stay an action pending the outcome of another is committed to the discretion of the trial court and

28   will be reversed only for abuse of that discretion.  *See Mediterranean Enters.*, 708 F.2d at 1465.

IV.    **ARGUMENT**

A stay is warranted while the Supreme Court decides whether the FTC has the power to seek the monetary relief it has demanded here.

A.    **The Supreme Court Is Poised To Decide Whether The FTC Can Get Monetary Relief At All In This Case.**

*Credit Bureau* and *AMG Capital Management* are plainly "independent proceedings which bear upon" this case. *See Mediterranean Enters.*, 708 F.2d at 1465. The Supreme Court is poised to address in both of those cases an issue of enormous consequence to this case—whether § 13(b) of the FTC Act authorizes the FTC to seek monetary relief at all. *See* Petition for a Writ of Certiorari, at (i), *AMG Capital Mgmt., LLC v. F.T.C.*, No. 19-508 (U.S. Oct. 18, 2019) ("QUESTION PRESENTED . . . Whether § 13(b) of the [FTC] Act, by authorizing 'injunction[s],' also authorizes the Commission to demand monetary relief such as restitution."). Resolution of this question means the difference between LendingClub having to defend against the FTC's monetary demand at trial, including spending the time and money on arguing the impropriety of such a demand, or facing only the potential for an injunction prohibiting it from engaging in conduct it has already voluntarily ceased and has no intention of resuming. Needless to say, the implications for settlement—not to mention trial preparation and what evidence would even be relevant at trial—are resounding. The FTC conceded this as well in recent Congressional testimony. *See Prepared Statement of the Federal Trade Commission* at 6-7 (Sarles Decl., Ex., 1) (noting the upcoming Supreme Court decision will "resolve this issue [whether the FTC can obtain monetary relief under Section 13(b)] by next summer").

Accordingly, the Court has discretion to stay this case pending the outcome of *Credit Bureau* and *AMG Capital Management*. *See Mediterranean Enters.*, 708 F.2d at 1465. All three relevant factors weigh in favor of a stay.

B.    **No Possible Damage Will Result From Granting A Stay.**

The first relevant factor is "the possible damage which may result from the granting of a stay." *Lockyer*, 398 F.3d at 1110.

Granting a stay here would not damage anyone.  LendingClub has already ceased virtually all the conduct at issue in this case (including all the conduct at issue in Count I).[1]  Dkt. 279, at 25. *See Ramirez*, 2015 WL 6159942, at *2 ("Defendant has modified the conduct about which Plaintiff complains so there is no need to proceed with trial to obtain immediate injunctive relief and staunch the [harm].").  And, any argument from the FTC that trial must proceed now so that the conduct about which it complains can be enjoined is undermined by the fact the FTC did not seek preliminary injunctive relief at the outset of the case to enjoin the conduct at issue while litigation proceeded, dispelling any notion that irreparable harm would occur without such relief. Waiting for the Supreme Court to rule next term will not harm anyone.

Nor can the FTC argue that it, or LendingClub's customers, would be damaged by delay in the recovery of restitution.  The FTC's restitution demand may be stripped of its legal basis next year, and the FTC should not be permitted to rush as many money judgments as possible before it no longer can.  In any case, "the Ninth Circuit has made clear that monetary recovery cannot serve as the foundation for the denial of a stay." *Robledo v. Randstad US, L.P.*, 2017 WL 4934205, at *3 (N.D. Cal. Nov. 1, 2017) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

The requested stay is one of finite, and relatively short, duration—pending rulings in two Supreme Court cases that have been consolidated for consideration and in which certiorari has already been granted.  Any minimal prejudice cannot outweigh the prejudice to LendingClub from going forward now.  *See Ramirez*, 2015 WL 6159942, at *2 ("The possible prejudice to Plaintiff that will result from a stay is minimal, as the *Spokeo* decision will likely be issued within a year per the Supreme Court's customary practice.").

---

[1]   The FTC challenges LendingClub's ongoing use of the ACH Network—a virtually ubiquitous means used across industries for processing automatic withdrawals from customers' checking accounts—but LendingClub's robust processes already far exceed the relevant industry standards, LendingClub's policy is to fully reimburse customers for the extremely rare (but inevitable errors) that can occur with automated withdrawals, and after years of investigation and litigation, the FTC has never pointed to a single specific thing LendingClub could or should do to further improve its processes.  *See* Dkt. 143, at 19-20.

