J. REILLY DOLAN
Acting General Counsel
KATHARINE ROLLER
HELEN CLARK
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Phone: (312) 980-5605
Facsimile: (415) 848-5184
Email: kroller@ftc.gov; hclark@ftc.gov
*Attorneys for Plaintiff Federal Trade Commission*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>LENDINGCLUB CORPORATION,<br>d/b/a LendingClub,<br><br>　　　　　Defendant. | CASE NO. 3:18-cv-02454-JSC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Action Filed: April 25, 2018<br><br>**Case Management Conference**<br>Date: June 17, 2021<br>Time: 1:30 p.m.<br>Judge: Jacqueline Scott Corley |

Pursuant to the Court's Order Scheduling Case Management Conference of April 28, 2021 (Dkt. No. 325), Counsel for Plaintiff Federal Trade Commission ("Plaintiff" or "FTC") and Defendant LendingClub Corporation ("Defendant" or "LendingClub") have conferred regarding the current status and future conduct of the present case. Where we have been unable to reach agreement, the parties provide their respective positions for the Court's consideration.

**1.     Settlement**

The Court expressed at the September 13, 2018 hearing regarding Defendant's motion to dismiss that "this case should get resolved" through settlement. *See* Dkt. No. 318-2 at 42:9-10. The parties agree that settlement is worth pursuing but have so far been unsuccessful. Per the Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, No. 19-508, 141 S. Ct. 1341, 1344 (2021), the FTC is presently unable to recover monetary relief in federal court actions pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b). For this reason, the parties believe renewed settlement efforts will likely be more fruitful now than in the past.

**Plaintiff's Position**

Plaintiff respectfully requests that the Court refer the matter to Magistrate Judge Laurel Beeler for a settlement conference. The FTC found Judge Beeler's contributions very valuable during mediation in July 2020, and believes that her expertise will help the parties get across the finish line now that the legal issues related to monetary relief have been clarified. As Defendant acknowledges, the parties have not had an opportunity to focus on injunctive relief in prior mediations. We would now be able to do precisely that.

**Defendant's Position**

LendingClub also values Judge Beeler's contributions and expertise, but given the developments regarding remedies, LendingClub does not find it necessary to burden her already crowded docket with this matter yet again. Before the *AMG* decision, the primary obstacle to settlement was the FTC's monetary demand, but that obstacle should now be removed, as the FTC itself acknowledges. Since LendingClub has ceased all conduct at issue in Counts I and II (and the FTC does not seek to prevent LendingClub from using ACH processes at issue in Count III), the parties need only negotiate the terms of a stipulated injunction. Absent the cloud of the FTC's

monetary demand, the parties should have no trouble working out a resolution without the need for a formal settlement conference or mediator, particularly because injunctive relief has not been the focus of any prior mediation. Rather, the key to the parties reaching a prompt settlement is an impending trial date. For that reason, LendingClub respectfully requests that the Court set the trial to begin, in-person, at the Court's earliest availability.

2. **Length of Trial**

**Plaintiff's Position**

The FTC estimates it will take 7.5 days to present its case, and assumes Defendant will request an equal allotment of 7.5 days for a total of 15. This comports with Defendant's previous position that "the trial [should] last 15 court days." Dkt. No. 48 at 9. Although the trial was previously set for 10 court days, the FTC believes that 5 days for its case is not sufficient time to put on the proof requested by the Court's summary judgment order (Dkt. No. 291) to establish liability on two counts and the necessity and form of injunctive relief on three. Defendants' current proposal to limit the FTC to 2.5 days is unworkable and unfair. The only item that has changed since the matter was previously set for trial is that proof of consumers' total monetary loss is currently obviated: that proof would have been offered in the form of a simple arithmetic calculation as part of one witness's testimony. Importantly, testimony from all of the FTC's previously-listed trial witnesses remains necessary for other disputed issues. Thus, because the evidence regarding the proof of monetary loss almost entirely overlaps with the proof required to demonstrate deception and a likelihood of recurrence, the *AMG* decision does not, in fact, cut down on the number of witnesses or exhibits that the FTC must put before the Court.