**C.      LendingClub Would Suffer Hardship And Inequity Absent A Stay.**

The second relevant factor is "the hardship or inequity which a party may suffer in being required to go forward."  *Lockyer*, 398 F.3d at 1110.

First, to expose LendingClub—a company with a current market capitalization of approximately $390 million—to the risk of a substantial money judgment, where the judgment could well be stripped of its legal basis within a matter of months, would be profoundly unfair to LendingClub.

Second, even before the Supreme Court decides the *AMG Capital Management/Credit Bureau* cases next term, going forward now would require conforming any measure of restitution under the new standard the Supreme Court announced in *Liu v. S.E.C.*, 140 S. Ct. 1936 (2020), which imposed new limitations on the law applicable to equitable monetary awards, which is what the FTC seeks here.  Under *Liu*, any restitution award against LendingClub (if even authorized by § 13(b)) must be limited to LendingClub's "net profits."  *Liu*, 140 S. Ct. at 1940.  The FTC's monetary demands and theories are incompatible with *Liu,* expressly seeking LendingClub's "net *revenue*."  Dkt. 273, at 19 (emphasis added).  Under *Liu*, all of LendingClub's "legitimate expenses" must be accounted for and used to provide the basis for calculating its net ***profits***, which are now the most that the FTC could ever seek as an equitable remedy.  *See Liu*, 140 S. Ct. at 1949-50 (A restitution award "that makes no allowance for the cost and expense of conducting a business would be inconsistent with the ordinary principles and practice of courts of [equity].") (citation omitted).  Ordinarily, such a change would require the parties to expend resources litigating *Liu*'s application to this case and accounting for LendingClub's expenses in calculating any equitable monetary relief.  But that potentially wasted effort need not be undertaken here—at least not now—because the Supreme Court will have the opportunity in *Credit Bureau/AMG* to confirm that the principles outlined in *Liu* apply equally to requests for monetary equitable relief from the FTC and may well decide that the FTC is not entitled to obtain monetary relief *at all* under Section 13(b), obviating any need to litigate issues relevant to the *Liu* decision.  Given this, it would be unfair to put LendingClub to the additional time and expense of litigating issues flowing from the Supreme Court's recent *Liu* decision now.

1    Third, without a stay, LendingClub will also have to expend additional time and

2  considerable expense litigating the other significant problems with the FTC's flawed request for

3  "restitution."[2]  To be certain, the FTC will seek to litigate the viability of all of LendingClub's

4  arguments in this regard in the lead up to and during trial, which will expend even more party and

5  judicial resources.  The potential savings of judicial and party resources that will otherwise be

6  spent litigating the issues surrounding the FTC's request for monetary relief more than justifies a

7  stay of this case until the Supreme Court rules, particularly because the Supreme Court's

8  anticipated decision may entirely obviate the need to *ever* spend those resources.

9    It would work serious hardship and inequity upon LendingClub to force it needlessly to put

10  on its trial defense only to have the entire exercise effectively mooted.  As this Court has held in a

11  similar context, a "[d]efendant will suffer significant hardship if the case is not stayed" when

12  significant litigation "may be rendered moot and unnecessary within the next six months by [a

13  Supreme Court] decision."  *Larroque*, 2016 WL 39787 at *2; *see also Ramirez*, 2015 WL

14  6159942, at *2 ("Defendant faces the risk of unnecessary proceedings and expenses if the case is

15  not stayed: given the current schedule, absent a stay this case will be resolved through either trial

16  or summary judgment prior to the Supreme Court's ruling."); *Larson v. Trans Union, LLC*, 2015

17  WL 3945052, at *8 (N.D. Cal. June 26, 2015) (finding that "if the case is not stayed . . . the parties

18  . . . would . . .face the risk of dedicating substantial resources to proceedings that may ultimately

19  prove unnecessary); *Robledo*, 2017 WL 4934205, at *4 ("Denying the stay at this juncture risks

20  forcing the parties to expend resources that could have been avoided.").  Indeed, the last time the

21  Supreme Court addressed a significant issue implicating FTC Act cases, numerous courts stayed

22  their proceedings to avoid prejudice to defendants and waste of judicial resources. *See In re*

23  *Lipitor Antitrust Litig.*, 855 F.3d 126, 139 (3d Cir. 2017) (noting that the District Court had

24

25    [2] Among other things, the FTC's request fails to meet the agency's burden of proof; it assumes

26  (contrary to undisputed fact) that virtually all LendingClub customers were deceived; and it
wrongly seeks a full refund of origination fees rather than addressing the actual harm the FTC

27  alleges—upfront payment of the origination fee rather than payment over the life of the loan—
ignoring that there is no dispute in the case that the full cost of the loan was disclosed to

28  consumers during the relevant period.