When the parties were previously preparing for trial in Spring 2020 with a 10-day timeframe in mind, the FTC was surprised to learn that Defendant would not stipulate to numerous basic facts, including, among others, the accuracy of screenshots Defendant provided to Plaintiff of Defendant's own website, as well as facts Defendant did not dispute previously at summary judgment. And Defendant in this document reaffirms its refusal to stipulate to facts beyond the authenticity of its own produced documents or dispense with any testimony other than the "foundational." Defendant's attempt to severely curtail the FTC's trial time while at the same time refusing to stipulate to the most

basic and uncontroversial facts bespeaks obstruction, not efficiency. If, in fact, Defendant behaves more reasonably with respect to stipulations this time, the length of trial might be curtailed somewhat. But for present purposes the Court should reserve an adequate period that does not rely on the promise of stipulations that are, at this point, merely speculative.

### Defendant's Position

To the extent a trial will remain necessary, LendingClub believes it should take no longer than a week (five court days), with the time divided equally between the parties. One of the reasons the Court stayed this matter pending the *AMG* decision was that if the Supreme Court rules as it now has, "the case will be greatly simplified as no monetary relief will be at issue. Given that the FTC does not claim that LendingClub's current practices are deceptive, the elimination of monetary relief will likely facilitate a negotiated resolution." Dkt. 321, at 6. The FTC's insistence that post-*AMG* trial of this matter will take the same time as it would pre-*AMG* does not withstand scrutiny—not only has the calculation of purported damages become irrelevant, but so have all the facts in support of and opposition to that calculation. As such, there is no reason a trial must last as long as the FTC requests.

The FTC's characterization of the parties' pre-stay negotiations concerning a potential stipulation to the admissibility of certain evidence is not accurate, but is a distraction in any case. The specific terms of the FTC's proposed stipulation last year were unreasonable and one-sided, and extended far beyond the authenticity of evidence. LendingClub could not agree to all of the FTC's proposals in *that* stipulation, but particularly with no monetary relief at issue, LendingClub is confident that the parties can agree upon a reasonable and acceptable stipulation to further reduce the amount of foundational testimony required at trial—yet another reason the three-week trial requested by the FTC is unnecessary.

### 3.   Format of Trial

### Plaintiff's Position

Given the incomplete progress of COVID-19 vaccinations in the United States and current FTC policy forbidding FTC personnel from engaging in work-related travel, the FTC respectfully submits that a remote videoconference trial is the most appropriate format for trying this case. Such

remote trials have been conducted with success throughout the nation during the pandemic, *see, e.g.*, *Dallo v. Holland America*, No. 19-cv-00865 (W.D. Wash.); *Staple v. Northwestern Mutual Life Insurance Company*, No. 17-cv-03066 (M.D. Fla.); *Centripetal Networks, Inc. v. Cicsco Sys., Inc.*, No. 2:18cv94 (E.D.Va.); *In re RFC & ResCap Liquidating Tr. Action*, 13CV3451SRNHB (D. Minn.); *see also Judge Scriven Holds First Federal Virtual Jury Trial in Florida* (Feb. 28, 2021), https://www.flmd.uscourts.gov/announcements/judge-scriven-holds-first-federal-virtual-jury-trial-florida, and can also allow the trial to proceed more efficiently, *see* Cara Salvatore, *Minn. Judge Calls for More Zoom Trials – Pandemic or Not,* Law 360 (Mar. 30, 2021), *available at* https://www.law360.com/articles/1370514/minn-judge-calls-for-more-zoom-trials-pandemic-or-not. If, however, the Court prefers to schedule an in-person bench trial, the FTC would request that some portion of witness testimony be conducted by videoconference in order to lessen the burden on out-of-state witnesses, particularly consumer victims, most of whom live on the East Coast and some of whom are older, and any other witnesses who express a reluctance to travel for health and safety reasons.