1   "stayed proceedings pending the Supreme Court's decision in [*FTC v. Actavis*, 570 U.S. 136

2   (2013)]); *see also In re Wellbutrin XL Antitrust Litig.*, 2014 WL 10435333, at *1 (E.D. Pa. Jan. 17,

3   2014) (noting that the court had "stay[ed] the litigation . . . pending resolution of the Supreme

4   Court review of . . . *FTC v. Watson Pharmaceuticals, Inc.*, 677 F.3d 1298 (11th Cir. 2012)").

5          Finally, granting this limited stay will accommodate the issues presented by the COVID-19

6   pandemic with trying to hold an in-person trial this fall.  As LendingClub explained, it objects to

7   conducting this complex, document-intensive, high-stakes trial entirely by video.  *See* Dkt. 285.

8   To accommodate those objections and the ongoing COVID-19 pandemic, the Court continued the

9   bench trial scheduled to commence on June 22, 2020, to October 19, 2020.  Dkt. 288, at 1.

10  However, as the situation has developed, it now appears less likely that an in-person proceeding

11  will be practical in October.  *See, e.g.*, Anabel Munoz & Alix Martichoux, "Gov. Newsom orders

12  major reopening rollback in attempt to control rampant COVID-19 spread" (July 13, 2020),

13  *available at* https://abc7.com/governor-newsom-update-today-gavin-press-conference-california-

14  covid-19-coronavirus/6315327/. Granting a stay would serve the dual purposes of allowing the

15  Supreme Court to hand down its decision in *Credit Bureau/AMG*, which may well spare

16  significant resources otherwise spent litigating about the FTC's monetary relief request, as well as

17  give the COVID-19 situation time to improve, increasing the likelihood of an in-person trial,

18  thereby preventing the significant risk of procedural error that trial by video would introduce and

19  optimizing the significant benefits from assessing witness testimony and evidence in an in-person

20  setting.  *See* Dkt. 285, at 3-7.

21          **D.      A Stay Will Promote The Orderly Course Of Justice.**

22          The third and final relevant factor is "the orderly course of justice measured in terms of the

23  simplifying or complicating of issues, proof, and questions of law which could be expected to

24  result from a stay."  *Lockyer*, 398 F.3d at 1110.  In analyzing this factor, "courts look for whether

25  the underlying case would make determinations that would inform or contribute to the decision of

26  the factual and legal issues before the district court."  *RLI Ins. Co. v. ACE Am. Ins. Co.*, 2020 WL

27  1322955, at *7 (N.D. Cal. Mar. 20, 2020) (internal citation and quotation marks omitted).

28  "Considerations of judicial economy are highly relevant in determining whether this factor weighs

1    in favor of a stay."  *Matera v. Google Inc.*, 2016 WL 454130, at *2 (N.D. Cal. Feb. 5, 2016)

2    (internal citation and quotation marks omitted).

3        In the most likely outcome, the Supreme Court agrees with the Seventh Circuit's

4    interpretation of § 13(b) and nullifies the FTC's power to seek monetary relief under that statute.

5    That holding would almost certainly result in settlement of this matter, as it is evident that the

6    FTC's monetary relief request is the primary ongoing driver of this litigation, particularly given

7    that the vast majority of the conduct that serves as the basis for the FTC's complaint in this case

8    ceased long ago.  But the Court need not take it on faith—the parties should at least be given the

9    opportunity to litigate and negotiate pursuant to the correct legal backdrop.  The possibility that

10   the Supreme Court's decision will dispose of this case, even indirectly, is a paramount

11   consideration of judicial economy.  *See Robledo*, 2017 WL 4934205, at *4 ("This factor clearly

12   weighs in favor of granting a stay because the decision in *Morris* could be dispositive of whether

13   Plaintiffs' claims should be litigated or arbitrated.").  And even absent settlement, not having to

14   litigate the many issues surrounding the FTC's requested restitution award, including issues

15   surrounding the determination of LendingClub's net profits, would dramatically simplify the

16   witnesses, exhibits, and proof at trial, reduce the overall expense to the parties of litigating the

17   case and conducting a trial, and reduce the number of issues the Court would need to resolve,

18   saving judicial resources that could be dedicated to other cases or uses.