The FTC is very much in favor of a trial plan that would tailor the presentation of evidence to issues that remain in genuine dispute, such as by dispensing with the need to prove at trial any fact not disputed at summary judgment. *See, e.g.*, Dkt. No. 291 at 2-10. Such an order would greatly increase the efficiency of trial. For example, as the situation currently stands, the FTC must, in effect, re-prove Count II, because the undisputed facts supporting liability (on which the Court has granted judgment in the FTC's favor) are largely the same as the facts supporting injunctive relief (which remains for trial). Treating facts such as these, on which the Court has relied once already, as established would obviate the need for such redundancies. Defendant's proposal to take direct examination by submission of written testimony, however, is infeasible, as the majority of the witnesses that the FTC would call in its case-in-chief are employees of Defendant, and thus adverse. Finally, without knowing what, precisely, Defendant is requesting regarding "limiting the scope of cross-examination," the FTC can express no position on that proposal.

**Defendant's Position**

LendingClub continues to object to holding trial of this visually intensive matter entirely by video, with counsel and the Court separated, and the presentation of evidence taking place on a conferencing service. Even without monetary relief at issue, the practical problems associated with a trial by video continue to apply. *See* Dkt. 285. However, LendingClub fully agrees that the trial can be substantially streamlined to reduce the amount of time required, for example, by submitting written direct examination testimony and limiting the scope of cross-examination, by allowing certain witnesses to appear remotely in compelling circumstances, and by tailoring the presentation of evidence to issues that remain in genuine dispute. *See United States v. W.R. Grace*, 526 F.3d 499, 510 (9th Cir. 2008) ("It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice."); *United States v. Scott*, 642 F.3d 791, 799 (9th Cir. 2011) (A judge has "discretion to ensure the orderly and efficient presentation of evidence and to control the pace of trial."). LendingClub's primary concern is simply that **the Court and counsel** be gathered in-person for the presentation of evidence, with live witnesses where possible and practicable.

The other key reason the Court stayed this case pending the outcome of *AMG* was to avoid "complications imposed by the ongoing COVID-19 pandemic." Dkt. 321, at 6. Nearly a year later, conditions have in fact improved considerably, allowing the Court to forego "wad[ing] through the thorny issues of whether it can require a party to virtually try a case." *Id.* The specific circumstances of this case still justify a primarily in-person trial; neither the vaccination rate of the general population, nor the FTC's current internal policy against travelling, is a compelling reason to require a virtual trial.

| | |
|---|---|
| 1 | DATED: June 10, 2021 |

Respectfully submitted,

By: *Katharine Roller*
KATHARINE ROLLER
HELEN CLARK
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Phone: (312) 960-5605
Facsimile: (415) 848-5184
Email: kroller@ftc.gov; hclark@ftc.gov
*Attorneys for Plaintiff Federal Trade Commission*

By: *Diane Doolittle*

Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
Suong T. Nguyen (Bar No. 237557)
suongnguyen@quinnemanuel.com
Margaret Shyr (Bar No. 300253)
margaretshyr@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

David M. Grable (Bar No. 237765)
davegrable@quinnemanuel.com
Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3200
Facsimile: (213) 443-3100

M. Sean Royall (admitted pro hac vice)
Rachael A. Rezabek (SBN 298711)
KIRKLAND & ELLIS LLP
1601 Elm Street
Dallas, TX 75201
Telephone: (214) 972-1770
Facsimile: (214) 972-1771
Email: sean.royall@kirkland.com
Email: rachael.rezabek@kirkland.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Richard H. Cunningham (admitted pro hac vice)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-3119
Facsimile: (202) 389-5200
Email: rich.cunningham@kirkland.com

A. Karine Jakola (admitted pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: kjakola@kirkland.com

*Attorneys for Defendant LendingClub Corporation*