19       Even if the Supreme Court does not entirely gut the FTC's power to collect restitution

20   under § 13(b), its opinion in *Credit Bureau* and *AMG* is sure to confirm that the limitations on

21   equitable monetary relief announced in the *Liu* decision apply equally to the exercise of the court's

22   equitable powers in the FTC Act context and further define the limits on the court's equitable

23   powers relevant to this case.  To proceed without awaiting that guidance would be inviting error

24   and would miss an opportunity to save judicial resources by avoiding litigation now on the impact

25   of the *Liu* decision to this case.  Judicial economy is best served by staying this case until the

26   Supreme Court issues an opinion in *Credit Bureau* and *AMG*, so that this Court and the parties can

27   operate under the proper standard in the first instance, avoiding the risk of vacatur and re-trial.

28   *See Robledo*, 2017 WL 4934205, at *5 ("Ultimately, it would prove to be 'an extraordinary waste

1    of time and money' to continue litigating this case 'only to have to do it all again because the

2    experts, the parties and the Court were proceeding under a legal framework that the [Supreme

3    Court] determined did not apply.'") (quoting *Meijer, Inc. v. Abbott Labs.*, 2009 WL 723882, at *4

4    (N.D. Cal. Mar. 18, 2009)) (alteration in original).

5    **V.**    **CONCLUSION**

6          For the foregoing reasons, LendingClub respectfully requests that the Court enter an order

7    staying this case pending the Supreme Court's decisions in *F.T.C. v. Credit Bureau Center*, No.

8    19-825, and *AMG Capital Management, LLC v. F.T.C.*, No. 19-508.

9

10    DATED:  July 30, 2020               QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP

11

12

13                              By  */s/ Diane M. Doolittle*

14                                 Diane M. Doolittle (Bar No. 142046)
                                dianedoolittle@quinnemanuel.com

15                                 Suong T. Nguyen (Bar No. 237557)
                                suongnguyen@quinnemanuel.com

16                                 Margaret Shyr (Bar No. 300253)
                                margaretshyr@quinnemanuel.com

17                                 555 Twin Dolphin Drive, 5th Floor
                                Redwood Shores, California 94065

18                                 Telephone: (650) 801-5000
                                Facsimile: (650) 801-5100

19

20                                 David M. Grable (Bar No. 237765)
                                davegrable@quinnemanuel.com

21                                 Michael T. Lifrak (Bar No. 210846)
                                michaellifrak@quinnemanuel.com

22                                 Joseph C. Sarles (Bar No. 254750)
                                josephsarles@quinnemanuel.com

23                                 865 S. Figueroa Street, 10th Floor
                                Los Angeles, California 90017

24                                 Telephone: (213) 443-3200
                                Facsimile: (213) 443-3100

25

26

27

28

1

2          M. Sean Royall (admitted *pro hac vice*)
           Rachael A. Rezabek (SBN 298711)
3          KIRKLAND & ELLIS LLP
           1601 Elm Street
4          Dallas, TX 75201
           Telephone: (214) 972-1770
5          Facsimile: (214) 972-1771
           Email: sean.royall@kirkland.com
6          Email: rachael.rezabek@kirkland.com

7          Richard H. Cunningham (admitted *pro hac vice*)
8          KIRKLAND & ELLIS LLP
           1301 Pennsylvania Avenue, N.W.
9          Washington, DC 20004
           Telephone: (202) 389-3119
10         Facsimile: (202) 389-5200
           Email: rich.cunningham@kirkland.com
11

12         A. Karine Jakola (admitted *pro hac vice*)
           KIRKLAND & ELLIS LLP
13         300 North LaSalle
           Chicago, IL 60654
14         Telephone: (312) 862-2000
           Facsimile: (312) 862-2200
15         Email: kjakola@kirkland.com

16
           *Attorneys for LendingClub Corporation*
17

18

19

20

21

22

23

24

25

26

27

28